IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CHRISTOPHER CHESTNUT,

    **Plaintiff,**

**v.**

JUSTICE CHARLES CANADY,
JUSTICE RICKY POLSTON,
JUSTICE JORGE LABARGA,
JUSTICE C. ALAN LAWSON,
JUSTICE BARBARA LAGOA,
JUSTICE ROBERT LUCK, and
JUSTICE CARLOS MUNIZ; in their
official capacities as Justices for the
Florida Supreme Court of Florida;
JOHN A. TOMASINO, in his official
capacity as Clerk for the Supreme
Court of Florida;

    **Defendants.**

_____/

**CASE NO.:  4-19-CV-271-RH-MJF**

**PLAINTIFF'S MOTION FOR
LEAVE TO AMEND FOR A
SECOND AMENDED COMPLAINT
FOR PROSPECIVE INJUNCTIVE
AND DECLARATORY RELIEF
AGAINST STATE OFFICIALS IN
THEIR OFFICIAL CAPACITIES**

## MOTION FOR LEAVE TO AMEND FOR A SECOND AMENDED COMPLAINT FOR PROSPECTIVE INJUNCTIVE AND DECLARATORY RELIEF AGAINST STATE OFFICIALS IN THEIR OFFICIAL CAPACITIES

COMES NOW, Plaintiff, CHRISTOPHER CHESTNUT, *pro se*, and hereby

files this motion pursuant to Rule 15(a), Fed. R. Civ. P. for leave to amend allowing

the hereto attached "Exhibit A" proposed Second Amended Complaint, and offers

in support thereof as follows:

FILED USDC FLND TL
DEC 31 '19 PM 4:21

On November 27, 2019, this Court entered an order granting Plaintiff leave to file a first amended complaint no later than December 9, 2019. (Dkt., 11). Plaintiff complied with that order in filing a First Amended Complaint. The Court made clear his expectation that Plaintiff, although *pro se*, timely produce work product commensurate with his training, notwithstanding his current status. (Dkt. 11). In pursuit thereof, Plaintiff has augmented the First Amended Complaint with additional authority supporting Federal District Court Jurisdiction, additional authority supporting the legal claims, and a more comprehensive summation of what is being asked of the Court.[1]  Additional formatting and grammatical edits have been made, but no additional claims have been added.[2]

Should leave be granted, the proposed Second Amended Complaint will be served upon Defendants before the January 9, 2019 deadline for service of process, and this amendment will not cause Plaintiff to seek extension or fail to comply with the present deadlines set by the Court.  Rule 15 (a), Fed. R. Civ. P. provides leave to

---

[1] *See, Perez v. Pavex Corp,* 2002 U.S. Dist. LEXIS 21871 (M.D. Fla., October 17, 2002)(Plaintiff's request for leave to amend is granted where the aim of the motion for leave is to conform the First Amended Complaint or perfect the legal claims already asserted, and defendants do not object.).  Defendants have not been served with the First Amended Complaint so there is no stipulation nor objection.

[2] Plaintiff has edited the First Amended Complaint correcting many font, margin, and grammatical distortions that inadvertently occurred consequent to computer complications in converting the document from one document production software for filing.

amend should be freely given when justice so requires. Furthermore, there is no prejudice to defendants in allowing the Second Amended Complaint, it is submitted in good faith and not for undue delay, and the amendment is not futile.[3]

Wherefore, Plaintiff requests this Court enter an order granting leave to amend for the attached proposed  Second Amended Complaint.

Respectfully Submitted this 30th day of 2019,

**By:   [s] Christopher Chestnut**

CHRISTOPHER M. CHESTNUT

Telephone: (855) 374-4448

Facsimile:  (855) 377-2667

christopherchestnut@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of December, 2019, the foregoing was physically served upon the Clerk of Court for the United States District Court for the Northern District of Florida.

**By:   [s] Christopher Chestnut**

CHRISTOPHER M. CHESTNUT

---

[3] *See  Forman v. Davis*, 371 U. S. 178 (1962).

# <u>EXHIBIT A</u>

# IN THE UNITED STATES DISTRICT
## COURT FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

| | |
|---|---|
| **CHRISTOPHER CHESTNUT,** | |
| **Plaintiff,** | **CASE NO.: 4-19-CV-271-RH-MJF** |
| **v.** | |
| **JUSTICE CHARLES CANADY, JUSTICE RICKY POLSTON, JUSTICE JORGE LABARGA, JUSTICE C. ALAN LAWSON, JUSTICE BARBARA LAGOA, JUSTICE ROBERT LUCK, and JUSTICE CARLOS MUNIZ; in their official capacities as Justices for the Florida Supreme Court of Florida; JOHN A. TOMASINO, in his official capacity as Clerk for the Supreme Court of Florida;** | **COMPLAINT FOR PROSPECTIVE INJUNCTIVE AND DECLARATORY RELIEF AGAINST STATE OFFICIALS IN THEIR OFFICIAL CAPACITIES[1]** |
| **Defendants.** | |

---

## <u>SECOND AMENDED COMPLAINT FOR PROSPECTIVE INJUNCTIVE AND DECLARATORY RELIEF AGAINST STATE OFFICIALS IN THEIR OFFICIAL CAPACITIES</u>

---

[1] There is an exception to the law that permits a private plaintiff to bring a suit against a state office for prospective injunctive relief. *See generally, Ex Parte Young,* 209 I.S. 123 (1908); *see also Stevens v. Gay,* 864 F.2d 113,115 (11th Cir. 1989) ("The Eleventh Amendment does not prevent a plaintiff from suing state officials in their official capacity for prospective injunctive relief and costs associated with that relief."). However, the Eleventh Amendment bar against suing the state itself "applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief." *Stevens,* 864 F.2d at 115; *Ramey v. Georgia,* Lexis 2010 U.S. Lexis 20097 n.1 (M.D. Ga. 2010).

COMES NOW, Plaintiff, CHRISTOPHER CHESTNUT, *pro se*, and hereby files this claim for declaratory and prospective injunctive relief pursuant to 28 USC § 1343(a)(3), seeking immediate and emergency declaratory and injunctive relief to nullify and enjoin the enforcement of orders to disbar and permanently disbar Plaintiff issued by the Supreme Court of Florida in violation of due process, and offers in support thereof as follows:

## I.     INTRODUCTION
### A.     NATURE OF THE CASE

1.  This is a lawsuit for equitable relief pursuant to Section 1 of the Civil Rights Acts as codified by 42 U. S. C. § 1983 against the individual Justices of the Supreme Court of Florida in their official capacities and the Clerk of the Supreme Court of Florida in his official capacity.[2]   The Justices acted individually and collectively as state actors to deprive Plaintiff Chestnut of his Fifth and Fourteenth Amendment Constitutional rights.   Specifically, the Justices entered an order to disbar and subsequently permanently disbar Plaintiff Chestnut without a requisite hearing, order to show cause or opportunity to be heard otherwise in deprivation of his due process rights.

---

[2] *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (Plaintiff may seek injunctive relief under § 1983 against a state official in his or her official capacity, because official capacity actions for perspective relief are not treated as sanctions against a state.).

Plaintiff Chestnut seeks an immediate order for prospective declaratory and injunctive relief by this Federal District Court declaring the illegal orders to disbar and permanently disbar are void and to enjoin the Supreme Court of Florida from imposing the sanctions as ordered on May 3, 2019 and August 22, 2019 respectively.[3]

2. Plaintiff acknowledges that the Federal District Court does not have jurisdiction for substantive appellate review of a final state court order from the highest state court; and, further acknowledges the considerable precedent of Federal District Court abstention from intervening in state court orders for disbarment. However, the case *sub judice* is highly distinguishable in fact and law from the precedent. This complaint invokes Federal District Court original jurisdiction under 28 U.S.C. § 1343, which codifies immediate Federal District Court jurisdiction and intervention when a member of a protected class has been deprived of liberty or property by state action in violation of due process and equal protection law.[4]  The Supreme Court of

---

[3] *See Gresham Park v. Howell*, 652 F.2d 1227, 123 (5th Cir. 1981) ("where a party asks a federal court to declare a state court judgment null and void, we should consider this as praying for any injunctive enjoining its enforcement.).

[4] The legislative intent of the Civil Rights Act of 1871 was to provide for Federal Court intervention for blacks who were being deprived of liberty and property by the state courts in the southern states, including Florida. *See* Zeigler, Donald H., *A Reassessment of the Younger Doctrine in Light of the Legislative History of Reconstruction*, 87 Duke LJ 987, 1039 (1983).

Florida orders disbarring Plaintiff (a black male attorney), *sub judice*, involve selective enforcement of bar disciplinary sanctions, promulgating unequal application and misapplication of law/rules, the overt obstruction of discovery and evidentiary safe guards, and repeated due process violations by state court judges suborning unfair tribunals all for the specific purpose of discriminating against him. The orders further impose the harshest sanctions (permanent disbarment) for alleged misconduct where similarly situated white attorneys engaging in the same conduct were not prosecuted or not sanctioned at all; and, subjugate Plaintiff to permanent disbarment upon deprivation of an evidentiary hearing to show cause why disbarment should not be the imposed sanction, when similarly situated white attorneys where at a minimum afforded a show cause order prior to disbarment. Moreover, consistent with Fed. R. Civ. P. § 11(b) Plaintiff seeks the extension and application of the holding in *Rhoades v. Penfold*, 694 F.2d 1043 (5th Cir. 1983) to this case. In *Rhoades,* where the 5th Circuit affirmed Federal District Court declaratory and injunctive relief vacating a final state court order terminating a mother's parental rights after the appellate court found her due process and equal protection rights were violated in the state court termination process.[5]

---

[5] As a decision of the Old Fifth Circuit, *Rhoades* remains persuasive in the Eleventh Circuit. *See Bonner v. City of Pritchard*, 661 F.2d 1206,1207 (11th Circ. 1981) (en banc).

## A. 1.   42 U.S.C.§1983 DUE PROCESS VIOLATION & PROSPECTIVE INJUNCTION DEFINED

3.  The Fourteenth Amendment secures a right in an individual citizen to be free from state deprivations of property without due process of law.[6]

4.  Section 1 of the Civil Rights Act as codified by 42 U.S.C. § 1983 provides a private right of action for equitable relief against persons acting under the color of state law, statute, ordinance, regulation, or custom or who deprived a citizen of any rights, privileges, or immunities secured by the U.S. Constitution and federal laws.[7]

5.  To prevail in a § 1983 claim, a plaintiff must prove: (1) a deprivation of a right secured by the Constitution and the laws of the United States; (2) that the deprivation was under color of state of law constituting state action.[8]

6.  A state may act through different agencies including its judiciary.[9]  Any act taken by a state court judge or justice acting in his or her official capacity that abridges the rights guaranteed by the Fourteenth Amendment will be considered state action.[10]

---

[6] *United States v. Stanley*, 109 U.S. 3, 18 (1883).
[7] *See, Parratt v. Taylor*, 451 U.S. 527, 534-5 (1981) (Negligent deprivation of civil rights is actional under § 1983.).
[8] *Id.*
[9] *Flagg Bros, Inc. v. Brooks*, 473 U.S. 149,156 (1978).
[10] *Id.*

7. When a state court justice acting individually or collectively engages in state action to take the property or liberty interest of a plaintiff without the due process of law, that plaintiff may seek injunctive relief under § 1983 against the state official(s) in his or her official capacities, under prospective injunctive relief.[11]

8. Furthermore, neither the defendant state actors nor the state agency judiciary enjoys Eleventh Amendment immunity in a claim for injunctive relief for reinstatement of employment, pursuant to the *Ex parte Young* exception.[12]

## A. 2.   §1983 CONSTITUTIONAL RIGHTS DEPRIVED BY STATE ACTION

9. Plaintiff Chestnut had a right under the Fifth and Fourteenth Amendment to due process when the state agency aimed to deprive him of his property and liberty interest in employment via his license to practice law in Florida.[13]   A license to practice law is considered real property.[14]   The Supreme Court of

---

[11] *See Kentucky v. Graham,* 473 U.S. 149, 167 n. 14 (1985).

[12] *See Lane v. Cent. Ala. Cmnty College,* 772 F.3d 1349, 1350 (11th Cir. Ala., 2014); *see also Ex parte Young,* 2019, U.S. 123, 128 (1908) (A suite against individuals for the purpose of preventing them as officers of a state from enforcing unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the state within the meaning of the Eleventh Amendment.).

[13] A state cannot exclude a person from the practice of law for from any other occupation in a manner or for reasons that contravene Due Process or Equal Protection Clause of the Fourteenth Amendment.   *Schware v. Board of Bar Examiners of New Mexico,* 353 U.S. 232, 237 (1957).

[14] *Bradley v. Fisher,* 80 U.S. 335, 355 (1871) ("to deprive one of an office of this character would often be to decree poverty to himself and destitution to his family.").

Florida systemically violated Plaintiff Chestnut's due process rights when it entered orders to disbar and permanently disbar him without affording him an opportunity to be heard on the issue of disbarment or permanent disbarment.[15] Furthermore, the Supreme Court of Florida order was required to declare a "valid" reason for issuing the harshest sanction of disbarment and permanent disbarment and none was stated.[16]   The orders signed by the individual Justices of the Supreme Court of Florida caused Plaintiff Chestnut to suffer an actual deprivation of this Fifth and Fourteenth Amendment constitutional rights.[17]

## B. JURISDICTION AND VENUE

**The Federal Court has Original Jurisdiction.**

---

[15] *Id.* at 354.

[16] *Bradley* at 354; *see also Ex parte Garlard*, 4 Wall. 3333,379 (1867) (We need not enter into a discussion whether the practice of law is a "right" or "privilege". Regardless of how the State's grant of permission to engage in this occupation is characterized, it is sufficient to say that a person cannot be prevented from practicing except for valid reasons. Certainly, the practice of law is not a matter of the State's grace.").

[17] *See Pulliam v. Allen*, 466 U.S. 522, 538 (1984) (An injunctive action against a judge is not prohibited when the suit aims at restraining the judge from depriving persons of their federal rights.).

10. The lawsuit is a private right of action, pursuant 42 U.S.C. § 1983. The Federal District Court has original jurisdiction over this claim, pursuant to 28 U.S.C. § 1343(3) & (4).[18]

11. Venue is proper in the Northern District of Florida because the alleged primary acts and events taken by the Supreme Court of Florida occurred in Tallahassee, Leon County, Florida; Plaintiff, Chestnut has a residence in Gainesville, Alachua County, Florida; and, the Supreme Court of Florida and its Clerk sit in Tallahassee, Leon County, Florida, all of which are within the jurisdiction of the United States District Court in and for the Northern District of Florida.[19]

12. Plaintiff has no pending state claims and no adequate remedies under Florida law; thus, the *Younger* abstention[20] is not permitted to preclude Federal District Court intervention.[21]

13. Prior to filing this action Plaintiff Chestnut filed a motion for written opinion, clarification, and rehearing pursuant to Fla. App. P. § 9.330, for both orders

---

[18] *See also* Civil Rights Act of 1871, ch. 22 §1, 17 Stat. 13, codified at 42 U.S.C. § 1983.
[19] 28 U.S.C. § 1391(b).
[20] *Younger v. Harris,* 401 U.S. 37 (1971) (holding that federal courts are required to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.). *See also Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Absent any pending proceeding in state tribunals, therefore, application by the lower courts of *Younger* abstention was clearly erroneous.").
[21] *See, Rhoades v. Penfold*, 694 F.2d 1043,1047 (5th Cir. 1983).

to disbar, neither of which was heard at an initial hearing, notwithstanding the title "Motion for Rehearing".[22]   *See attached Exhibit B, Respondent Motion for Reconsideration.*   The Supreme Court of Florida's remedial action is discretionary, and both motions were denied.[23]

14. Alternatively, because this lawsuit involves a black attorney complaining of deprivation of due process by state court actors under § 1983, the Federal District Court may immediately intervene notwithstanding the *Rooker-Feldman* Doctrine.

**Rooker-Feldman Doctrine does not prohibit this Court from intervening, and this court should intervene.**

15. The *Rooker-Feldman* Doctrine does not apply *sub judice,* and this court should intervene. [24]

---

[22] *See* Art. I, §9, Fla. Const., all proceedings affecting life, liberty, or property must be conducted according to due process. *See also, Tibbets v. Olson,* 108 So. 679 (1926)(holding the essence of due process is that fair notice and a reasonable opportunity to be heard must be giving to interested parties before judgment is rendered.).

[23] *Vill of DePue v. Exxon Mobil Corp.,* 537 F.3d 775,782 (11th Cir. 2008) ("The mere fact that a case could be heard in state court is insufficient to justify the *Younger* abstention.").

[24] *See Patsy v. Board of Regents*, 457 U.S. 496 (1982) (The Court relied upon a careful review by the Court of the Congressional debates of the Civil Rights Act of 1871 as authority for the legislative intent of §1983 and necessity of federal court intervention when dealing with blacks in the South, because blacks were not receiving justice or equitable application of laws in enforcement or before the court post-reconstruction, absent federal court intervention.).

16. *Feldman* was published in 1983 when Writ of Certiorari review by the U. S. Supreme Court was mandatory.[25]  However, *The Supreme Court Selections Action of 1988* eliminated mandatory U.S. Supreme Court review of a final order from the highest court of a state and made Writ of Certiorari under 28 U.S.C. § 1257, discretionary.[26]

17. The U. S. Supreme Court rejects most Writs of Certiorari and typically only entertain writs that involve substantial impact on state or federal law.  For instance, in 2017, the U.S. Supreme Court heard only 2.8% of Writs of Certiorari filed.[27]

18. Consequently, *Rooker-Feldman* should not bar Plaintiff Chestnut's cause action, because the U.S. Supreme Court is no longer obligated to hear this Writ of Certiorari, as it was under *Feldman*, and there is a substantial likelihood that his Writ of Certiorari will not be heard by the U.S. Supreme

---

[25] *See Rooker v. Fid. Trust. Co.,* 44 S. Ct. 149, 150 (1923) (only the Supreme Court can entertain jurisdiction of a proceeding to reverse or modify a state court judgment.); *see also District of Columbia Court of Appeals v. Feldman,* 460 U. S. 462 (1983) (review of final orders from the highest court of a state in bar disciplinary proceedings is relegated to the United State Supreme Court only, pursuant to 28 U.S.C. § 1257.).
[26] The Supreme Court Selections Act of 1988 (Pub. L 100-352 Stat 662, enacted 6/27/88, codified at 28 U.S.C. § 1257).
[27] *Success Rate of a Petition for Writ of Certiorari to the Supreme Court.*  The Supreme Court Press, www.supremecourtpress.com/chanceofsucess.html. 2018.

Court, leaving no guaranteed opportunity for remedy to an unconstitutional taking in violation of due process.

**This Court May Take into Consideration Rule 11 and The Reconstruction Congress' Legislative Intent When Considering Whether to Exercise Subject Matter Jurisdiction.**

19. The debate and commentary by the Reconstruction Congress (1865-1871) in drafting and enacting the Civil Rights Act of 1871 codified by 42 U.S.C. §1983, unequivocally solidifies the Congressional intent directing the Federal District Court's jurisdiction over §1983 claims; including presumptive injunctive relief claims against official capacity state action against a protected class member violating due process.

20. Additionally, Plaintiff Chestnut relies on Rule 11(b), Fed. R. Civ. P.[28]as a basis for arguing that this Court take subject matter jurisdiction over his claim.

21. Rule 11(b) provides this Court express authority to reverse application of the existing *Rooker-Feldman* doctrine. *Rooker-Feldman* became obsolete in 1988 when U. S. Supreme Court review of § 1257 writs became discretionary. The doctrine has not been modified to cure the post 1988 procedural void, and thus it inflicts irreparable harm to a protected class member like Plaintiff Chestnut who will be robbed of an opportunity to be heard by a higher court

---

[28] Rule 11(b), Fed. R. Civ .P. provides the claims defenses and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying or reversing existing law or for establishing new law.

on his due process claims concerning his disciplinary proceedings, where he has been deprived of due process and a fair and impartial tribunal culminating in permanent disbarment. The Reconstruction Congress' legislative intent in enacting Section 1 of the Civil Rights Act of 1871, later codified by 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) & (4), along with the Fourteenth Amendment supports this Federal District Court's exercise of jurisdiction over the prospective injunctive relief claims, Equal Protection claims, and § 1983 claims, *sub judice.* Additionally, Rule 11(b) authorizes Plaintiff to seek this Federal District Court's jurisdiction to modify and / or reverse the application of the *Rooker-Feldman* Doctrine under these circumstances and to extend the application of the court's holding in *Rhoades* where a plaintiff has been denied due process.[29]

22. Specifically, Plaintiff alleges when the Justices to the highest state court in Florida, the Supreme Court of Florida, entered a final state court order revoking the law license from a black attorney without due process of law in violation of his Fifth and Fourteenth Amendment, that a black attorney (member of a protected class) has no guaranteed remedial action under §1257, because the U.S. Supreme Court has discretionary review over Writs of Certiorari. Consequently, the only avenue for recourse of his federally

---

[29] *See Rhoades v. Penfold*, 694 F.2d 1043 (5th Cir. 1983).

guaranteed right is to seek intervention by the Federal District Court pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §1343 (3) & (4).

**History of Discriminatory Deprivation of Constitutional Rights to Blacks & Non- Confederate Whites Requiring Federal Court Intervention Authority Conferred by Reconstruction Congress.**

23. The primary reason for Civil Rights Act of 1871 and 42 U.S.C. § 1983 was to address inequity in the application and enforcement of law, and to cure the bias especially in the southern states as applied to formerly held slaves (blacks).

24. The U. S. Supreme Court acknowledges the legislative intent of 42 U.S.C. § 1983 in *Monroe v. Pape*, 365 U.S. 167, 180 (1961), stating:

> "It is abundantly clear that the one reason the legislation was passed was to afford a federal right in federal courts because by reason of prejudice, passion, neglect, intolerances or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies."[30]

---

[30] "The Civil Rights Bill is intended to secure these citizens against injustice that may be done them in the courts of the States within where they may reside." *See* Cong. Glove 39th Cong. 1st Ses. 474-475, 604, 1758-59 (remarks of Sen. Trumbull):
But why do we legislate upon this subject now? Simply because we fear and have reason to fear that the emancipated slaves would not have their rights in the court of the slave states...

25. After the Civil War, black persons were being deprived of liberty and property without due process of law and the deprivations occurred because judges in civil state court proceedings failed to afford the **procedural fairness** required by the U.S. Constitution.[31]

26. Despite the dissimilarities, the nature of the potential state court problem that the Reconstruction Congress sought to remedy has not changed in the past century.  Although the state justice system has not in the last decade manifested the level of racism, hatred and bigotry that marked the post – Civil War era,  there is no guarantee that the state systems will not again become the bastion of such ill will.[32]

27. Also, although there have been significant improvements in equal protection for the descendants of slaves in the former southern slave states, including Florida, there has not been enough in parity for black attorneys to rely solely on state courts to enforce and equally protect constitutional rights.

---

**Here Justice of the Peace in South Carolina or Georgia, or a county court or a circuit court, that is called upon to execute this law. They appoint their own marshal, their deputy marshal, or their constable, and he calls upon the *posse comitatus*. Neither the judge, nor the jury, nor the officer as we believe is willing to execute the law.** *Id.* at 602- 3. (emphasis added).

[31] Zeigler, Donald H., *A Reassessment of the Younger Doctrine in Light of the Legislative History of Reconstruction*, 87 Duke LJ 987, 1039 (1983).

[32] *Id.*

28. Plaintiff's experience *sub judice* of an inability to get due process, including but not limited to a fair and impartial tribunal, at the state court level underscores the need of intervention by the Federal District Court pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §1343 (3) & (4) as anticipated by the Reconstruction Congress in enacting the civil rights law.

**Discriminatory Patterns Strikingly Similar to Reconstruction Era Southern State Court Practices Warrant Federal District Intervention in the case sub judice.**

29. Indicia of a resurgent chilling climate on racial intolerance and inclusion may be found in the following studies on bar disciplinary disparities in the California Bar Association, racial bias in the legal profession against blacks in legal writing, and bias against blacks in the state court systems of Florida. The disheartening findings are as follows:

   a. The California Bar Association on 11/13/2019 released findings of a study on racial disparities in bar disciplinary actions from 1990-2018, for over 116,000 attorneys admitted between 1990 and 2009. The findings were that black lawyers were nearly 3 times mor likely to incur a sanction of suspension than a similarly situated white attorney colleague (3.2% black v. .9% for white) and nearly 4 times more likely to be disbarred than a similarly situated White colleague (3.9% black v. 1.0% for white).

b. A similar racial bias hostile to Blacks in legal writing was found in a 2014 study by April N. Reeves; her paper entitled: *Written in Black and White: Exploring Confirmation Bias in Racialized Perceptions of Writing Skills*, found that similarly situated white law partners reviewing the identical legal writings with identical errors where the hypothetical author had the same name for the white and black supposed junior associate writer (Thomas Meyer), resulted in an average score of 3.2/5.0 for Blacks and 4.1/5.0 for whites, the only difference in the writing was the reviewing partner was advised of the race of the writer which caused disparity in the scoring.

c. *The Sarasota Harold-Tribune* on 12/12/16 published an article entitled, *Florida's Broken Sentencing System; Designed for Fairness, it Fails to Account for Prejudice.* This article was amongst a series of articles by this newspaper after an intense study on racial bias in the state courts of Florida, the authors , John Salman, et. al. found:

  i. "There is little oversight for judges in Florida, without checks to ensure equality, bias reigns";

  ii. "Judges say they are not racist but centuries of racial tension in America, lack of cultural understanding and negative stereotypes cloud their judgment."

    iii. Cornell Researchers in 2009 found racial bias from 133 judges presented with hypothetical cases, resulting in a majority of the cases discriminately favoring whites on sentencing with harsher sentencing on blacks for the same offense. Additionally, researchers found sentencing was harsher if the hypothetical presented to the judge was primed with words tied to black culture.

    iv. As of 2016, out of 900 county and circuit court judges in Florida, 62 were black, 28 were assigned to serious / felony crimes.

  d. 32 out of 64 judicial appointments to Florida's five appellate courts were appointed between 2011-2018; not a single appointee was black.

  e. Of the three Florida Supreme Court Justices appointed in 2019 by Gov. DeSantis, none were black, and there presently is not an black on the Supreme Court of Florida for the first time in nearly 40 years.

  f. Blacks comprise approximately 16.9% (3.5 million) of the Florida population, yet less than 5% of The Florida Bar.[33]

30. Furthermore, Plaintiff, a black attorney in Florida, has been unable to receive a fair and impartial tribunal before the Florida Supreme Court or its appointed

---

[33] U.S. Census Bureau, https: www.census.gov/guickfacts/fact/table/FL/RHI225217#RHI225217.

Trial Court Referees, in the cases *sub judice*. Indicia of his unfair treatment delineated as follows:

    a.  All of the Circuit Court Judges appointed to referee Plaintiff's Florida Bar Disciplinary proceedings hailed from the Fifth Judicial Circuit (no nexus to the Fifth Circuit for Plaintiff). Of the four Judges, two were disqualified for improper conduct in violation of Judicial Canons and Florida Rules of Judicial Administration. *See attached Exhibit C & D, Order of Disqualification & Writ of Prohibition.*

    b.  The Supreme Court of Florida knowingly allowed and relied upon the Report of Referee by Judge Jonathan Ohlman[34] in *SC17-307* to disbar Plaintiff Chestnut, yet the Report of Referee was entered after Judge Ohlman had been technically disqualified pursuant to Fla. R. Jud. Admin. § 2.330 and lost jurisdiction. Thus, the Report of Referee in *SC17-307* is null and void.[35] Moreover , Plaintiff filed a Writ of Prohibition to the Supreme Court of Florida regarding the Judge's continued activity on the file after his disqualification and the Supreme Court of Florida refused to rule on or hear the writ deferring it to be

---

[34] Hon. Jonathan Ohlman, State of Florida, Fifth Judicial Circuit Court, In and For Marion County.
[35] *See, ML. Builders, Inc. v Reserve Developers, LLP*, 769 So. 2d 1 079, 1082 (Fla. 4th DCA 2000) (A void judgment is a nullity and may be stricken at any time.).

heard on appeal. *Cf. Sutton v. State*, 975 So.2d 1 073, 1077 (Fla. 2008) (holding, **a formal writ of prohibition in connection with an issue of judicial recusal is immediately reviewable** by certiorari, not by appeal.)[36](emphasis added). However, the Supreme Court of Florida never heard the Writ of Prohibition in *SC17- 307* because it dismissed Plaintiff's appeal as untimely absent the prerequisite Order to Show Cause. Plaintiff's subsequent Motion for Reconsideration raising the due process violation of dismissing his appeal absent an Order to Show Cause or a Ten-day Notice, was summarily denied.[37]

c. Additionally, in *SC17-307*, the trial court stopped the trial/ final hearing on day two of four, before Plaintiff could put on a meaningful case-in-chief, call witnesses, or rest his case-in-chief. This prejudice was compounded by pre-existing rulings by Judge Ohlman depriving Plaintiff of discovery subpoenas for out of state fact and complaining witnesses who could not be compelled to trial.  The trial was never resumed prior to Judge Ohlman entering a Report of Referee finding Plaintiff guilty and recommending sanction.

---

[36] Fla. R. App. P. § 9.030
[37] Fla. R. App. P. § 9.410

d. In *SC16-797* due process violations occurred when the referee, Judge Curtis Neal[38] entered a post-trial order sanctioning Plaintiff Chestnut by excluding nearly all of his trial evidence and testimony without affording him an evidentiary hearing. This order was in response to a pre-trial motion by The Florida Bar alleging discovery violations by Plaintiff. Excluding a party's evidence is amongst the harshest of sanctions for alleged discovery violations and **requires a court to conduct a *Kozel*[39] evidentiary hearing** and make evidentiary findings reasonably supporting the sanction. Judge Neal failed to conduct a *Kozel* hearing prior to excluding Plaintiff's evidence, a violation of due process of law. Excluding Plaintiffs evidence post-trial allowed for the factual findings of guilt based upon The Florida Bar's evidence, a distorted one -sided record. Judge Neal was later disqualified as referee in *SC17-307* for summarily granting prejudicial motions filed by The Florida Bar *ex-parte*[40]. The *ex-parte* orders entered without hearing from Plaintiff were prejudicial to Plaintiff.

---

[38] Hon. Curtis J. Neal, State of Florida, Fifth Judicial Circuit, In and For Hernando County.
[39] *See Kozel v. Ostendorf*, 629 SO. 2d 817,818 (Fla. 1993).
[40] Florida Code of Judicial Conduct – provides in pertinent part:
   "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or

e. In *SC16-797*, Plaintiff Chestnut was denied his 14th Amendment right to equal protection under law, when he was treated differently and less favorably than similarly situated individuals.[41]   Plaintiff was found guilty of Florida Bar Rule violations for allegedly seeking approval of a 40% contingency fee contract without presenting the client to the court for prior court approval of the fee contract.[42]

    i. First, there were two white attorneys (Kim Yozgat and Evan Small) who worked on the *Baker* [43]case, worked on the drafting and client signing of the  disputed 40% fee contract, actually appeared at the fee approval hearing without the client in the absence of Plaintiff Chestnut, and then both sued Plaintiff Chestnut and settled for employee bonuses resulting from the subject 40% attorney fee, yet neither was ever prosecuted or

---

consider the other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding..." *See* Florida Code Jud. Conduct, Canon 3B(7), formerly Canon 3A(4);
    *see also  Rose v. State,* 601 SO.2d 1181, 1183 (Fla. 1992)("Nothing is more dangerous and destructive of the impartiality of the judiciary than a one-sided communication between a judge and a single litigant.").
[41] *See Campbell v. Rainbow City, Ala.,* 434 F. 3d. 1306,1314 (11th Cir. 2006); *see also Griffin Idus., Inc. v. Irvin,* 496 F.3d 1189 (11th Cir. 2007).
[42] *See* Rule 4-1.5, Rules Regulating The Florida Bar.
[43] *Baker v. Chestnut,* 2013-CA-3768, tried in the Eighth Judicial Circuit Court, In and For Alachua County, Florida.

sanctioned by The Florida Bar, only Plaintiff Chestnut, the black attorney.

ii.   Second, a similarly situated white attorney failed to present his client for a hearing to approve a 40% contingency attorney fee after settling a wrongful death case, and not only was he not prosecuted or sanctioned by The Florida Bar (as opposed to Plaintiff Chestnut), but the 2d DCA found that a 40% contingency fee contract could be approved without a fee approval hearing. *See Mahany v. Wright's Healthcare & Rehab. Ctr.*, 194 So.3d 399, 402 (Fla. 2d DCA 2016).   Thus, the very conduct, in Plaintiff  Chestnut's instance was considered misconduct, and relied upon by the Supreme Court of Florida under *SC16-797* to disbar Plaintiff Chestnut in 2019, yet a similarly situated white attorney engaging in the same conduct, in 2016 was determined to be allowable and he was never prosecuted or sanctioned by The Florida Bar or Supreme Court of Florida.

f. In *SC18-1614* the Report of Referee by Judge James Baxley[44] recommended, and the Supreme Court of Florida granted a permanent disbarment of Plaintiff Chestnut, again with no Order to Show Cause or evidentiary hearing. However, most notable is the continued pattern depriving Plaintiff Chestnut of a fair and impartial tribunal, throughout discovery and trial the Referee inhibited or prohibited Plaintiff Chestnut's ability for discovery, specifically obstructing Plaintiff's discovery to prove affirmative defenses like Fraud against The Florida Bar and Grievance Committee members, after complaining witnesses testified to submitting a complaint that did not mirror the charges from the Grievance Committee. At trial the Referee admitted as follows:

---

[44] Hon. James R. Baxley, Circuit Court Judge, State of Florida Fifth Judicial Circuit Court, In and For Lake County.

```
11        MR. CHESTNUT:  -- so I understand the
12   Court is constructively striking my affirmative
13   defense of fraud.  Is that correct?
14        THE COURT:  Well, I would -- I would
15   probably say yes, sir.
16        MR. CHESTNUT:  Okay.  So just so I'm
17   clear, you're striking my affirmative defense.
18        THE COURT:  Yes.  I don't see how that
19   comes into play, whether you make ethical
20   violations or not.
21        MR. CHESTNUT:  All right.
22        THE COURT:  Okay?
23        MR. CHESTNUT:  Your Honor, again, just
24   for the record, I renew on a separate basis a
25   motion for mistrial, Your Honor --
```

*See  Trial Transcript, The Florida Bar v. Christopher Chestnut, SC18-1614,* 4/2/2019, pg. 223, lns. 16-25.

Judge Baxley also unfairly inhibited Plaintiff Chestnut's impeachment of witnesses on prior inconsistent statements and veracity; yet entered a guilty finding and recommended permanent disbarment for alleged trial misconduct.

g.  Overall, The Florida Bar and Supreme Court of Florida habitually denied Plaintiff due process and equal protection in erroneously and inequitably prosecuting and sanctioning Plaintiff for alleged misconduct occurring in states other than Florida.  Rule 3-4.6 (b)(2),

Rules Regulating The Florida Bar, Choice of Law provision allows for The Florida Bar sanction of an attorney licensed in Florida for out of state misconduct, if that attorney has been previously found guilty of lawyer misconduct by the foreign jurisdiction.  If there has been no finding of guilt by the foreign jurisdiction, The Florida Bar may prosecute the attorney for the alleged misconduct occurring out of state, but must apply the foreign jurisdiction's law / professional rules and regulations in determining guilt of the attorney   before sanction.[45] Plaintiff was disbarred upon findings of guilt in foreign jurisdictions where there was neither finding of guilt nor sanction of Plaintiff for alleged lawyer misconduct in that foreign jurisdiction.  Yet Plaintiff was erroneously prosecuted under Rules Regulating the Florida Bar, and sanctioned under Rules Regulating the Florida Bar, with no application of the foreign jurisdictions law as required by Rules Regulating the Florida Bar.  Not only did The Florida Bar violate its own rules in prosecuting Plaintiff Chestnut under Rules Regulating the Florida Bar, but no similarly situated white attorney disbarred in 2019 involving out of state misconduct, was subject to the sanction of disbarment in the absence of a foreign tribunal finding that lawyer

---

[45] *Id.*

guilty of a crime or rule violation in that foreign jurisdiction. See attached, *Exhibit E, 2019 Chart on Florida Bar Disbarments & Revocations. Cf., SC 19-1373, The Florida Bar v. Scott Maddox*, where Mr. Maddox (a white male attorney) plead guilty to 3 federal counts involving public corruption and received a sanction of 30 days from The Florida Bar; yet, Plaintiff (a black male) has no criminal convictions and was disbarred then permanently disbarred on rule violations such as: failure to communicate, lack of diligence, failure to provide a settlement statement to a vendor, etc.

h.  Additionally, Plaintiff Chestnut was habitually prosecuted and sanctioned for alleged conduct, that even if proven to be true, would have been committed or omitted by other attorneys in the law firm with direct supervision over the respective file. [46]  Yet, neither the lawyers directly assigned to the file, nor the direct supervisor (Managing

---

[46] Rule 4-5.1(c), Rules Regulating The Florida Bar:
    A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:
    1. The lawyer orders specific conduct or, with knowledge thereof, ratifies the conduct involved; or
    2. The lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated by fails to take reasonable remedial action.

Attorney) of the assigned attorney were prosecuted or sanctioned in any of these cases; while Plaintiff Chestnut was disbarred and permanently disbarred in contravention Rule 4-1.5(c), Rules Regulating The Florida Bar. Similarly situated white lawyers who mass advertise and have multiple offices have not been disbarred for allegations of misconduct committed by subordinate attorneys assigned directly to the aggrieved claimant, with no direct supervisory authority over the individual assigned attorney. Furthermore, similarly situated white attorneys who were disbarred in 2019, were disbarred for alleged misconduct committed by other attorneys not under the sanctioned attorney's direct supervision, in contrast to Plaintiff's disbarment.

i. Claims brought under § 1983 are determined by federal law.[47] The purpose of §1983 is to: (1) to override certain kinds of state laws that were inconsistent with state law; (2) to provide a federal remedy where state law was inadequate; and, (3) to provide a federal remedy where the state remedy was available in theory but not in practice.[48]

31. Plaintiff has litigated and raised the issues of constitutionality, deprivation of due process and liberty, and equal protection challenges at the state court

---

[47] *See  McCeese v. Board of Education*, 373 U.S. 668, 674 (1963).
[48] *Monroe v. Pape*, 365 U.S. 167, 173-74 (1961) (emphasis added).

level in the highest court of the state. The alleged state action involves serious constitutional question and poses immediate and irreparable harm to Plaintiff, thus the Federal District Court should intervene and enjoin the disbarment orders.[49]

32. Plaintiff seeks intervention by the Federal District Court because he was repeatedly denied due process rights including but not exclusively, inability to receive a fair and impartial tribunal, and equal protection under the law, before the Supreme Court of Florida.[50]

33. Importantly, Plaintiff appreciates the well settled law that the Federal District Court does not have jurisdiction for substantive appellate review of a final state court judgment from the highest state court; and that is not the gravamen of Plaintiff's request of this Court. Plaintiff is seeking to enjoin the enforcement of the final state court judgment, for due process and equal protection violations, violations that do afford this court jurisdiction for declaratory and injunctive relief.[51]

---

[49] *See  Gay Students Organization a/University a/New Hampshire v. Bonner,* 367 F. Supp. 1088 (DC NH 1974).

[50] *See Gibson v Benyhill,* 411 U.S. 564 (1973) (Plaintiff Optometrists sought a prospective injunction to enjoin proceedings against them pursuant to a §1983 claim against the Alabama Board of Optometry that they could not get a fair and impartial hearing.).

[51] *See, Rhoades v. Penfold,* 694 F.2d 1043 (1983).

34. Equally, Plaintiff is not seeking a collateral attack on the final state court judgments, and because this lawsuit is an action for prospective declaratory and injunctive relief, *res judicata* does not apply as a defense to subject matter jurisdiction.[52]

## C.  PARTIES TO THIS ACTION

35. Plaintiff Chestnut is a 39 year-old African American Male, admitted by The Florida Bar to practice law in 2006. He is a graduate of University of Florida, College of Law and Florida State University. He was a Community Service Scholar and Student Government Senate President at Florida State University. He served as the first National Chair of the National Black Law Students Association at University of Florida College of Law in 2004-2005. Plaintiff Chestnut opened The Chestnut Firm, LLC in June 2006 in Gainesville, Florida focusing primarily on Plaintiff Personal Injury, Criminal Defense, and Wrongful Death Cases. Plaintiff Chestnut was one of very few African American Personal Injury Attorneys that engaged in mass media marketing in multiple jurisdictions. In 2014, Plaintiff Chestnut was co-trial counsel for one of the largest single event wrongful death cases in Florida History.[53] By 2015 The Chestnut Firm, LLC had grown into a multi-jurisdictional law firm with

---

[52] *Id.*
[53] *Cynthia Robinson et.al. v. R.J Reynolds*. $17 million compensatory, $23 billion punitive damages.

offices in Atlanta, Jacksonville, Gainesville, and Miami; over 40 staff members, approximately 8 staff attorneys, and more than 450 cases under active management. Plaintiff's law firm would annually give away hundreds of turkeys at Thanksgiving in the community, hundreds of gallons of gas at Christmas, and provide scholarships for post-secondary education. Plaintiff Chestnut is progeny to a fifth-generation family mortuary serving Gainesville, FL for over 100 years. His Mother was the first black female Mayor of Gainesville, Florida and the first black to be elected to the Florida Legislature from Gainesville, Florida since Reconstruction.  His mother, father and brother have each served multiple terms on the Alachua County Commission, with over 60 years of combined career of service in elected office ranging from school board to the Florida State Legislature. Plaintiff is also childhood friends with Mr. Andrew Gillum and was a key campaign advisor for Mr. Gillum's (Democrat) 2018 candidacy for Governor of Florida, an election won by now Gov. DeSantis (Republican).

36. The Florida Supreme Court is comprised of seven Justices appointed by the Gov. of Florida. Three of the sitting Justices were recently appointed by Gov. DeSantis in 2019. The remaining four Justices were appointed by Republican Governors. The Florida Supreme Court oversees The Florida Bar. The Florida Bar oversees all disciplinary actions against attorneys licensed in Florida from

investigation through the trial phase, where typically an appointed circuit judge sitting as referee, administers the trial process and issues a Report of Referee with Findings of Guilt and Recommendation for Sanction to the Florida Supreme Court for declaration of final sanction and disposition of disciplinary action against a Florida attorney.

## II.  COUNT I - 42 U.S.C. § 1983 DEPRIVATIONOF DUE PROCESS & PROSPECTIVE AND INJUNCTIVE RELIEF

### A. Allegations of Facts

37.  Plaintiff incorporates hereto paragraphs 1-36.

38.  At all times material hereto, Plaintiff Chestnut had a property and liberty interest in his license to practice law issued and by the Supreme Court of Florida. Plaintiff Chestnut was licensed to practice law only in the State of Florida.

39.  Plaintiff Chestnut is a member of a protected class under§ 1983 as a  black male.

40.  Prior to May 3, 2019, Plaintiff Chestnut was a member of The Florida Bar in good standing, and  was issued a license to practice law upon admission to The Florida Bar in 2006.

*41.* Plaintiff Chestnut had a prior disciplinary sanction of Public Reprimand issued in *SC14-1870.*[54]

42. Prior to May 3, 2019, Plaintiff Chestnut had received no interim sanction or discipline by The Florida Bar or any bar association for any other state.

43. On May 3, 2019 an order disbarring Plaintiff Chestnut was entered; no order to show cause as to why the court should not disbar him was issued or hearing granted on this disbarment prior to entry of the order.

44. On August 22, 2019, The Florida Supreme Court entered an order permanently disbarring Plaintiff Chestnut; no order to show cause was issued or hearing granted on this disbarment prior to the entry of the order.

## II. A. i.  Procedural History of SC16-797 & SC17-307 & SC18-1614

45. The Order to Disbar Plaintiff Chestnut relied upon the Findings of Fact and Recommendation for Sanction in *SC16-797, SC16-1480* and *SC17-307* which all were consolidated into a common case number of SC16-797 on or about April 29, 2019.

46. Plaintiff Chestnut filed a Notice of Intent to Seek Review of Report of Referee in SC16-797 on or about June 17, 2017.

---

[54] Consent Judgment of Guilt to rule violations: 4-1.3 (Diligence), 4-1.4(a)(Informing Clients of Status Representation); 4-l.4(b)(Duty to Explain Matters to Client).

47. In *SC16-797*, Plaintiff Chestnut filed an appellate Answer Brief (10.17.17) and Reply Brief were filed (11.23.17), oral hearing was denied, and no written opinion was ever filed by the Supreme Court of Florida.

48. In *SC 17-307*, Plaintiff Chestnut filed a Cross Notice of Intent to Seek Review of Report of Referee (6.14.18), The Florida Bar filed an Initial Brief (6.21.18), on (7.16.18) Plaintiff filed a Motion for Extension of Time to File Cross Initial/ Answer Brief on the Merits (7.25.18), the Supreme Court of Florida denied that motion for extension on (7.25.18), and the Florida Supreme Court denied Plaintiffs motion to Supplement the Record on (7.27.19).

49. The Supreme Court of Florida denied Plaintiff's Writ of Prohibition (filed 4.3.18) concerning the Referee's disqualifying conduct four months after its filing on August 3, 2018.

50. On August 20, 2018, The Clerk of Court for the Supreme Court of Florida dismissed Plaintiffs Cross- Notice of Intent to Seek Review of the Referee's Report, effectively dismissing his appeal without a hearing.[55] Plaintiff filed a

---

[55] *See* Fla. R. App. P. § 9.410(2018) (an appellate court may dismiss a case on its own motion but only after ten-days' notice warning of possible dismissal.); *see also United Auto. Ins. Co. v. Total Rehab & Med. Ctr.*, 870 SO. 2d 866 (Fla. 3d DCA 2004).

Motion for Reinstatement (10.8.19), the Supreme Court denied Plaintiff's Motion for Reinstatement.

**II. A. ii.   Social Political and Racial Makeup of the Supreme Court of Florida.**

51. Justices Muniz, Lagoa, and Luck were appointed by Gov. DeSantis (Republican) in 2019. The remaining four Justices were appointed by previous Republican Governors). Presently, there are no sitting Justices appointed by or under a Governor elected as a Democrat.

52. There are presently no black Justices on the Supreme Court of Florida for the first time in nearly four decades.

**II. A. iii. The Florida Supreme Court's Order to Disbar Plaintiff Chestnut is Unconstitutional and Invidiously Discriminatory.**

53. On or about May 3, 2019, Justices Charles Canady, Justice Ricky Polston, Justice Jorge Labarga, Justice C. Alan Lawson, Justice Barbara Lagoa, Justice Robert Luck, and Justice Carlos Muniz signed an order to disbar and a separate order to permanently disbar Plaintiff on August 22, 2019, both entered by John A. Tomasino (Clerk of The Florida Supreme Court), all acting

in their official capacities.[56] *See  attached Exhibit A, Order to Disbar & Order to Permanently Disbar Christopher Chestnut.*

54. The order is invidiously discriminatory because it failed to articulate a valid reason or nexus to the qualifications, conduct, or character of Plaintiff Chestnut and the imposition of the most severe sanction of permanent disbarment.[57]

55. The Supreme Court of Florida failed to issue Plaintiff an Order to Show Cause as to why the sanction of disbarment or permanent disbarment should not be imposed prior to entering the Orders to Disbar and Permanently Disbar Plaintiff.[58]

56. The Supreme Court of Florida denied due process entirely before entering the Orders to Disbar and Permanently Disbar Plaintiff.

57. The Orders are in part based upon the Report of Referee in *SC17-307*.

58. In *SC 17-307* the following due process violations occurred :

---

[56] The Order to Disbar instructs Mr. Chestnut to shut down his practice within 30 days of thee- filed order, to immediately cease accepting new cases, and to petition for a re-hearing if desired but the disbarment would stand notwithstanding.

[57] *Yick Who v. Hopkins*, 118 U.S. 356,363 (1886).

[58] The Federal Courts hold: Certainly, the practice of law is not a matter of the State's grace. Regardless of how the State's grant of permission to engage in this occupation is characterized (whether the practice of law is a right or a privilege), it is sufficient to say that a person cannot be prevented from practicing law except for valid reason. *See Ex parte Garland*, 4 Wall, 333,379 (emphasis added).

a. The Referee, Judge Ohlman, had no authority or jurisdiction to issue a Report of Referee because he was technically disqualified pursuant to Fla. R. Jud Admin. § 2.330, prior to filing the Report of Referee on April 18, 2018, where he failed to respond to a Motion to Disqualify within the requisite 30 days; thus, the Report of Referee its findings and recommendations are null and void and insufficient as a basis for disbarment or permanent disbarment[59];

b. The Supreme Court of Florida acknowledged receipt but never ruled on Plaintiff's Writ of Prohibition seeking immediate relief from the unsanctioned actions of Judge Ohlman in SC17-307, a deprivation of due process[60];

c. Plaintiff Chestnut, was not provided an opportunity to present a defense, as the trial was stopped on day two of the four-day trial in violation of due process, nor was Plaintiff provided an opportunity to conduct discovery pre-trial;[61]

---

[59] *See Fuster-Escalona v. Wisotsky*, 781 So.2d 1063,1065 (Fla. 2000)(When a trial court fails to act in accord with the statutes and procedurals rules on a motion to disqualify, an appellate court will vacate a trial court judgment that flows from that error.).

[60] *Id.* ("the allegation of judicial prejudice is serious and cannot be ignored.").

d. All three counts arose from allegations of lawyer misconduct occurring out of state, in Georgia and South Carolina respectively. Rule 3-4.6(b)(2)[62], Rules Regulating the Florida Bar, allows The Florida Bar prosecution and sanction for foreign jurisdiction misconduct, but the foreign jurisdiction's law must be applied in the prosecution of guilt, however, in the cases *sub judice*, Plaintiff was erroneously prosecuted under Rules Regulating the Florida Bar.[63] Furthermore, Plaintiff was unequally sanctioned for alleged out of state misconduct in comparison to his white counterparts. In these instances, the Supreme Court of Florida did not follow its rules, and permanently disbarred Plaintiff who was never convicted of any crimes or found guilty of civil or professional rule violations in foreign jurisdictions, whereas white attorneys who were disbarred for foreign jurisdiction misconduct were found guilty of criminal violations in the foreign jurisdiction under their

---

[62] Rule 3-4.6 (b)(2), Rules Regulating The Florida Bar requires that: The Florida Bar and the Referee are to apply the law of the foreign jurisdiction when exercising disciplinary authority over a Florida Bar member for alleged conduct that occurred in a jurisdiction other than the State of Florida.

[63] *See Holland v. Gross*, 89 So. 2d 255, 2158 (Fla. 1956) (misapplication of law to established facts renders the decision of the trial court made in nonjury setting clearly erroneous).

foreign jurisdiction's rules, subject to less harsh sanction than Plaintiff for more severe violations.[64]

e. Plaintiff Chestnut's appeal was dismissed by the Supreme Court without an Order to Show Cause or ten-day warning of dismissal pursuant *to Fla. R. App. P.* §9.410.

59. The Supreme Court has also relied upon the consolidated cases of *SC 16-797* in the orders to disbar Plaintiff Chestnut.

60. In consolidated *SC 16-797* the following due process violations occurred:

a. The Referee, Judge Neal, violated due process by excluding Plaintiff Chestnut's evidence pos-trial, absent the requisite *Kozel* hearing, in deprivation of due process, then entered a finding of guilt.[65] Judge Neal also precluded Plaintiff Chestnut from discovery and evidence in defense of solicitation allegations, after advising at the Emergency Suspension Hearing in SCI6-1589 that he would do so.

b. Additionally, Judge Neal, violated Equal Protection, in Count II, *Baker v. Chestnut*, by finding Plaintiff Chestnut (black attorney) guilty of an illegal contract and excessive attorney fee for a straight 40% contingency fee contract in contrast to the pre-approved Florida Bar

---

[64] *See GJR Invs., Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1367 (11th Cir. 1998).

[65] *See, SC16-797,* Record Index Filings: 55,57,77, and 78.

sliding scale contingency fee contract, because the 40% fee contract was not pre-approved at a hearing with the client present. However, a similarly situated white attorney was not prosecuted for a straight 40% contingency fee agreement and fee taken without a hearing in *Mahany v. Wright's Healthcare & Rehab. Ctr.* , 194 So. 3d 399 (Fla. 2d DCA 2016) (finding a fee approval after a hearing before a judge was preferred but not required).

c. Furthermore, Judge Neal found guilt against Plaintiff Chestnut, on these charges of excessive fee and illegal contract, Kim Yozgat and Evan Small (both white attorneys), were the attorneys with day to day supervision of that case at the time the contract was drafted, consulted with the Bakers when the contract was signed, and are the attorneys that drafted and sought fee approval without the client present for the hearing; yet were not prosecuted or found guilty of those acts.

61. In *SC18-1614,* the following due process violations occurred:

a. Plaintiff was prohibited from pre-trial discovery on his plead Affirmative Defense of Fraud and denied him opportunity at trial to present or adduce evidence of Fraud at trial. On appeal, Plaintiff was denied a ten-day order to show cause as to why the appeal should not

be dismissed for untimeliness, after two orders denying Plaintiffs motions for extension of time for Plaintiff to retain appellate counsel.

62. Plaintiff Chestnut has suffered immediate and irreparable harm by the taking of his sole law license and liberty to earn a living by enter of final orders by the Supreme Court of Florida without the requisite due process as provided law.

63. As such, the Justices sitting on the Supreme Court of Florida had a duty to follow the law as prescribed by the U.S. and Florida Constitution, to include, but not exclusively, procedural and substantive due process when seeking to sanction Plaintiff Chestnut with disbarment and permanent disbarment.

64. Plaintiff Chestnut was entitled to due process in state bar disciplinary proceedings.[66]

65. Plaintiff Chestnut was entitled to an opportunity to be heard and defend himself in the subject state bar disciplinary proceeding to disbar and permanently disbar.[67]

66. The Justices of the Supreme Court of Florida knew or should have known that the court must follow due process as required by law in seeking to disbar and permanently disbar Plaintiff Chestnut.

---

[66] See, Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626 (1985).
[67] See, The Florida Bar v. Tipler, 8 so.3d 1109, 1118 (Fla. 2009).

67. The Justices of the Supreme Court of Florida knew or should have known that it must provide Plaintiff Chestnut Equal Protection of the law under §1983 the Fourteenth Amendment.

68. On May 3, 2019 and August 22, 2019  the Justices on the Supreme Court of Florida in their official capacities breached  their duty by taking state action violating the due process rights of Plaintiff Chestnut, by entering an order to disbar and permanently disbar Plaintiff Chestnut absent a hearing, notice, or sufficient evidentiary basis; respectively.

69. Additionally, the Florida Supreme Court Justices in the official capacities violated Equal Protection law in their state action depriving Plaintiff Chestnut of due process and ability to have a fair trial before a neutral tribunal, unequally applying its rules and law for the specific purpose of intentionally discriminating against him in prosecution and sanction, and  in sanctioning him more harshly than similarly situated white attorneys.

70. As a direct and proximate result of the illegal state action by the Supreme Court of Florida, the Justices in their official capacities and the Clerk of Court, Plaintiff Chestnut has suffered the immediate and irreparable harm of losing his only license to practice law; consequently, had to close his law office losing his means of earning income.

71. As direct and proximate result of the illegal state action taken by the Justices on the Supreme Court of Florida in their official capacities, an immediate and irreparable harm has been inflicted upon the greater community as Plaintiff Chestnut through his law practice regularly performs philanthropic contributions to the community, is a mentor to many other attorneys, and assists clients who otherwise would not have access to court by accepting cases that other attorneys decline.

72. Mr. Chestnut is praying only for equitable relief and no money damages, thus the Federal District Court maintains jurisdiction and this lawsuit is allowed against the State of Florida under the Eleventh Amendment.

WHEREFORE, Plaintiff, CHRISTOPHER CHESTNUT, *pro se,* hereby petitions this honorable Court for a final judgment declaring the illegal orders to disbar and permanently disbar Plaintiff Chestnut null and void in violation of due process and §1983 and enjoining the Justices on the Supreme Court of Florida from enforcing the sanction of disbarment and permanent disbarment, and further petitions this honorable Court for a trial by jury  on all issues so triable as a matter of law.

Respectfully submitted this 30th day of December, 2019.

By:   **[s] Christopher Chestnut**

CHRISTOPHER M. CHESTNUT

Telephone: (855) 374-4448

Facsimile:  (855) 377-2667

christopherchestnut@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 30th day of December, 2019, the foregoing was physically served upon the Clerk of Court for the United States District Court for the Northern District of Florida.

<u>**By:    [s] Christopher Chestnut**</u>

CHRISTOPHER M. CHESTNUT

**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

CHRISTOPHER CHESTNUT,

    **Plaintiff,**

**v.**

JUSTICE   CHARLES   CANADY,
JUSTICE   RICKY   POLSTON,
JUSTICE   JORGE   LABARGA,
JUSTICE   C.   ALAN   LAWSON,
JUSTICE   BARBARA   LAGOA,
JUSTICE   ROBERT   LUCK,   and
JUSTICE CARLOS MUNIZ; in their
official capacities as Justices for the
Florida Supreme Court of Florida;
JOHN A. TOMASINO, in his official
capacity as Clerk for the Supreme
Court of Florida;

    **Defendants.**

**CASE NO.:  4-19-CV-271-RH-MJF**

**PLAINTIFF'S MOTION FOR
LEAVE TO AMEND FOR A
SECOND AMENDED COMPLAINT
FOR PROSPECIVE INJUNCTIVE
AND DECLARATORY RELIEF
AGAINST STATE OFFICIALS IN
THEIR OFFICIAL CAPACITIES**

**EXHIBIT A**

Filing # 88972981 E-Filed 05/03/2019 03:18:32 PM

# 𝔖𝔲𝔭𝔯𝔢𝔪𝔢 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔉𝔩𝔬𝔯𝔦𝔡𝔞

## FRIDAY, MAY 3, 2019

**CASE NOS.: SC16-797, SC16-1480, & SC17-307**
Lower Tribunal No(s).:
2015-00,161(4B); 2015-00,505(4C); 2015-00,565(4D);
2016-00,047(4C); 2016-00,193(4A); 2016-00,229(4B);
2016-00,473(4B); 2016-00,517(4D); 2017-00,114(4B)
2017-00,306(4D); 2017-00,249(4D)

THE FLORIDA BAR          vs.     CHRISTOPHER M. CHESTNUT

Complainant(s)                        Respondent(s)

Upon consideration of the reports of referee and the briefs filed in these consolidated cases, the referees' findings of fact and recommendations of guilt are hereby approved. However, the recommended discipline, a three-year suspension, is disapproved, and respondent is disbarred effective thirty days from the date of this order so that respondent can close out his practice and protect the interests of existing clients. If respondent notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Respondent shall fully comply with Rule Regulating the Florida Bar 3-5.1(h). Further, respondent shall accept no new business from the date this order is filed.

The respondent is further directed to provide payment to Dr. Hoehn in the amount of $2,000.00, under the terms and conditions set forth in the report.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Christopher M. Chestnut in the amount of $28,049.43, for which sum let execution issue.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of May, 2019, the foregoing was electronically served upon the Clerk of the Florida Supreme Court by notice of electronic filing generated automatically by CM/ECF, and by notice of electronic filing in the Florida electronic filing system under *SC16-797.*

BY: */s/ Christopher Chestnut*
**CHRISTOPHER M. CHESTNUT**

CASE NOS.: SC16-797, SC16-1480, & SC17-307
Page Two

Not final until time expires to file motion for rehearing, and if filed,
determined. The filing of a motion for rehearing shall not alter the effective date
of this disbarment.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, LAGOA, LUCK, and
MUÑIZ, JJ., concur.

A True Copy
Test:



John A. Tomasino
Clerk, Supreme Court

as
Served:

WENDELL TERRY LOCKE
RICHARD KEITH ALAN, II
CARLOS ALBERTO LEON
CHRISTOPHER M. CHESTNUT
ADRIA E. QUINTELA
HON. CURTIS JUDSON NEAL
HON. JONATHAN DANIEL OHLMAN

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| CHRISTOPHER CHESTNUT, | |
| **Plaintiff,** | CASE NO.: 4-19-CV-271-RH-MJF |
| **v.** | |
| JUSTICE CHARLES CANADY, JUSTICE RICKY POLSTON, JUSTICE JORGE LABARGA, JUSTICE C. ALAN LAWSON, JUSTICE BARBARA LAGOA, JUSTICE ROBERT LUCK, and JUSTICE CARLOS MUNIZ; in their official capacities as Justices for the Florida Supreme Court of Florida; JOHN A. TOMASINO, in his official capacity as Clerk for the Supreme Court of Florida; | PLAINTIFF'S MOTION FOR LEAVE TO AMEND FOR A SECOND AMENDED COMPLAINT FOR PROSPECIVE INJUNCTIVE AND DECLARATORY RELIEF AGAINST STATE OFFICIALS IN THEIR OFFICIAL CAPACITIES |
| **Defendants.** | |

**EXHIBIT B**

Filing # 94603725 E-Filed 08/22/2019 12:28:22 PM

# Supreme Court of Florida

## THURSDAY, AUGUST 22, 2019

**CASE NO.: SC18-1614**
Lower Tribunal No(s).:
2017-00,372(4D); 2018-00,372(4B);
2018-00,441(4C); 2018-00,481(4D)

THE FLORIDA BAR          vs.    CHRISTOPHER M. CHESTNUT

Complainant(s)                        Respondent(s)

The uncontested report of the referee is approved and respondent is permanently disbarred. Respondent is currently disbarred; therefore this permanent disbarment is effective immediately. Respondent shall fully comply with Rule Regulating the Florida Bar 3-5.1(h). Respondent is further directed to comply with all other terms and conditions set forth in the report.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Christopher M. Chestnut in the amount of $9,699.42, for which sum let execution issue.

Not final until time expires to file motion for rehearing, and if filed, determined. <u>The filing of a motion for rehearing shall not alter the effective date of this permanent disbarment.</u>

CANADY, C.J., and POLSTON, LABARGA, LAWSON, LAGOA, LUCK, and MUÑIZ, JJ., concur.

A True Copy
Test:

John A. Tomasino
Clerk, Supreme Court

as
Served:
CARLOS ALBERTO LEON                CHRISTOPHER M. CHESTNUT
HON. JAMES R. BAXLEY, JUDGE        ALLISON CARDEN SACKETT

IN THE SUPREME COURT OF FLORIDA

(Before a Referee)

THE FLORIDA BAR,

      Complainant,

v.

CHRISTOPHER M. CHESTNUT,

      Respondent.

Supreme Court Case
Nos.: SC165-797; SC16-1480; SC17-307

The Florida Bar File Nos.:
2015-00,161(4B), 2015-00, 505(4C0,
2015-00, 565(4D), 2016-00, 047(4C0,
2016-00,194(4A0, 2016-00, 229(4B),
2016-00,472(4b) & 2016-00, 517(4D),
2017-00,114(4B), 2017-00,249(4D);
2017-00,306(4D)

---

**RESPONDENT MOTION FOR REHEARING OF THE ORDER TO DISBAR
CHRISTOPHER CHESTNUT**

COMES NOW, Respondent, CHRISTOHPER CHESTNUT, and files this petition pursuant
to *Fla. R. App. P.* § 9.330 requesting a hearing, clarification, and written opinion on the recent
Order to Disbar Respondent issued on May 3, 2019 and offers in support thereof as follows:

I.     INTRODUCTION

The most recent Order to Disbar Attorney Christopher Chestnut is a sobering jolt of

antitrust and racism so pernicious that it concurrently questions whether attorneys can be trusted to self-regulate, and whether the systemic racial inequities of the Jim Crow Judiciary has been cured post Virgil Hawkins; or is resurging post Barack Obama.  When the highest court in the state takes the license of an attorney with abhorrent disregard of due process, the chilling paralysis pulsing through the body politic is silent but palpable.

The collateral affect of lynching has not changed through time. The celebration of headlines and photos of strange fruit hanging is relegated to the lynch mob, who proclaims a resonate declaration, by lynching one ambitious accomplishing black attorney as an example to all minority attorneys; that they need stay in their place and may aim to do well but not so well as to challenge the market share of "members only" institutional law firms. Meanwhile the silent majority of lawyers and public whisper softly (as not to be heard and become the next victim) the nauseating doubt toward the appointed circle of power that would blindly convict and sanction loss of life or liberty without a fair trial and equitable due process for the accused.

Black parents will look at this abuse of process and know that it is not isolated to Attorney Chestnut, that this may be the story they hear about, but this fate has silently been suffered by many more black attorneys anonymously; and they will cringe at realization that if black attorneys can't get due process and are lynched for ethnic intimidation , there is no hope for fairness when their children stand before the judiciary be it civil or criminal. Lawyers will read this and begin to question whether they can really trust the liberty of their livelihood in the practice of law to self-regulation by appointed boards typically comprised

of a membership that their law school gpa, family portfolio, or ethnicity / gender may automatically preclude them from, yet simultaneously make them a target of.

## II.   SUMMARY

Attorney Chestnut, was entitled to and guaranteed due process and a right to defend throughout the bar disciplinary proceedings.  *See Chambers v. Baltimore & O.R.Co.,* 207 U.S. 142, 148 (1907). *See also, Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626 (1985) (that due process provides an attorney the right to fair notice of the charges against him and the opportunity to be heard in defending those charges before sanction by the Court.);*See, The Florida Bar v. Tipler,* 8 So. 3d 1109, 1118 (Fla. 2009); *see also The Florida Bar v. Committee,* 916 So.2d 741, 745 (Fla. 2005).  However, at the trial court level there was a systemic deprivation of due process and fundamental error in all of the underlying cases, making the factual findings, findings of guilt, and recommendation of sanction in both Report of Referee unreliable and unreasonable.

There are particular points of facts and law that the Court has overlooked or is misapprehending in its Order to Disbar Attorney Chestnut, that are articulated herein.  It is also unclear the specific legal and factual basis from the specific cases that the Court relied upon in concluding a reasonable basis for disbarment of Attorney Chestnut as an appropriate sanction. Thus, Attorney Chestnut is asking for a written opinion with clarification as to particular legal basis for the ruling.

Although Attorney Chestnut is petitioning for a re-hearing under *Fla. R. App. P.* § 9.330, it is important to note for the record, there was no initial hearing on the sanction of

disbarment or the factual and legal findings leading up thereto, prior to the entry of Order to Disbar; thus this request is for a First hearing.

Furthermore, this Court has habitually deviated from its precedent of Due Process in managing Attorney Chestnut's cases. He was not afforded a requisite Order to Show Cause before the entry of the Order to Disbar Christopher Chestnut, an order that exceeded the referee recommendations of a three year suspension; Attorney Chestnut was not granted an Order to Show Cause or ten-day notice in *SC17-307* before his Notice of Appeal was dismissed; and, Attorney Chestnut raised the aforementioned Due Process violations regarding the appeal in *SC17-307* in a Motion to Reinstate Appeal that was denied.

The Report of Referee in *SC17-307* is void for lack of jurisdiction and even though consolidated, should not be considered by this Court for guilt or sanction. Attorney Chestnut filed a Writ of Prohibition on the issue of disqualification of Judge Ohlman in *SC17-307*, but the Court deprived Attorney Chestnut of due process in deferring ruling on the Writ instructing him to include the argument in appeal, and the appeal was dismissed.

The Report of Referee in *SC16-797* and *SC16-1480* has fundamental error and should not be heard or considered by this Court for purposes of guilt or sanction because it is the progeny of a due process violation where Attorney Chestnut's most vital evidence proffered at trial was struck post-trial by an *ex parte* Order entered by referee Judge Neal who struck the evidence consequent to a sanction for alleged discovery violations but never conducted the requisite *Kozel* hearing.

An attorney is entitled a right to defend against the accusers aiming to deprive him of his

livelihood / law license.  In *SC17-307*, it was to be a four- day trial, but Judge Ohlman stopped the trial after 2 days and did not resume the trial, thus, Attorney Chestnut never rested his case in chief and was unable to call his witnesses before the referee entered a finding of guilt.  In *SC16-797* and *SC17-307*, the referee failed to compel the complaining witness to trial in certain counts and then alleged to rely upon testimony of that complaining witness from prior sworn testimony, but Atty Chestnut was never allowed to cross examine the witnesses on the majority of topics for accused misconduct.

Based upon the aforementioned, Attorney Chestnut respectfully petitions this court for a: 1.) Rehearing on the below enumerated particular points of law and fact that have been overlooked or misapprehended in the Order to Disbar Christopher Chestnut; 2.) Clarification on points of law and fact in the Order to Disbar Christopher Chestnut; and, 3.) A written opinion on the Order to Disbar Christopher Chestnut.

## III.   CHRONOLOGY

1. On Friday, May 3, 2019 The Florida Supreme Court entered an Order to Disbar, Respondent, CHRISTOPHER CHESTNUT.

2. On April 29, 2019 The Florida Supreme Court entered an Order to Consolidate Cases: SC16-707, SC16-1480 and SC17-307 into one common case number of SC16-797.

3. The Florida Supreme Court violated the due process rights of Respondent when exceeding the recommended sanction without first an order to show cause as to why the harsher sanction of disbarment should not be imposed.

## IV.   LEGAL ARGUMENT & AUTHORITY

**A. Fla. R. App. P. § 9.330(2)(A) – Points of Fact and Law Overlooked by the Court.**

**1. The Supreme Court of Florida Violated Due Process & its Precedent When it Issued an Order to Disbar Mr. Chestnut Without First Issuing an Order to Show Cause.**

 Late on the Friday afternoon of  May 3, 2019 Attorney Chestnut was blind-sided by a call from his office that The Florida Supreme Court had entered an e-filed Order to Disbar him effective in 30 days. This order was not preceded by a show cause order or hearing on the matter in violation of Due Process.  The Florida Supreme Court has a special obligation to respect the demands of due process.  *See, Willner v. Committee on Character & Fitness,* 373 US 96, 106 (1962) (Goldberg, J. Concurring).  Due Process and The Florida Supreme Court precedent require the issuance of an Order to Show Cause as to why an attorney receiving sanction should not receive a more severe sanction than recommended by the referee, up to and including disbarment. *See, Fla. Bar. V. Kinsella,* 260 So. 3d 1046, Fla. 2018).

 In the case *sub judice,* The Florida Supreme Court violated Mr. Chestnut's due process rights when on May 3, 2019 it issued an Order to Disbar Mr. Chestnut without first issuing an order to show cause as to why he should not receive a sanction more severe of disbarment when the referee recommendations   in the underlying cases was a 3 year suspension.

A state cannot exclude a person from the practice of law in a manner that contravenes the Due Process or Equal Protection Clause of the Fourteenth Amendment. *See, Schware v. Board of Bar Examiners of New Mexico*, 353 US 232, 238 (1957). The right to practice law is not "a matter of grace and favor". *See, Ex parte Garland*, 71 US 333, 379 (1867). Furthermore, The Florida Supreme Court is to follow the *Florida Standards for Imposing Lawyer Sanctions* in determining fair sanction for a lawyer found guilty of misconduct. *See, Fla. Bar v. Ratiner*, 46 So. 3d 35, 39 (Fla. 2010); *citing, Fla. Bar V. Temmer*, 753 So. 2d 555, 558 (Fla. 1999). Assuming arguendo, all the findings and recommendations of the Report of Referee on all the underlying cases are legally valid and true, there remains no reasonable basis in case law or fact under the *Florida Standards for Imposing Lawyer Sanctions* justifying disbarment as an appropriate sanction for Mr. Chestnut .

2. **The Florida Supreme Court Violated Due Process in SC17-307 When it Dismissed Mr. Chestnut's Appeal Absent Proper Notice and Denied His Motion to Reinstate the Appeal!**

The Florida Supreme Court on or about August 20, 2018 again blind-sided Attorney Chestnut when without the requisite warning it dismissed his Cross-Notice of Intent to See Review of the Referee's Report and Recommendations, effectively dismissing his appeal in *SC17-307* violating his Due Process. The supposition was that the unnoticed dismissal was because the deadline for Attorney Chestnut to file an initial brief had passed. However, Florida law is well established, the Court cannot

dismiss a party's appeal for failure to timely file an initial brief, unless it has first provided the party fair notice that the consequence of dismissal may flow from a late filing. *See, United Auto Ins. Co. v. Total Rehab & Med. Ctr.*, 870 SO. 2d 866, 869; *see also, Gail v. Gail*, 343 So. 2d 595 (Fla. 1977).

Similarly, *Fla R. App. P.* § 9.410 authorizes an appellate court to dismiss a case on it own motion, but only after **ten-days notice** to a party warning of possible dismissal. *See also, United Auto Ins. Co. v. Total Rehab & Med. Ctr.*, 870 SO. 2d 866, 869, n. 3 (Fla. 3d DCA 2004)("For example, where the court becomes aware that the initial brief has not been field, but there was no previous 'no further extensions' order, it is customary to enter an order giving the party ten days to file the initial brief with a warning that failure to comply may result in dismissal of the appeal."). Prior to the Court's dismissal Court denied extensions requested by Attorney Chestnut, thus had not issued any orders of "no further extension".[1] Without question, the unilateral unnoticed dismissal of the SC17-307 appeal violated Due Process.

Of further concern is The Florida Supreme Court's denial of Attorney Chestnut's Motion to Reinstatement Appeal in *SC17-307* entered on October 19, 2018. Public policy in Florida heavily favors deciding controversies on their merits, even when an initial brief is untimely. *See, North Shore Hospital, Inc., v. Barber*, 143 So.

---

[1] This Court issued this Order of Dismissal after denying Attorney Chestnut's request for extension to file an appellate brief field on July 25, 2018 and denied Attorney Chestnut's Motion to Supplement the record filed on July 27, 2018.

2d 849, 853 (Fla. 1962); *Apolaro v. Flacon*, 566 SO. 2d 815, 816 (Fla. 3d DCA 1990). The Court ignored due process, public policy, and fundamental fairness in hearing and reviewing both sides of the story prior to casting judgment.   Consequently, it later based its decision to disbar Attorney Chestnut on an incomplete record in *SC17-307*, but unfortunately, this has been a common occurrence with the treatment of Attorney Chestnut before this Court.

3. **Due process requires the right to defend and cross-examination of those whose word seeks to deprive a person of his livelihood.**

Attorney Chestnut was  underlined denied his due process right to defend himself against The Florida Bar's pending claims as The Florida Bar did not produce witnesses, but relied on attorney, third party, prior sworn testimony to prove its case and allegations depriving Attorney Chestnut of his constitutional right to confront the person whose allegation seeks to deprive him of livelihood. *Willner v. Committee on Character and Fitness*, 373 US 96, 103 (1963); *see also, Greene v. McElroy*, 360 US 474, 496-497 (1959).

The Court habitually blocked the discovery efforts by Attorney Chestnut to depose witnesses in all of the cases. In *SC16-797*, the Court allowed Attorney Robert Rush (alleged Complaining Witnesses) to file a Motion to Quash the subpoenas of Mr. and Mrs. Baker, and granted Mr. Rush's motion. Thus, not only was a complaining witness allowed to intervene and file pleadings on behalf of another party, Attorney Chestnut was found guilty of a rule violation based upon the execution of the

contingency fee contract by Mr. and Mrs. Baker but never allowed to depose either party on that point.

4. **Attorney Chestnut's Due Process was Violated in SC16-797 & 1480 When His Evidence was Struck Post-Trial Based Upon *ExParte* Rulings and Absent a Requisite *Kozel* Hearing.**

In SC16-797 & SC16-1480, the due process violations were so severe, it was fundamental error and Attorney Chestnut was entitled a new trial. *See, Murphy v. Int'l Robotic Sys., Inc.,* 766 So. 2d 1010, 1026 (Fla. 2000) (Deprivation of Due Process is a Fundamental Error. The Florida Supreme Court has held that where a fundamental error has occurred a new trial is essential to maintain public trust in our trial system.).

In *SC16-797* the referee, Judge Curtis Neal, after a nearly week-long trial, entered an order dismissing the gravamen of Attorney Chestnut's trial exhibits and evidence, distorting the record to appear that The Florida Bar had proved its case with competent and substantial evidence, when the true record as the exact opposite.[2]  The order striking the evidence was based upon a number of *ex parte* rulings previously entered by Judge Neal, and in response to a motion for sanctions filed by The Florida Bar.[3]

---

[2] This issue was raised on appeal but never addressed by the Court and oral argument was denied.

[3] Judge Neal was later disqualified as a referee in SC17-307 for the same pattern of issuing prejudicial *ex parte* rulings against Attorney Chestnut based solely on The Florida Bar's allegations of fact and law, without providing Attorney Chestnut the due process of being heard on the issues.

However, it is a fundamental error for a judge to strike a party's evidence as a sanction for alleged discovery violations absent having an evidentiary *Kozel* hearing and making certain evidentiary findings. *See, Kozel v. Ostendorf*, 629 SO. 2d 817, 818 (Fla. 1993). Judge Neal in fundamental error violated Attorney Chestnut's Due Process rights by striking his The referee, Judge Neal after the trial and presentation of evidence committed fundamental error by entering an order granting The Florida Bar's motion for sanctions to strike Attorney Chestnut's trial exhibits for discovery violation, absent a *Kozel* hearing.  this Court again based its decision to disbar Attorney Chestnut upon only one- half of the record after the Referee struck Attorney Chestnut's evidence and witnesses in violation of Attorney Chestnut's Due Process. See Coba v. Tricam Indus., 164 So. 3d 637, 646 (Fla. 2015). evidence without first making the *Kozel* findings, and submitting findings of fact and guilt based primarily on just the evidence entered by The Florida Bar.

Furthermore, the Order to Disbar Mr. Chestnut is based on the findings and recommendation of SC17-307. Where again The Supreme Court deprived Mr. Chestnut of his due process rights by: 1. Dismissing his appeal without notice or an order to show cause; 2. Denying Mr. Chestnut's Motion to Reinstate the Appeal; and, 3. Deferring ruling on a Writ of Prohibition against the Judge.

**5. The Referee Report in SC17-307 is Void as it was Entered Without Jurisdiction of Court.  After the Referee Was Disqualified and Lost Jurisdiction.**

Referee Ohlman in *SC17-307* was technically disqualified and lost jurisdiction on over the case on July 17, 2018,  but filed his Report of Referee on July 18, 2018. Consequently, his referee report filed on is void ab initio for lack of jurisdiction. See, *Garcia-Lawson v. Lawson*, 82 So. 3d 137, 137 (Fla. 4th DCA 2012).  A judgement entered without jurisdiction is void.  The case should have been remanded and another referee appointed to retry the case and enter a Report of Referee.

*Fla. R. Jud. Admin.* § 2.330 holds that a judge is automatically disqualified when he fails to rule on a motion to disqualify within 30 calendar days of the motion proffer. On or about March 16, 2018, Attorney Chestnut made a motion during trial to disqualify Judge Ohlman based upon a pattern and abandonment of judicial neutrality.[4] Judge Ohlman refused to rule on the motion at trial. *See below, Trial Transcript – SC17-307*, 3.16.18, p. 151-152:

25          THE COURT:  My understanding is any motions

---

[4] The bias demonstrated by the court was a specific overt act of abandoning judicial neutrality at trial by initiating unsolicited coaching "tips" to Florida Bar Prosecutor, Carlos Leon on how to enter in his evidence during Respondent's (Attorney Chestnut) case in chief, after Mr. Leon could not figure out how to accomplish such over objection.

Honorable Jonathan Ohlman
March 16, 2018                                150

```
1   you disqualify has to be in writing.  Until it is
2   in writing, go ahead, as opposed to the contrary.
3   Otherwise, please proceed with what you want to
4   do.
```

*Cf., Stockstill v. Stockstill*, 770 So.2d 191, 191 (Fla. 5th DCA 2000).  Motions to disqualify a judge during trial must be ruled on immediately. *See also, Fla. R. Jud. Admin.* § 2.330.  Judge Ohlman never ruled on that motion to disqualify. Consequently, April 17, 2018 on the 30th day, he was technically disqualified per *Fla. R. Jud. Admin.* § 2.330. Although his report of referee suspiciously dated for April 12, 2018, it is docketed as filed with The Florida Supreme Court Supreme April 18, 2018, after he had lost jurisdiction.

### *Florida Supreme Court Docket*

## Case Docket

Case Number: SC17-307 - Closed
THE FLORIDA BAR vs. CHRISTOPHER M. CHESTNUT
Lower Tribunal Case(s):2017-00,114(4B), 2017-00,249(4D), 2017-00,306(4D)

| | 04/06/2018 | APPENDIX-RESPONSE | CO The Florida Bar FB BY: CO Carlos Alberto Leon 98027 | TO EMERGENCY PETITION FOR WRIT OF PROHIBITION AND FOR AN ORDER VACATING ERRANT ORDERS |
|---|---|---|---|---|
| | 04/18/2018 | REFEREES REPORT | Jonathan Daniel Ohlman 310948 BY: Jonathan Daniel Ohlman 310948. | |
| | 04/18/2018 | MOTION-OTHER SUBSTANTIVE | PE Christopher M. Chestnut 22409 BY: PE Christopher M. Chestnut 22409 | FILED AS "RESPONDENT'S MOTION TO VACATE JUDGE OHLMANS RULINGS" |
| | 04/18/2018 | RECORD/TRANSCRIPT (FLA BAR) | Jonathan Daniel Ohlman 310948 BY: Jonathan Daniel Ohlman 310948 | W/INDEX OF RECORD, CERTIFICATION OF RECORD AND INDEX, & MISC. PLEADINGS (1 BOX) |

Attorney Chestnut then filed on April 18, 2019 a Motion to Vacate his prior rulings, that Judge Ohlman denied. Notwithstanding the denial, the order remains void for lack of jurisdiction. "An order entered without jurisdiction is a nullity, and cannot be considered harmless error. *Dragonmirecky v. Town of Ponce Inlet*, 891 So. 2d 633, 634 (Fla. 5th DCA 2005). A void judgment is a nullity and may be stricken at anytime. *See*, *M.L. Builders, Inc. v Reserve Developers, LLP*, 769 So. 2d 1079, 1082 (Fla. 4th DCA 2000).

## 6. Failure to exhaust other remedies prior to Disbarment; Disbarment is a Last Resort.

Disbarment is a sanction of last resort and lesser included sanctions should be first exhausted. *See, Bradley v. Fisher,*80 US 334, 335 (1872). To deprive one of an office of

this character would often be to decree poverty to himself and destruction to his family. *Id.* It must be clear that he is one who should never be at the bar, otherwise suspension is preferable. *Fla. Bar v. Murrell*, 74 SO. 2d 221, 223 (Fla. 1954). In the case *sub judice*, Attorney Chestnut has only been subject previously to a public reprimand. Furthermore, for the findings of guilt, assuming all are valid and legal, there is no precedent for disbarment in case law or rule; thus, to impose such here would be a violation of Equal Protection under the United States Constitution.

### 7. Race is a Factor! Attorney Chestnut was denied his Constitutional right to Equal Protection Under the Law in SC16-797.

In Count II of *SC16-797* (Baker) Chestnut was found guilty for violating R. 4-1.5(a) Excessive Fee; 4-1.5(d) Enforceability of Contracts; 4-1.5(f) (Contingent Fees) ; and, 4-8.4 (c) Dishonest, Fraud, Deceit, or Misrepresentation) arising from the contingency fee contract for 40% executed by the Bakers.

To claim selective enforcement in violation of the equal protection clause, Attorney Chestnut must show that: (1) he was treated differently and less favorably than similarly situated individuals, and (2) The Florida Bar unequally applied its Rules for the specific purpose of intentionally discriminating against him. *See Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006); *see also GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998). Therefore, to establish an equal protection violation, Attorney Chestnut must show that a similarly situated individual was treated better. *See generally Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189 (11th Cir.

2007).

Attorney Chestnut employed two the white attorneys -- Kim Yozgat and Evan Smalls -- who actually worked on the Baker case far more intimately than Attorney Chestnut, they: drafted the subject 40% representation agreement, sought approval of the straight 40% representation agreement in underlying the case, and was telephonically conferring with the Bakers live upon the signing the 40 % agreement, yet they were never charged or mentioned by Robert Rush in his initial bar inquiry on this matter and even after the undisputed evidence clearly pointed to their culpability, neither was ever charged or sanctioned for misconduct.


In fact, thereafter both sued Attorney Chestnut for their portion of the anticipated fee recovery and were paid bonuses by Attorney Chestnut based upon this case, even though the Chestnut Firm never took an attorney fee on this case, but settled the fee dispute with the Bakers and Mr. Rush for $600,000 in cost reimbursement as opposed to the $3,600,000 in attorney fee owed per the contract.   Neither of these two white attorneys were charged in the case were not charged by The Florida Bar with any Rule violations. *See, Scott v. Sanford,* 60 U.S. 393, 407-408 (1857).[5]  Instead, The Florida Bar targeted

---

[5] They had for more than a century before been regarded as beings of an inferior order, and altogether unfit to associate with the white race, either in social or political relations; and so far inferior, that they had no rights which the white man was bound to respect; and that the negro might justly and lawfully be reduced to slavery for his benefit. *Scott v. Sanford,* 60 U.S. 393, 407-408 (1857)(citing, Chief Justice Taney).

Attorney Chestnut – a black man. Based on a totality of circumstances, it's clear that Attorney Chestnut's constitutional right to equal protection under the law has been violated. Not even a new trial will cure this defect. Accordingly, dismissal of Count II (Baker) is should have previously occurred and is required at this time.

## 8. This Court deprived Attorney Chestnut by Overlooking the Failure of Referee to Follow Florida Law in Finding Guilt and Disbarring Chestnut.

Florida Bar Rule 3-4.6(b) requires that complaints filed for alleged out of state conduct must be prosecuted based upon the foreign jurisdiction's (other state), yet, everyone of the out of state claims where Attorney Chestnut was found guilty illegally employs Florida Bar Rules, thus both the finding of guilt and the sanction are void on every one of those counts.

Moreover, in *SC17-307*, Attorney Chestnut is found guilty of violating Rule 4-7.13 Deceptive and Inherently Misleading Advertising. The underlying facts were a former employee had her bio placed on The Chestnut Firm website post-employment by findlaw the website host, upon learning of the mistake Attorney Chestnut had the bio immediately removed. The lawyer, former employee was a Georgia lawyer who worked only in the Atlanta, Ga office of The Chestnut Firm, a multi-jurisdiction al law firm. However, the comment for section 4-7 clearly states:

> Subchapter 4-7 also does not apply to a website advertisement that does not offer the services of a Florida Bar member, a lawyer located in Florida, or a lawyer offering to provide legal services in Florida.

Attorney Chestnut was found guilty for a violation of a rule when the alleged violation is expressly exempted in the comment. The rule does not apply to advertisement of a Georgia Lawyer on a website for a Georgia office.

WHEREFORE, Attorney Chestnut hereby requests that this Court reconsider its May 3, 2019 Order to Disbar, based upon the overwhelming examples of Due Process violations, and enter a written order with clarification as to the legal and factual basis for the ruling subject to an order to show cause.

Respectfully submitted this 20th Day of May, 2019.

**/s/ Christopher M. Chestnut**
The Chestnut Law Firm, LLC
Pro Se

## A. CERTIFICATE OF COMPLIANCE

I hereby certify that the undersigned counsel certify that this Brief is submitted in 14 point proportionately spaced Times New Roman font, that this Brief complies with the applicable page limitations, and that this Brief has been filed by e-mail in accord with the Court's order of October 1, 2004. I the undersigned counsel do hereby further certify that the electronically filed version of this brief has been scanned and found to be free of viruses.

## B. CERTIFICATE OF SERVICE

I hereby certify that this, Attorney Chestnut's Cross Reply Brief, has been E-filed with The Honorable John A. Tomasino, Clerk of the Supreme Court of Florida, using the E-filing portal and that copies have been provided via email using the E-filing portal to Adria E. Quintela, Staff Counsel, The Florida Bar, aquintel@flabar.org, and Carlos Alberto Leon, Bar Counsel, The Florida Bar, cleon@flabar.org on this 20th day of May, 2019.

/s/ **Christopher M. Chestnut**
The Chestnut Law Firm, LLC
Pro Se
1201 W. Peachtree St., NE
Suite 2300
Atlanta, GA 30309
*Chris.chestnut@chestnutfirm.com*

**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

CHRISTOPHER CHESTNUT,

    **Plaintiff,**

**v.**

JUSTICE CHARLES CANADY,
JUSTICE RICKY POLSTON,
JUSTICE JORGE LABARGA,
JUSTICE C. ALAN LAWSON,
JUSTICE BARBARA LAGOA,
JUSTICE ROBERT LUCK, and
JUSTICE CARLOS MUNIZ; in their
official capacities as Justices for the
Florida Supreme Court of Florida;
JOHN A. TOMASINO, in his official
capacity as Clerk for the Supreme
Court of Florida;

    **Defendants.**

**CASE NO.:  4-19-CV-271-RH-MJF**

**PLAINTIFF'S MOTION FOR
LEAVE TO AMEND FOR A
SECOND AMENDED COMPLAINT
FOR PROSPECIVE INJUNCTIVE
AND DECLARATORY RELIEF
AGAINST STATE OFFICIALS IN
THEIR OFFICIAL CAPACITIES**

<u>**EXHIBIT C**</u>

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

      Complainant,

v.

CHRISTOPHER M. CHESTNUT,

      Respondent.

_____/

Supreme Court Case No.:
SC17-307

The Florida Bar File Nos.:
2017-00,114(4B), 2017-00,294(4D) &
2017-00,306(4D)

## ORDER OF DISQUALIFICATION

**THIS CAUSE** having come before the Court for review of a Motion to Disqualify filed by the Respondent on June 29, 2017, at 7:21 p.m., which motion also included a request to vacate several Orders; the undersigned is permitted only to determine the legal sufficiency of the motion and not to address the truth of the facts alleged, finds that the motion is legally sufficient requiring the undersigned to grant only the Motion to Disqualify and proceed no further in this action, it is therefore,

**ORDERED AND ADJUDGED** as follows:

1. The Motion to Disqualify is granted and a copy of this Order is forwarded to the Chief Judge of the Circuit for assignment of a Successor Referee.

**DONE AND ORDERED** in Chambers at Brooksville, Hernando County, Florida, this _30_ day of June, 2017.

**CURTIS J. NEAL, REFEREE**

Copies Provided of the Foregoing Order furnished to:

Don F. Briggs, Chief Judge, Fifth Judicial Circuit @ dbriggs@circuit5.org;

Christopher M. Chestnut, Esquire, (Respondent) @ chris.chestnut@chestnutfirm.com;

Joseph Arnold Corsmeier, Esquire (Respondent's counsel) @ jcorsmeier@jac-law.com;

Carlos Alberto Leon, Bar Counsel, The Florida Bar, @ cleon@flabar.org;

Adria E. Quintela, Staff Counsel, The Florida Bar, @ aquintel@flabar.org;

on this _30th_ day of June, 2017 via email.

Paula C. Manning, Judicial Assistant

2

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CHRISTOPHER CHESTNUT,

    Plaintiff,

v.

JUSTICE CHARLES CANADY,
JUSTICE RICKY POLSTON,
JUSTICE JORGE LABARGA,
JUSTICE C. ALAN LAWSON,
JUSTICE BARBARA LAGOA,
JUSTICE ROBERT LUCK, and
JUSTICE CARLOS MUNIZ; in their
official capacities as Justices for the
Florida Supreme Court of Florida;
JOHN A. TOMASINO, in his official
capacity as Clerk for the Supreme
Court of Florida;

    Defendants.

CASE NO.:  4-19-CV-271-RH-MJF

PLAINTIFF'S MOTION FOR
LEAVE TO AMEND FOR A
SECOND AMENDED COMPLAINT
FOR PROSPECIVE INJUNCTIVE
AND DECLARATORY RELIEF
AGAINST STATE OFFICIALS IN
THEIR OFFICIAL CAPACITIES

**EXHIBIT D**

Filing # 70326486 E-Filed 04/05/2018 09:08:13 PM

## IN THE SUPREME COURT OF FLORIDA
### (Before a Referee)

THE FLORIDA BAR,

     Complainant,

v.

CHRISTOPHER M. CHESTNUT,

     Respondent.

_____/

Supreme Court Case
No. SC17-307

The Florida Bar File Nos.
2017-00,114(4B),    2017-00,249(4D)
and 2017-00,306(4D)

## EMERGENCY PETITION FOR WRIT OF PROHIBITION AND FOR AN ORDER VACATING ERRANT ORDERS
### I.    JURISDICTION

The jurisdiction of this Court is invoked pursuant to Article V, Section (b) *Fla. Const.* and *Fla. R. App. P.* 9.030(3).

### II.    INTRODUCTION

Petitioner/Respondent, Christopher Chestnut, petitions this Honorable Court for reversal of the referee's March 29, 2018 Order Denying Respondent's Amended Motion to Disqualify Judge Jonathan Ohlman as Referee in SC17-307, an order vacating Judge Ohlman's orders issued after Respondent's oral motion to disqualify,

and issuance of a Writ of Prohibition, prohibiting Judge Ohlman from presiding over any further hearings or issuing any further orders in the above styled case.

Respondent moved to disqualify Judge Ohlman at trial on March 16, 2018 for judicial misconduct. The motion to disqualify was acutely based upon Judge Ohlman's abandoning judicial neutrality during trial by initiating unsolicited evidentiary coaching "tips" to Mr. Carlos Leon, Counsel for The Florida Bar. Judge Ohlman illuminated Mr. Leon to a blueprint for entering into evidence Florida Bar Exhibits, after Mr. Leon repeatedly demonstrated a strategic inability to overcome Respondent's objections to entry of the subject Florida Bar exhibits. In accordance with Florida law, Judge Ohlman was required to stop the trial and immediately rule on Respondent's motion to disqualify.

Judge Ohlman refused to rule on the motion at trial and waited 13 days before entering an order denying Respondent's motion to disqualify him, in violation of finite procedural requirements and well established substantive law of *Fla. R. Jud. Admin.* § 2.330 and *Fla. Stat.* §38.10. When a trial judge departs from the law governing a motion to disqualify a judge, it is appropriate for this Honorable Court to grant a Writ of Prohibition and vacate the errant orders.

## III.   STATE OF THE CASE AND FACTS

### A.   The procedural posture of the underlying case.

This action arises out of a three count complaint, SC17-307, where The Florida Bar, Complainant, is seeking disciplinary sanction against, Christopher Chestnut, for alleged misconduct occurring out of state.[1]  The Supreme Court of Florida assigned this case to the Fifth Circuit for the appointment of a Referee, and Judge Jonathan Ohlman was appointed by the Chief Judge in the Fifth Judicial Circuit     as a successor Referee on July 20, 2018.[2]  See attached Exhibit A, *Order Appointing Judge Ohlman as Referee.*

Judge Ohlman was appointed as a successor referee, replacing Fifth Circuit Court Judge Curtis Neal, who was disqualified upon a legally sufficient motion in July of 2017.  See attached, Exhibit B, *Order Disqualifying Judge Curtis Neal.*  Judge Ohlman was presiding over a 2-day trial entitled Final Hearing for SC17-307, on March 15 & 16, 2018 at the Duval County Courthouse in Jacksonville, Florida, when Respondent made an oral motion to disqualify him as referee.

### B. Respondent's March 16, 2018 Motion to Disqualify Judge Ohlman at trial.

---

[1] Christopher Chestnut, has been a member of the Florida Bar since July 2006, and remains a member in good standing.
[2] The preceding Referee in this case was Judge Curtis Neal of the Fifth Judicial Circuit was disqualified for illegal ex parte communications with the Florida Bar in this case.

On March 16, 2018 in the afternoon session of the Final Hearing of SC17-307, Mr. Leon had neglected to enter into evidence Florida Bar Exhibits A1 and A2 during The Florida Bar's case-in-chief.  He then sought to move the Florida Bar Exhibits A1and A2 into evidence during Respondent's case-in-chief, but could not figure out how to overcome Respondent's objections. [3]

After a few failed attempts by Mr. Leon, Judge Ohlman interjects with a leading question directed to Mr. Leon, inviting and advising him to reopen his case-in-chief to move Florida Bar Exhibits A1 and A2 into evidence.[4]  See attached, Exhibit C, *Trial Transcript of SC17-307, March 16, 2018, p.143 lns. 4-21*:

---

[3] The Florida Bar Exhibits A1 and A2 were in part or whole, the Report of Referee and Finding of Facts and Recommendation of Sanction against Respondent by Judge Neal in SC16-797.  That case is presently on appeal and the findings of fact nor violations found by Judge Neal, who was disqualified from this case for ex parte communication, have not been affirmed by The Supreme Court of Florida.
[4] A trial judge is prohibited from entering the fray by giving "tips" to either side, he must remain a neutral arbiter in the proceedings. *Chastine v. Broome*, 629 So.2d 293, 293 (Fla. 4th DCA 1993).

4      THE COURT:  Hold on.  Hold on.  Hold on.

5   Hold on.  Hold on.  Please stop when I start.  Are

6   you seeking to have the report of Judge Neal

7   considered as part of this record?

8      PLAINTIFF ATTORNEY one:  Yes, Judge, for a

9   variety of reasons.

10      THE COURT:  No, I don't.  Is there an

11   objection to that?

12      MR. CHESTNUT:  Right now, yes, your Honor.  I

13   am objecting to Mr. Leon trying to enter evidence

14   in my case in chief.

15      THE COURT:  Okay.  So are you --

16      MR. CHESTNUT:  Now he is seeking to enter

17   additional evidence.  I --

18      THE COURT:  Hold on.  Hold on.  Hold on.  Are

19   you requesting to reopen your case for the sole

20   purpose of admitting that report?

21      PLAINTIFF ATTORNEY one:  Yes, Judge.  And

The judge then accepts into evidence the disputed Florida Bar Exhibits A1 and A2

again over Respondent's objection. See attached Exhibit D, *Trial Transcript SC17-*

*307, pg144, lns. 15-16*:

15      THE COURT:  I need A1 and A2.  I am granting

16   the report because I am going to let that in.  I

Respondent then immediately made an oral motion at trial to Disqualify Judge Ohlman.  See attached, Exhibit E, *Trial Transcript SC17-307, pg. 145-148.*

```
3 | reconsider.  Let me make a motion if the court
4 | will.  Your Honor, I am making an immediate
5 | emergency motion to disqualify the court.  This
```

Respondent stated under oath in support of the motion that Judge Ohlman's evidentiary coaching of The Florida Bar's attorney, Mr. Leon, irreparably compromised his neutrality as a judge, and prompted in Respondent a well-founded fear that he could not receive a fair with Judge Ohlman presiding, especially considering that Judge Ohlman was the sole arbiter of fact and law in this bar disciplinary hearing.  See attached, *Id.*

```
ʟ        Your Honor, I am afraid that this court has
5   violated not only judicial canyon, but rules of
5   civil procedure and established predicate toward
7   our case law, your Honor.  Now, to specify why I
}   do not feel that I have had nor can I have under
)   you serving as a referee a fair trial.  I have not
)   been afforded due process.  Your Honor, just now,
ʟ   immediately, just before, the court in response to
ʒ   my objection invited, if not coached, Mr. Leon on
ʒ   how to better lawyer in suggesting to him do you
ʟ   want to reopen your case for the sole purpose of
5   entering in Judge Neal's report.  He then,
```

Judge Ohlman then refuses to rule on the pending Motion to Disqualify as required by law, and instructs Respondent to continue with the hearing and submit a written motion at a later date.

```
25  |        THE COURT:  My understanding is any motions
```

Honorable Jonathan Ohlman
March 16, 2018                          150

```
1   you disqualify has to be in writing.  Until it is
2   in writing, go ahead, as opposed to the contrary.
3   Otherwise, please proceed with what you want to
4   do.
```

On March 23, 2018 Respondent filed a written Motion to Disqualify Judge Ohlman at 5:24pm pursuant to *Fla. R. Jud Admin.* § 2.330, supplementing in writing the oral motion made at trial.  See attached, Exhibit F, *Respondent's Motion to Disqualify Judge Ohlman, 3.23.18.*  This supplemental motion is substantively based upon the oral motion from trial. The motion is legally sufficient motion, but contained some typos.

Therefore, Respondent made edits to the supplemental written motion and filed Respondent's Amended Motion to Disqualify Judge Ohlman on March 28, 2018 at 7:26pm.   See attached, Exhibit G, *Respondent's Amended Motion to Disqualify Judge Ohlman, 2.28.18.*

On March 29, 2018 Judge Ohlman entered an Order Denying Amended Motion to Disqualify Referee, reasoning, "denied as legally insufficient and/or, in the alternative, untimely".  See attached Exhibit H, *Order Denying Amended Motion to Disqualify Referee.*  Judge Ohlman did not hold a hearing on Respondent's motion to disqualify.  Additionally, Judge Ohlman imposed an updated deadline of April 5,

2018 for Final Arguments and/or proposed findings of referee while the motion to disqualify him as referee remained outstanding.[5]

## IV.   LEGAL AUTHORITY & ARGUMENT

### A. Judge Ohlman was mandated by Florida law to immediately rule during the Final Hearing on the legal sufficiency of Respondent's oral motion to disqualify him as referee, and erred by waiting 13 days to rule on the motion.

A motion to disqualify a judge made during a hearing or trial shall be ruled on immediately. *Fla. R. Jud. Admin.* §2.330 (e). This Honorable Court underscores this rule in holding, "the allegation of judicial prejudice is a serious matter and cannot be ignored." *Fuster-Escalona v. Wisotsky*, 781 So. 2d 1063, 1065 (Fla. 2000). Florida Rule of Judicial Administration § 2.330(f) requires:

> The judge against whom an initial motion to disqualify under subdivision (d)(1) is directed shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall **immediately** enter an order granting disqualification and proceed no further in the action. If any motion is legally insufficient, an order denying the motion shall **immediately** be entered.

---

[5] Respondent never rested and is still in his case-in-chief having not been provided an opportunity to present a single witness for trial testimony.   See attached, Exhibit I, *Trial Transcript SC17-307, pg. 170  lns. 4-13.*

*Fla. R. Jud. Admin.* § 2.330(f). Emphasis added.

In this case, Judge Ohlman ignored Respondent's motion to disqualify from March 16, 2018 to March 29, 2018, 13 calendar days. That delay is far beyond the permissible term of "immediately" as prescribed by the rules and interpreted by this Honorable Court. The Supreme Court of Florida has long placed great emphasis on the plain meaning of "**immediately**" in *Fla. R. Jud. Admin.* § 2.330(f). The rule provisions concerning "immediate" resolution have been accorded their plain meaning, which the Court has explained requires action that is "prompt" and "with dispatch." *Fuster-Escalona v. Wisotsky*, 781 So. 2d 1063, 1065 (Fla. 2000); citing, *Livingston v. State*, 441 So. 2d 1083, 1085 (Fla. 1983). See also, *Toney v. Freeman*, 600 So. 2d 1099, 1100 (Fla. 1992) (The trial judge is the manager of the docket and has the ultimate responsibility to rule on pleadings that are properly pled before the court, in accord with applicable rules of procedure and court precedent).

## B. Judge Ohlman's error of not "immediately" ruling on the legal sufficiency of the March 16, 2018 Motion to Disqualify is sufficient basis to grant this Writ of Prohibition.

When trial judge/referee fails or refuses to immediately rule at trial or during the hearing on a motion to disqualify the trial judge, a writ of prohibition is warranted and should be granted. See, *Valdes-Fauli v. Valdes-Fauli*, 903 So.2d 214 (Fla. 3rd DCA 2005) (Writ of Prohibition requiring a trial judge's disqualification was granted to wife where the trial judge erred by granting a wife's motion for

continuance while her motion to recuse him was pending, as he had been obliged to first rule on the motion for disqualification before resolving any other matters). Judge Ohlman's judicial misconduct in this case, directly mirrors the judicial error in the aforementioned *Valdes-Fauli* case.

First, Judge Ohlman never ruled on Respondent's oral motion to disqualify at trial. Next, Judge Ohlman issued directive that he would rule only on a written motion to disqualify, and required Respondent to proceed on with the hearing. He then, entrenched the legal error by entering an order denying Respondent's motion for mistrial[6], while the motion to disqualify him was still pending. See attached, Exhibit J, *SC17-307, Trial Transcript March 16, 2018, pg. 150, lns. 5-16:*

```
5        MR. CHESTNUT:  The same argument that I just
6    made in the interest of time, I would renew a
7    motion for mistrial based upon the court's
8    coaching of Mr. Leon on the procedural issues of
9    the admission of Judge Neal's report.  And then
10   allowing Mr. Leon to reopen his case in chief in
11   my case in chief.  I objected to that.  It's over
12   my objection, your Honor, and allowed that into
13   evidence.  Notwithstanding such, if the court is
14   instructing me to proceed, may I have a ruling on
15   the motion for mistrial?
16       THE COURT:  Denied.
```

---

[6] The motion for mistrial factually arose from the same judicial misconduct as the motion to disqualify; i.e. the judge providing "tips" to the Florida Bar, coaching bar counsel on how to overcome Respondent's objection.

This misconduct alone is a basis for the granting of this Writ of Prohibition pursuant to *Valdes-Fauli*.

### C. Judge Ohlman's error of issuing other rulings while Respondent's March 16, 2018 Motion to Disqualify was outstanding requires those orders and rulings in SC17-307 be vacated.

When a trial court fails to act in accord with the statues and procedural rules on a motion to disqualify, an appellate court will vacate a trial court judgment that flows from that error. *Fuster-Escalona v. Wisotsky*, 781 So. 2d 1063, 1065 (Fla. 2000); see, e.g., *Berkowitz v. Rieser*, 625 SO. 2d 971, 972 (Fla. 2nd DCA 1993) (Even though a motion to disqualify a trial judge was legally insufficient under *Fla. Stat.* § 38.10, the trial judge erred when it did not immediately rule upon the sufficiency of the motion before ruling on other matters; the case was remanded to the trial court for a new hearing on the other matters before a different judge). *Cave v. State*, 660 So. 2d 705, 708 (Fla. 1995) ("[W]e find that Judge Walsh's conduct failed to follow the procedural process outlined in rule 2.160 and his error requires us to vacate Cave's sentence.").

All of Judge Ohlman's rulings after the oral motion to disqualify was made by Respondent on March 16, 2018 should be vacated as flowing from his error in not immediately ruling on the motion to disqualify. Additionally, Judge Ohlman has blatantly denied Respondent due process by  issuing deadline requirements for

closing arguments and sentencing phase arguments, when Respondent never rested his case-in-chief and was allowed less than 2 hours for a case-in-chief after The Florida Bar has 1.5 days during the trial.

## V.   CONCLUSION

Based upon the aforementioned, Respondent petitions this Honorable Court to reverse Judge Ohlman's Order Denying Respondent's Amended Motion to Disqualify because it was untimely entered 13 days after Respondent made the motion to disqualify at trial; that this court grant the Writ of Prohibition based upon Judge Ohlman's demonstrated violation of Fla. R. Jud. Admin. § 2.330; and, that this Honorable Court vacate all orders and rulings made by Judge Ohlman in SC17-307 after the March16, 2018 motion to disqualify was made at trial by Respondent.

Respectfully submitted this 5th day of April ,2018,

By: /s/ Christopher M. Chestnut
**CHRISTOPHER M. CHESTNUT**
Florida Bar No. 0022409
Chris.chestnut@chestnutfirm.com
**THE CHESTNUT FIRM, LLC**
841 Prudential Drive
Jacksonville, FL  32202
Telephone:  (855) 374-4448
Facsimile:  (855) 377-2667
Litigation@chestnutfirm.com

## CERTIFICATE OF COMPLIANCE

I HERBY CERTIFY that this brief was generated in Times New Roman 14 pt., and satisfies the font requirements of *Fla. R. App. P.* § 9.210(a)(2).

By: /s/ Christopher M. Chestnut
**CHRISTOPHER M. CHESTNUT**
Florida Bar No. 0022409

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of April, 2018 the foregoing was electronically served upon the following counsel of record, I certify that originals hereof have been furnished to Judge Jonathan Ohlman, via his Judicial Assistant, Roseanne Whiting, rwhiting@circuit5.org, with copies to Carlos A. Leon at cleon@flabar.org, and Adria E. Quintela, Staff Counsel, The Florida Bar at aquintel@flabar.org, and service via the Florida E-filing system.

By: /s/ Christopher M. Chestnut
**CHRISTOPHER M. CHESTNUT**
Florida Bar No. 0022409

Filing # 70326486 E-Filed 04/05/2018 09:08:13 PM

**EXHIBIT A**

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA

WHEREAS, the Chief Justice of the Supreme Court of Florida has designated the undersigned Chief Judge of the Fifth Judicial Circuit of Florida to appoint a referee for the Court to preside in a disciplinary action brought by The Florida Bar pursuant to the Rules Regulating the Florida Bar,

IT IS ORDERED that the Honorable Jonathan D. Ohlman Circuit Court Judge, in and for the Fifth Judicial Circuit, State of Florida, is hereby designated and appointed as referee for the Florida Supreme Court, in the matter of:

The Florida Bar vs. Christopher M. Chestnut,
Supreme Court Case No. SC17-307;

The Honorable Jonathan D. Ohlman, as referee, is hereby vested with all and singular the powers and prerogatives conferred by the Constitution, laws of the State of Florida, and the Rules Regulating the Florida Bar, concerning a referee for the Supreme Court of Florida in this matter.

Online resources are available for judges serving as referees in proceedings involving disciplinary action against attorneys, and the unlicensed practice of law. The resources offered at http://www.flcourts.org/gen_public/courted/bar-referee.shtml provide detailed information on the role of a Bar Referee in each of these proceedings and should be reviewed prior to handling this case.

DONE AND ORDERED in Chambers, this 20 day of July, 2017.

Honorable S. Sue Robbins, Chief Judge

Copies provided to:
Honorable Jonathan D. Ohlman, Referee
Honorable John A. Tomasino, Clerk, Supreme Court of Florida
Adria E. Quintela, Bar Staff Counsel
Carlos Alberto Leon, (Bar Counsel)
Joseph A. Corsmeier, Respondent's Counsel
Christopher M. Chestnut, Respondent

Please note: Judge Jonathan D. Ohlman address is: Marion County Judicial Center
110 NW First Avenue
Ocala, FL 34475

FILED
JOHN A. TOMASINO
JUL 24 2017
CLERK, SUPREME COURT
By

**EXHIBIT B**

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

    Complainant,

v.

CHRISTOPHER M. CHESTNUT,

    Respondent.

_____/

Supreme Court Case No.:
SC17-307

The Florida Bar File Nos.:
2017-00,114(4B), 2017-00,294(4D) &
2017-00,306(4D)

## ORDER OF DISQUALIFICATION

**THIS CAUSE** having come before the Court for review of a Motion to Disqualify filed by the Respondent on June 29, 2017, at 7:21 p.m., which motion also included a request to vacate several Orders; the undersigned is permitted only to determine the legal sufficiency of the motion and not to address the truth of the facts alleged, finds that the motion is legally sufficient requiring the undersigned to grant only the Motion to Disqualify and proceed no further in this action, it is therefore,

**ORDERED AND ADJUDGED** as follows:

1. The Motion to Disqualify is granted and a copy of this Order is forwarded to the Chief Judge of the Circuit for assignment of a Successor Referee.

**DONE AND ORDERED** in Chambers at Brooksville, Hernando County, Florida, this ___30___ day of June, 2017.

CURTIS J. NEAL, REFEREE

Copies Provided of the Foregoing Order furnished to:

Don F. Briggs, Chief Judge, Fifth Judicial Circuit @ dbriggs@circuit5.org;

Christopher M. Chestnut, Esquire, (Respondent) @ chris.chestnut@chestnutfirm.com;

Joseph Arnold Corsmeier, Esquire (Respondent's counsel) @ jcorsmeier@jac-law.com;

Carlos Alberto Leon, Bar Counsel, The Florida Bar, @ cleon@flabar.org;

Adria E. Quintela, Staff Counsel, The Florida Bar, @ aquintel@flabar.org;

on this ___30th___ day of June, 2017 via email.

Paula C. Manning, Judicial Assistant

2

**EXHIBIT C**

1   is confounding the two issues as one.  If Mr. Leon

2   after my not accepting the caveat is admitting to

3   my motions --

4        THE COURT:  Hold on.  Hold on.  Hold on.

5   Hold on.  Hold on.  Please stop when I start.  Are

6   you seeking to have the report of Judge Neal

7   considered as part of this record?

8        PLAINTIFF ATTORNEY one:  Yes, Judge, for a

9   variety of reasons.

10       THE COURT:  No, I don't.  Is there an

11   objection to that?

12       MR. CHESTNUT:  Right now, yes, your Honor.  I

13   am objecting to Mr. Leon trying to enter evidence

14   in my case in chief.

15       THE COURT:  Okay.  So are you --

16       MR. CHESTNUT:  Now he is seeking to enter

17   additional evidence.  I --

18       THE COURT:  Hold on.  Hold on.  Hold on.  Are

19   you requesting to reopen your case for the sole

20   purpose of admitting that report?

21       PLAINTIFF ATTORNEY one:  Yes, Judge.  And

22   rebuttal to Mr. Chestnut's self representation has

23   attempted to proffer some evidence.  The Bar now

24   asks this court to take judicial notice of Judge

25   Neal's orders in the previous case to which Mr.

**EXHIBIT D**

Honorable Jonathan Ohlman
March 16, 2018                                    144

1    Chestnut has referred incessantly.  And for the

2    rule of completeness, these matters will be

3    properly considered by this court.

4        THE COURT:  When you said orders, I am a

5    little bit unclear.  The only one I think I have

6    is one order.

7        MR. LEON:  There were two, your Honor.  Judge

8    Neal did choose to bifurcate the hearing.  He

9    issued first findings of fact and conclusions of

10   law.  He then later issued recommended sanctions.

11   So there's A1 and A2, exhibits A1 and A2 which are

12   attached to the court's pre-trial memorandum.  Of

13   course, there can be no prejudice to Mr. Chestnut

14   because he was present himself.

15       THE COURT:  I need A1 and A2.  I am granting

16   the report because I am going to let that in.  I

17   am now going to reconsider my ruling on Pansy King

18   and Quinton Berry's deposition.

19       MR. CHESTNUT:  Your Honor?  Your Honor?

20       THE COURT:  I have not offered --

21       MR. CHESTNUT:  I haven't not -- come on your

22   Honor, I have not made a motion to reconsider.

23       THE COURT:  You made an original request for

24   these to come into the evidence.  Are you

25   withdrawing that motion?

**EXHIBIT E**

1      MR. CHESTNUT:  I never made a motion for the

2   court to reconsider.  I see the court moving to

3   reconsider.  Let me make a motion if the court

4   will.  Your Honor, I am making an immediate

5   emergency motion to disqualify the court.  This

6   court has demonstrated a practice of not only

7   depriving me of due process, but also coaching

8   done of Mr. Leon and coaching Mr. Leon's witnesses

9   in the form of Mr. Apostolou in the deposition.

10  As a factual basis for my motion to disqualify

11  because I understand the severity and the -- it is

12  not a common occurrence, your Honor.  But

13  unfortunately, it has happened.

14      Your Honor, I am afraid that this court has

15  violated not only judicial canyon, but rules of

16  civil procedure and established predicate toward

17  our case law, your Honor.  Now, to specify why I

18  do not feel that I have had nor can I have under

19  you serving as a referee a fair trial.  I have not

20  been afforded due process.  Your Honor, just now,

21  immediately, just before, the court in response to

22  my objection invited, if not coached, Mr. Leon on

23  how to better lawyer in suggesting to him do you

24  want to reopen your case for the sole purpose of

25  entering in Judge Neal's report.  He then,

Honorable Jonathan Ohlman
March 16, 2018                    146

1    Mr. Leon concedes.  Your Honor, this is wholly

2    impermissible.  This is tantamount.  It is direct

3    violation of due process.  It underscores,

4    highlights with an explanation point, in bold,

5    that not only have due process, but that I have

6    had a fair trial as far as this referee.  And now

7    I have to rely on you, your Honor, as the sole

8    fact finder in this case, where most of my

9    evidence has been excluded based on misinformation

10   of Mr. Leon.  And you made the factual finding,

11   your Honor.  Furthermore, this goes to the

12   definition of Mr. Apostolou where I am attempting

13   to depose Alex Apostolou.  The Court in the

14   deposition transcript recently provided to us, the

15   court -- Mr. Leon stops the deposition at

16   11 o'clock to get off of the phone, saying we have

17   a telephonic deposition, and we have a court

18   hearing.  There was no hearing noticed.  Mr. Leon

19   gets off of the phone with the court.  I have to

20   stop the deposition.  When I get on to the call

21   between Mr. Leon and the court, they are having a

22   discussion about a hearing or a date for us to set

23   a final hearing.  However, your Honor, the dates

24   were not noticed.  There was prior notice.  And

25   there was no court reporter noticed for that.  So

Honorable Jonathan Ohlman
March 16, 2018                                    147

1    then when I stopped that and get off the phone and

2    try to get a court reporter for this

3    contemporaneous ex parte hearing, and I don't know

4    what communication I had before I got on the

5    phone, the net result of the conversation, when I

6    come back with the court reporter the line is

7    dead.  So then I go back and call into the South

8    Carolina deposition of Mr. Apostolou and now the

9    court is present for the deposition, only the

10   court doesn't sit silently in the deposition.

11   There was no motion by either party for the court

12   to intervene for an ability or objection by other

13   party of a witness who could not answer a question

14   that was asserting privilege.  The court

15   voluntarily invited itself into the deposition.

16   The Court then initiated objections on behalf of

17   Mr. Apostolou to the benefit of Mr. Apostolou

18   effecting his testimony, relegating or curtailing

19   my ability to depose Mr. Apostolou.  I have no

20   cure -- I tried to cure it.  The court continued

21   to guide or limit my scope of examination,

22   depriving me of my due process rights to depose

23   this witness un infringed.  And then the court had

24   to get off of the phone.  I am entitled to the

25   deposition, at least all day.  At 1:00 o'clock the

Honorable Jonathan Ohlman
March 16, 2018                                    148

1   deposition has been ended prematurely.  I still

2   had questions.  I never in the deposition

3   examination got to the issues of Ms. Hayward.  We

4   only addressed Ms. Gibbs.  That compounded with a

5   series of issues throughout the trial today.  This

6   was not hearing that was properly noticed.  I

7   never got -- we had from July 2017 to now.  There

8   has still not been an appointment of a

9   commissioner to deal with out of state

10  depositions.  Your Honor, this all demonstrates I

11  cannot and have not received a fair trial.  So the

12  motion to disqualify I will happily supplement in

13  writing, your Honor, with a brief.  But at this

14  time, your Honor, I would ask the court to

15  disqualify itself.

16      THE COURT:  I think at this point the only

17  thing I can do, Mr. Chestnut, if you file that in

18  writing.  I will be glad to respond in a manner

19  provided by Florida law.

20      MR. CHESTNUT:  I'm not sure it's appropriate

21  to proceed on the issues that have not been

22  raised.

23      THE COURT:  Mr. Leon, any response?

24      PLAINTIFF ATTORNEY one:  Yes, Judge.  Since

25  Mr. Chestnut is asking that this matter be

**EXHIBIT F**

| From: | Christopher Chestnut |
|---|---|
| To: | Leon, Carlos A; Michelle Baden; nwhiting@circuit5.org |
| Cc: | Mitchell, Christine |
| Bcc: | Christopher Chestnut; Richard Keith Alan II (attyrkaII@timefortrial.com); timofortrial@gmail.com |
| Subject: | Motion to Disqualify Judge Ohlman |
| Date: | Friday, March 23, 2018 5:22:00 PM |
| Attachments: | Resp. Mtn. DQ Referee Ohlman 3.23.18.pdf |

Mrs. Whiting,

Please find attached a written motion to disqualify Judge Ohlman, please forward to his attention immediately.

Sincerely,
Chris Chestnut

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

Complainant,

v.

CHRISTOPHER M. CHESTNUT,

Respondent.

_____/

Supreme Court Case
No. SC17-307

The Florida Bar File Nos.
2017-00,114(4B), 2017-00,249(4D)
and 2017-00,306(4D)

## MOTION TO DISQUALIFY JUDGE JONATHAN OHLMAN & VACATE HIS STANDING ORDERS

COMES NOW, Respondent Christopher M. Chestnut, pursuant to Rule 2.330(b) and of the Florida Rules of Judicial Administration and Fla. R. Civ. P. 1.080, and hereby moves this Court to disqualify and recuse Judge Jonathan Ohlman as Referee in SC17-307. Upon Judge Ohlman's removal, Respondent further moves this Honorable Court to vacate the existing orders issued by Referee Ohlman. and in support thereof states:

## Summary of Argument

1. Respondent has been deprived of due process to a fair and impartial tribunal in his bar disciplinary action, case SC17-307, due to impermissible coaching "tips" by Referee Judge Jonathan Ohlman to The Florida Bar (hereinafter "TFB") in the midst of a Final Hearing, requiring recusal.

2. Judge Ohlman on March 216, 2018 in the afternoon session of the Final Hearing for SC17-307 engaged in impermissible coaching of a party by providing Mr. Carlos Leon, counsel for The Florida Bar "tips" on how to enter into evidence documents at the Final Hearing that Mr. Leon had previously neglected to enter prior to resting his case in chief.

3. A judge is to remain a neutral arbiter in court proceedings, and coaching a party on how to enter evidence is expressly prohibited judicial misconduct and grounds for immediate disqualification.

4. Furthermore, when a motion for disqualification of a judge is made during a hearing, that judge must immediately issue a ruling on that motion.

5. Consequently, all orders issued by this court after Respondent's motion to disqualify Judge Ohlman in the final hearing should be vacated.

## Summary of Facts

6. On or about Friday March 16, 2018 in the afternoon session of the Final Hearing for SC17-307 Mr. Carlos Leon, counsel for TFB, was suggesting a desire to enter into evidence a Report of Referee issued by the prior Referee Curtis J. Neal against this Respondent in another case, SC16-797. See attached Exhibit A, *Transcript of SC17-307 Final Hearing*, at 143.

```
 4         THE COURT:  Hold on.  Hold on.  Hold on.
 5    Hold on.  Hold on.  Please stop when I start.  Are
 6    you seeking to have the report of Judge Neal
 7    considered as part of this record?
 8         PLAINTIFF ATTORNEY one:  Yes, Judge, for a
 9    variety of reasons.
```

7.   Respondent objected to Mr. Leon's efforts to have this report entered into
     evidence because it was Respondent's Case in Chief and Mr. Leon had not
     sought to or in fact entered the subject report into evidence during his Case
     in Chief on March 15 and March 16, 2018. *Id.*

```
12         MR. CHESTNUT:  Right now, yes, your Honor.  I
13    am objecting to Mr. Leon trying to enter evidence
14    in my case in chief.
```

8.   The Court then unsolicited entered into the fray by posing a leading question
     to Mr. Leon advising him that he could move to reopen his Case-in -Chief
     and move the document into evidence. *Id.*

```
18         THE COURT:  Hold on.  Hold on.  Hold on.  Are
19    you requesting to reopen your case for the sole
20    purpose of admitting that report?
```

9.   Mr. Leon then sought to have his case reopened to enter into evidence the
     subject Report of Referee over the objection of Respondent.

```
21         PLAINTIFF ATTORNEY one:  Yes, Judge.
```

**Legal Authority**

10. When the judge enters into the proceedings and becomes a participant, a shadow is case upon judicial neutrality so that disqualification is required. *See Wayland v. Wayland*, 595 So.2d 234, 235 (Fla. 3d DCA 1992) (Citing *Crosby v. State*, 97 So. 2d 181 (Fla. 1957).

11. A trial judge is prohibited from entering the fray by giving "tips" to either side, he must remain a neutral arbiter in the proceedings. *Chastine v. Broome*, 629 So.2d 293, 293 (Fla. 4th DCA 1993).

12. When a judge engages in such conduct it is considered impermissible. *Id.*

13. One of the most basic tenets of Florida law is the requirement that all proceedings affecting life, liberty, or property must be conducted according to due process. See, Art. I, § 9, Fla. Const.

14. When a motion for disqualification or recusal is pending, it is the court's duty to rule on that motion before ruling on anything else. *See, Futer-Escalona v. Wisotsky*, 781 So.2d 1063 (Fla. 2000).

15. A prior Referee for this case, Judge Curtis J. Neal was disqualified upon motion in July of 2017. See attached Exhibit B, *Order of Disqualification and Motion to Disqualify*.

**Legal Argument on Recusal of Referee**

16. Rule 2.330(b) of the Florida Rules of Judicial Administration and provides in pertinent party that Respondent, Christopher M. Chestnut, "may move to disqualify the trial judge assigned to the case on grounds provided by Rule, by Statute, or by the Code of Judicial Conduct."

17. Cannon 3(E)(1)(a) of the *Code of Judicial Conduct* provides that "a judge shall disqualify himself in a proceeding in which his "impartiality might reasonably be questioned...."

18. Rule 2.330(f) of the Florida Rules of Judicial Administration requires that Judge Ohlman in reviewing this motion "must look only to the legal sufficiency of the motion and shall pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action."

19. Although this is not a successive motion under Rule 2.330(g) of the Florida Rules of Judicial Administration, because the prior motion to disqualify in this case pertained to Judge Neal and this motion pertains to Judge Ohlman. However, even if the Court were inclined to consider this a successive motion the aforementioned factual basis

20. Based upon the  aforementioned, Respondent has a well-established fear that  he cannot and will not receive a fair trial in SC17-307 with Judge Ohlman as Referee based upon the bias coaching "tips" provided to TFB by the Referee inuring to the benefit of TFB and to the detriment of Respondent. The neutrality of Judge Ohlman as the neutral arbiter has been irreparably violated, and Respondent cannot receive a fair trial.

WHEREFORE, Respondent further petitions this Court for an Order disqualifying Judge Jonathan Ohlman as Referee in SC17-307  and vacating his prior orders.

Respectfully submitted this 22nd day of March, 2018.

By;  /s/ Christopher M. Chestnut
**CHRISTOPHER M. CHESTNUT**
Florida Bar No. 0022409
Chris.chestnut@chestnutfirm.com

**THE CHESTNUT FIRM, LLC**
Telephone: (855) 374-4448
Facsimile: (855) 377-2667
Litigation@chestnutfirm.com
Chris.chestnut@chestnutfirm.com

STATE OF FLORIDA            )
                            Alachua
COUNTY OF ~~ORANGE~~        )

CHRISTOPHER M. CHESTNUT, duly sworn upon oath deposes and says that he has prepared and

reviewed his Motion to Disqualify The Honorable Jonathan Ohlman and that the facts contained therein

are true and correct.

_____
RESPONDENT

The foregoing Motion to Disqualify Jonathan Ohlman was acknowledged before me this by CHRISTOPHER M. CHESTNUT, who is known to me and who did take an oath.



Notary Public

My Commission Expires:

CHARLES S. CHESTNUT III
Commission# GG 106142
Expires June 17, 2021
Bonded Thru Troy Fain Insurance 800-385-7019

## CERTIFICATE OF GOOD FAITH

Defense Counsel, as an attorney appearing pro se in these proceedings, does hereby certify that this motion and statements contained herein are made in good faith and not for the purpose of undue delay, harassment or any other purpose that might thwart the ends of justice.

Respectfully submitted,

CHRISTOPHER M. CHESTNUT, ESQ.

FBN: 0022409

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd of March 2018, the foregoing was electronically served upon the following counsel of record, I certify that originals hereof have been furnished to Judge Jonathan Ohlman, via his Judicial Assistant, Roseanne Whiting , rwhiting@circuit5.org, with copies to Carlos A. Leon at cleon@flabar.org, and Adria E. Quintela, Staff Counsel, The Florida Bar at aquintel@flabar.org.

THE CHESTNUT FIRM, LLC

BY:  /s/ Christopher Chestnut
**CHRISTOPHER M. CHESTNUT**
Florida Bar No. 22409

# EXHIBIT A

# EXHIBIT A

rable Jonathan Ohlman

Honorable Jonathan Ohlman
March 16, 2018

1        IN THE SUPREME COURT OF FLORIDA

2            (Before a Referee)

3

4

5    THE FLORIDA BAR,              S. Ct. Case No. SC17-307

6    Complainant,                 V TFB File Nos.: 2017-00,

7                                 114 (4B)

8        v.                       2017-00, 249(4D) & 2017-00,

9    CHRISTOPHER M. CHESTNUT,     306 (4D)

10   Respondent.

11

12            NOTICE OF FINAL HEARING

13

14       Proceedings before the Honorable Jonathan Ohlman,

15   Judge of the Circuit Court, as cause in this matter came

16   to be heard on the 16th of March, 2018, before Catherine

17   M. Morrow, Florida Professional Reporter and a Notary

18   Public in and for the State of Florida at Large.

19

20

21            US Legal Support, Inc.
22            JACKSONVILLE, FL 32202
                 (904) 359-0583
23

24

25

1    is confounding the two issues as one.  If Mr. Leon

2    after my not accepting the caveat is admitting to

3    my motions --

4         THE COURT:  Hold on.  Hold on.  Hold on.

5    Hold on.  Hold on.  Please stop when I start.  Are

6    you seeking to have the report of Judge Neal

7    considered as part of this record?

8         PLAINTIFF ATTORNEY one:  Yes, Judge, for a

9    variety of reasons.

10        THE COURT:  No, I don't.  Is there an

11   objection to that?

12        MR. CHESTNUT:  Right now, yes, your Honor.  I

13   am objecting to Mr. Leon trying to enter evidence

14   in my case in chief.

15        THE COURT:  Okay.  So are you --

16        MR. CHESTNUT:  Now he is seeking to enter

17   additional evidence.  I --

18        THE COURT:  Hold on.  Hold on.  Hold on.  Are

19   you requesting to reopen your case for the sole

20   purpose of admitting that report?

21        PLAINTIFF ATTORNEY one:  Yes, Judge.  And

22   rebuttal to Mr. Chestnut's self representation has

23   attempted to proffer some evidence.  The Bar now

24   asks this court to take judicial notice of Judge

25   Neal's orders in the previous case to which Mr.

# EXHIBIT B

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

    Complainant,

v.

CHRISTOPHER M. CHESTNUT,

    Respondent.

_____/

Supreme Court Case No.:
SC17-307

The Florida Bar File Nos.:
2017-00,114(4B), 2017-00,294(4D) &
2017-00,306(4D)

## ORDER OF DISQUALIFICATION

**THIS CAUSE** having come before the Court for review of a Motion to Disqualify filed by the Respondent on June 29, 2017, at 7:21 p.m., which motion also included a request to vacate several Orders; the undersigned is permitted only to determine the legal sufficiency of the motion and not to address the truth of the facts alleged, finds that the motion is legally sufficient requiring the undersigned to grant only the Motion to Disqualify and proceed no further in this action, it is therefore,

**ORDERED AND ADJUDGED** as follows:

1. The Motion to Disqualify is granted and a copy of this Order is forwarded to the Chief Judge of the Circuit for assignment of a Successor Referee.

**DONE AND ORDERED** in Chambers at Brooksville, Hernando County, Florida, this _30_ day of June, 2017.

_____
**CURTIS J. NEAL, REFEREE**

Copies Provided of the Foregoing Order furnished to:

Don F. Briggs, Chief Judge, Fifth Judicial Circuit @ dbriggs@circuit5.org;

Christopher M. Chestnut, Esquire, (Respondent) @ chris.chestnut@chestnutfirm.com;

Joseph Arnold Corsmeier, Esquire (Respondent's counsel) @ jcorsmeier@jac-law.com;

Carlos Alberto Leon, Bar Counsel, The Florida Bar, @ cleon@flabar.org;

Adria E. Quintela, Staff Counsel, The Florida Bar, @ aquintel@flabar.org;

on this _30th_ day of June, 2017 via email.

_____
Paula C. Manning, Judicial Assistant

2

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

| | |
|---|---|
| THE FLORIDA BAR, | Supreme Court Case No. SC17-307 |
| Complainant, | |
| | The Florida Bar File Nos. |
| v. | 2017-00,114(4B), 2017-00,249(4D) and 2017-00,306(4D) |
| CHRISTOPHER M. CHESTNUT, | |
| Respondent. | |

_____/

## MOTION TO DISQUALIFY THE HONORABLE CURTIS J. NEAL AND TO VACATE THE JUNE 23 & 26, 2017 COURT ORDERS

COMES NOW, Respondent Christopher M. Chestnut, pursuant to Rule 2.330(b) and of the Florida Rules of Judicial Administration and Fla. R. Civ. P. 1.080, and hereby moves this Honorable Court to disqualify and recuse The Honorable Curtis J. Neal as Referee in SC17-307. Upon Judge Neal's removal, Respondent further moves this Honorable Court to vacate the existing orders issued by Referee Judge Curtis J. Neal and in support thereof states:

## Summary of Argument

1. Respondent has been deprived of due process and a fair trial in his bar disciplinary action, case SC17-307, due to ex-parte communications between Referee Judge Curtis J. Neal 's and The Florida Bar (hereinafter "TFB"), requiring recusal.

2. Judge Neal issued an Order Granting TFB's Motions on June 23, and June 26, 2017 respectively in response to TFB's Motion for Witness Testimony via Video-Conferencing and TFB's Motion to Quash Respondent's Notice of Deposition for Trial of Out of State Witnesses. Both orders were based solely on TFB's motions, absent proper notice to Respondent, absent a proper hearing where Respondent could be heard, and absent a response from Respondent.

3. The Referee's rulings based upon communication with a single litigant, TFB, constitutes improper ex-parte communications with the court in blatant violation of Judicial Canons and a fundamental violation of Respondent's due process rights.

4. The cumulative effect of the foregoing events establish in Respondent a "well-founded fear" of prejudice against Respondent by Judge Curtis Neal as Referee.

5. Respondent's fear alone constitutes substantial evidence sufficing recusal.

6. Furthermore, Respondent's fear that he cannot and will not receive a fair trial before Judge Neal in SC17-307 is reasonable considering that the Referee in a bar disciplinary trial is the sole presider of the trial, sole gatekeeper of evidence, and sole finder of fact in determining guilt or innocence.

7. Consequently, due process requires the recusal of Judge Neal as Referee for SC17-307. See, *Michaud-Berger v. Hurley*, 607 So.2d 441 (Fla. 4th DCA 1992).

8. Finally, upon the removal of Judge Neal, all prior rulings by Judge Neal must be vacated. See, Rule 2.330, Florida Rules of Judicial Administration.

## Legal Authority on Due Process & Entitlement to a Hearing on Issues Prior to Ruling

9. One of the most basic tenets of Florida law is the requirement that all proceedings affecting life, liberty, or property must be conducted according to due process. See, Art. I, § 9, Fla. Const.

10. The essence of due process is that fair notice and a reasonable opportunity to be heard must be given to interested parties before judgment is rendered. See, *Tibbetts v. Olson*, 91 Fla. 824, 108 So. 679 (1926).

11. Due process envisions a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties. See, *State ex rel. Munch v. Davis*, 143 Fla. 236, 244, 196 So. 491, 494 (1940).

12. This notion of due process has been codified by Florida's Code of Judicial Conduct – which provides in pertinent part that:

> "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other

> communications made to the judge outside the
> presence of the parties concerning a pending or
> impending proceeding...."
>
> See, *Florida Code Jud. Conduct*, Canon 3B(7),
> formerly Canon 3A(4).

13. Furthermore, in explaining the importance of this canon, the Florida
Supreme Court has reiterated that:

> "This canon implements a fundamental
> requirement for all judicial proceedings under our
> form of government. Except under limited
> circumstances, no party should be allowed the
> advantage of presenting matters to or having
> matters decided by the judge without notice to all
> other interested parties."   See, *In re Inquiry
> Concerning a Judge: Clayton*, 504 So.2d 394, 395
> (Fla. 1987).

14. Additionally, the Florida Supreme has noted that:

> "Nothing is more dangerous and destructive of the
> impartiality of the judiciary than a one-sided
> communication between a judge and a single
> litigant. Even the most vigilant and conscientious
> of judges may be subtly influenced by such
> contacts. No matter how pure the intent of the
> party who engages in such contacts, without the
> benefit of a reply, a judge is placed in the position
> of possibly receiving inaccurate information or

being unduly swayed by unrebutted remarks about the other side's case. The other party should not have to bear the risk of factual oversights or inadvertent negative impressions that might easily be corrected by the chance to present counter arguments." See, *Rose v. State*, 601 So.2d 1181, 1183 (Fla. 1992).

15. Finally, the Florida Supreme Court recognizes that:

"The number of lawyers has grown significantly in recent years in most locations. It is impossible for lawyers to know each other and the judges with the same degree of familiarity that they did in the past. It is also more common for lawyers to appear in courts "away from home" than it was in the past. This growth in numbers and mobility places a greater burden on the judge to ensure that neutrality continues to exist." See, *Rose v. State*, 601 So.2d 1181, 1184 (Fla. 1992).

## Summary of Facts

16. On or about Friday June 23, 2017 at 2:21pm Complainant, The Florida Bar (hereinafter "TFB") filed a Motion to Quash Respondent's Notices of Deposition and a Motion to Allow Witnesses to Testify via Video-Conferencing. [1]

---

[1] These depositions for trial are paramount to Respondent's case in chief and due process as TFB has reneged or refused to produce out of state witnesses.

17. On Monday June 26, 2017 at 3:30pm the Referee in this matter, Judge Neal, granted TFB's Motion absent a hearing or an opportunity for Respondent to object to the Motion to Quash.

18. On June 23, 2017 at 1:55pm the Referee entered an Order Granting The Florida Bar's Motion for Witness Testimony Via Video-Conferencing and Granting Similar Relief for Respondent in response to a June 21, 2016 motion from TFB requesting the same. No hearing was noticed, required or allowed on this issue, Respondent was not even permitted to object or respond.[2]

19. The Referee has demonstrated a pattern of unilaterally granting TFB's Motions absent a hearing or response from Respondent in SC17-307 eliminating any suspicion his acts were inadvertent or mistake.

20. Judge Neal's SC17-307 Orders issued on June 23, and June 26, 2017 based upon TFB's allegations only, expressly denied Respondent an opportunity to present counter arguments that may easily have corrected the record resulting in a different rulings on the two subject TFB motions.

21. The pattern of ex-parte communications between TFB and the Referee Judge Neal both demonstrate a convincing predisposition of partiality favoring TFB, and eliminates any suspicion that the Referee's actions are inadvertent or mistake.

22. The prejudicial effect of the June 23 and June 26 unilateral Orders, is the first order grants the out of state accusing witnesses a pass from appearing at trial in Jacksonville, Florida on July 18, 2017, and the second order

---

[2] The contemporaneous filing of both the motion to quash deposition and the motion to allow for video appearance at trial demonstrate that TFB is not likely to produce out of state witnesses at trial including complaining witnesses, further frustrating Respondent's due process.

concurrently prevents Respondent from taking a deposition for trial of the out of state accusing witnesses prior to trial.[3] [4]

23. In addition to ex parte communications, Judge Neal has engaged in a pattern of disparate treatment demonstrating partiality adverse to Respondent. As an example, TFB's motions are habitually granted within 1-3 days of a motion being filed and typically absent a hearing. In contrast, TFB's First Motion to Compel to Respondent was denied on June 1, 2017, an Order has yet to be entered against TFB by the Referee.

24. Furthermore, in a prior unrelated case, consolidated SC16-797 and SC16-1480 Judge Neal, as the Referee engaged in a pattern of unilaterally granting motions filed TFB absent a hearing or response from Respondent.[5]

---

[a] All of the witnesses in all 3 counts of the subject complaint reside more than 100 miles from Jacksonville, FL where the trial will be held and all live outside of Florida, thus cannot be compelled to trial pursuant to Fl. R. Clv. P. 1.330(a)(3)(B).

[4] In the prior consolidated cases of SC16-797 & SC16-1480 the Referee granted at least 7 Orders granting TFB motions absent a hearing, ultimately, the Referee struck Respondent's evidence and witnesses proffered prior to and during trial, leaving Respondent with *de minimis* record evidence.

[5] 1.   In the consolidated cases SC16-797 & SC16-1480 On September 27, 2016 TFB filed an Emergency Motion regarding Depositions. The Referee Granted TFB's Motion on the same day September 27, 2016, Respondent had no opportunity for a hearing on this issue.

2.   In the consolidated cases SC16-797 & SC16-1480 the Referee granted on October 10, 2016 TFB's Second Motion to Compel that was filed on October 7, 2016. The Referee neither required, noticed, or allowed a hearing on the merits of the motion to compel, but rather unilaterally granted the motion depriving Respondent of due process in presenting factual contentions to the motion.  .

3.   In the consolidated cases SC16-797 & SC16-1480 on November 14, 2016 TFB filed a Motion to Compel Discovery. The next day, on November 15, 2016 the Referee Granted TFB's Motion to Compel. Respondent was never afforded a hearing on this issue.

4.   On November 14, 2016, Respondent filed a Notice of Taking Deposition of Tyrone Baker. On November 15, 2016, the Referee granted a Motion to Quash the deposition of Tyron Baker. Respondent was never afforded a hearing on this issue.

5.   On October 25, 2016 TFB filed a Motion to Quash Deposition of Dayna McGregor, the next day on October 26, 2016 the Motion to Quash was granted. No hearing was required, noticed or had . . . . . .

25. The cumulative effect of aforementioned events by Judge Neal in his capacity as Referee lead Respondent to reasonably perceive, beyond a mere subjective fear, that he cannot and will not receive a fair trial in SC17-307 with Judge Neal sitting as the Referee.

## Legal Authority on Recusal of Referee

26. Rule 2.330(b) of the Florida Rules of Judicial Administration and provides in pertinent party that Respondent, Christopher M. Chestnut, "may move to disqualify the trial judge assigned to the case on grounds provided by Rule, by Statute, or by the Code of Judicial Conduct.".

27. Cannon 3(B)(7) of the *Code of Judicial Conduct* states that "[a] judge shall not initiate, permit, or consider ex-parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." The Supreme Court has said that "this Cannon implements a fundamental requirement for all judicial proceedings under our form of government. In *re inquiry concerning a judge; Clayton*, 504 So.2d 394, 395 (Fla. 1987).

28. In *Rose v. State*, 601 So.2d 1181, 1183 (Fla. 1992), the Supreme Court of Florida reiterated "nothing is more dangerous and destructive of the impartiality of the judiciary then a one sided communication between a judge and a single litigant."

6.    On March 3, 2017, TFB filed a Motion to Strike an Untimely filed closing argument. On March 6, 2017 the Referee granted TFB's Motion to Strike, Respondent was never allowed or granted a hearing.

7.    On December 5, 2016 TFB filed a Motion to Exclude Respondent's Evidence. The Court was required to conduct a Kozel hearing on this issue, however a Kozel hearing was never conducted.

8.    On March 15, 2017 The Referee Granted TFB's Motion to Exclude Respondent's Evidence, and struck Respondent's witnesses, in effect striking all of the evidence that Respondent had proffered prior to and during trial, but never conducted a Kozel hearing.

29. Cannon 3(E)(1)(a) of the *Code of Judicial Conduct* provides that "a judge shall disqualify himself in a proceeding in which his "impartiality might reasonably be questioned...." It is because of its affect on the appearance of impartiality that an allegation of an ex-parte communication is legally sufficient to require recusal. See, e.g., *Faulker v. Pearson*, 870 So.2d 248 (Fla. 2nd DCA 2004)(citing *Robins v. Robins*, 742 So.2d 395 (Fla. 2nd DCA 1999)(holding that an ex-parte communication alone is legally sufficient to require recusal); *Rollins v. Baker*, 683 So.2d 1138, 1139 (Fla. 5th DCA 1996)(holding that the ex-parte communications together with certain comments made by the judge were sufficient to require recusal); *Brake v. Murphy*, 693 So.2d 663 (Fla. 3rd DCA 1997)(holding that evidence of ex-parte communication between the judge and the opposing party necessitated recusal).

30. See also, *Michaud-Berger v. Hurley*, 607 So.2d 441 (Fla. 4th DCA 1992)( The facts must be viewed from the perspective of the petitioner. Here, petitioner was confronted with a memorandum opinion in which respondent found that one of her attorney's actions in an unrelated case involved "sophistry," "greed, overreaching and attempted extortion." Although her attorneys had received assurance from the trial judge that he would remain impartial, within a matter of hours, the same trial judge had concluded that her other attorney had intentionally acted improperly in his use of a jury verdict form. We conclude that the cumulative effect of the foregoing events, as reasonably perceived by the petitioner, constituted a legally sufficient basis for her motion for disqualification and amounted to more than a mere subjective fear that she would not receive a fair trial).

31. Based upon the aforementioned, Respondent has a well-established fear that he cannot and will not receive a fair trial in SC17-307 with Judge Curtis

Neal as Referee based upon a pattern of ex-parte communications with The Florida Bar, a pattern of granting motions from The Florida Bar absent a hearing, proper notice, or response from Respondent, and a pattern of impermissible partiality as Referee favoring The Florida Bar and adverse to Respondent.

WHEREFORE, Respondent further petitions this Court for an Order disqualifying Judge Curtis J. Neal as Referee in SC17-307 and vacating his prior orders.

Respectfully submitted the 28th day of June, 2017.

By: /s/ Christopher M. Chestnut
**CHRISTOPHER M. CHESTNUT**
Florida Bar No. 0022409
Chris.chestnut@chestnutfirm.com
**THE CHESTNUT FIRM, LLC**
841 Prudential Drive
Jacksonville, FL 32202
Telephone: (855) 374-4448
Facsimile: (855) 377-2667
Litigation@chestnutfirm.com
Chris.chestnut@chestnutfirm.com

STATE OF GEORGIA          )
COUNTY OF FULTON          )

CHRISTOPHER M. CHESTNUT, duly sworn upon oath deposes and says that he has prepared and reviewed his Motion to Disqualify The Honorable Curtis J. Neal and that the facts contained therein are true and correct.

_____

RESPONDENT

The foregoing Motion to Disqualify The Honorable Curtis J. Neal was acknowledged before me this 28th day of June , 2007, by CHRISTOPHER M. CHESTNUT, who is known to me and who did take an oath.

_____

Notary Public

My Commission Expires:

**CERTIFICATE OF GOOD FAITH**

Defense Counsel, as an attorney appearing pro se in these proceedings, does hereby certify that this motion and statements contained herein are made in good faith and not for the purpose of undue delay, harassment or any other purpose that might thwart the ends of justice.

Respectfully submitted.

_____

CHRISTOPHER M. CHESTNUT, ESQ.
FBN: 0022409

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of June, 2017, the foregoing was electronically served upon the following counsel of record, I certify that originals hereof have been furnished to the Honorable Curtis Judson Neal, via his Judicial Assistant, Paula Manning, pmanning@circuit5.org, with copies to Carlos A. Leon at cleon@flabar.org, and Adria E. Quintela, Staff Counsel, The Florida Bar at aquintel@flabar.org.

THE CHESTNUT FIRM, LLC

BY:  /s/ Christopher Chestnut
CHRISTOPHER M. CHESTNUT
Florida Bar No. 22409

**EXHIBIT G**

| | |
|---|---|
| **From:** | Christopher Chestnut |
| **To:** | Leon, Carlos A; rwhiting@circuit5.org |
| **Cc:** | Mitchell, Christina |
| **Subject:** | RE: TFB v. Chestnut, SC17-307, TFB File Nos. 2017-00,114(4B) et al. - Amended Mtn. to DQ |
| **Date:** | Wednesday, March 28, 2018 7:25:47 PM |
| **Attachments:** | R. Amnd. Mtn. DQ 3.27.18.pdf |

Mrs. Whiting,

Please accept this written Amended Motion to Disqualify Judge Ohlman.

Sincerely,
Chris Chestnut

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

    Complainant,

v.

CHRISTOPHER M. CHESTNUT,

    Respondent.

Supreme Court Case
No. SC17-307

The Florida Bar File Nos.
2017-00,114(4B), 2017-00,249(4D)
and 2017-00,306(4D)

_____/

## RESPONDENT'S AMENDED MOTION TO DISQUALIFY JUDGE JONATHAN OHLMAN & VACATE HIS STANDING ORDERS

COMES NOW, Respondent Christopher M. Chestnut, pursuant to Rule 2.330(b) of the Florida Rules of Judicial Administration and Fla. R. Civ. P. §1.080, and hereby moves this Court to disqualify and recuse Judge Jonathan Ohlman as Referee in SC17-307. Upon Judge Ohlman's removal, Respondent further moves this Honorable Court to vacate the existing orders issued by Referee Ohlman, and in support thereof states:

## <u>Summary of Argument</u>

1. Respondent has been deprived of due process to a fair and impartial tribunal in his bar disciplinary action, case SC17-307, due to impermissible coaching "tips" by Referee Judge Jonathan Ohlman to The Florida Bar (hereinafter "TFB") in the midst of a March 16, 2018 Final Hearing, requiring recusal.

2. Judge Ohlman on March 16, 2018 in the afternoon session of the Final Hearing for SC17-307 engaged in impermissible coaching of a party by providing Mr. Carlos Leon, counsel for The Florida Bar "tips" on how to enter into evidence documents at the Final Hearing that Mr. Leon had previously neglected to enter prior to resting his case in chief.

3. A judge is to remain a neutral arbiter in court proceedings, and coaching a party on how to enter evidence is expressly prohibited judicial misconduct and grounds for immediate disqualification.

4. Furthermore, when a motion for disqualification of a judge is made during a hearing, that judge must immediately issue a ruling on that motion.

5. Consequently, all orders issued by this court after Respondent's motion to disqualify Judge Ohlman in the final hearing should be vacated.

## <u>Summary of Facts</u>

6. On or about Friday March 16, 2018 in the afternoon session of the Final Hearing for SC17-307 Mr. Carlos Leon, counsel for TFB, was suggesting a desire to enter into evidence a Report of Referee issued by the prior Referee Curtis J. Neal against this Respondent in another case, SC16-797. See attached Exhibit A, *Transcript of SC17-307 Final Hearing*, at 143.

```
 4        THE COURT:  Hold on.  Hold on.  Hold on.
 5   Hold on.  Hold on.  Please stop when I start.  Are
 6   you seeking to have the report of Judge Neal
 7   considered as part of this record?
 8        PLAINTIFF ATTORNEY one:  Yes, Judge, for a
 9   variety of reasons.
```

7.  Respondent objected to Mr. Leon's efforts to have this report entered into evidence because it was Respondent's Case in Chief and Mr. Leon had not sought to or in fact entered the subject report into evidence during his Case in Chief on March 15 and March 16, 2018. *Id.*

```
12        MR. CHESTNUT:  Right now, yes, your Honor.  I
13   am objecting to Mr. Leon trying to enter evidence
14   in my case in chief.
```

8.  The Court then unsolicited entered into the fray by posing a leading question to Mr. Leon advising him that he could move to reopen his Case-in-Chief and move the document into evidence. *Id.*

```
18        THE COURT:  Hold on.  Hold on.  Hold on.  Are
19   you requesting to reopen your case for the sole
20   purpose of admitting that report?
```

9.  Mr. Leon then sought to have his case reopened to enter into evidence the subject Report of Referee over the objection of Respondent.

```
21        PLAINTIFF ATTORNEY one:  Yes, Judge.
```

## Legal Authority

10. When the judge enters into the proceedings and becomes a participant, a shadow is cast upon judicial neutrality so that disqualification is required. *See Wayland v. Wayland*, 595 So.2d 234, 235 (Fla. 3d DCA 1992) (Citing *Crosby v. State*, 97 So. 2d 181 (Fla. 1957).

11. A trial judge is prohibited from entering the fray by giving "tips" to either side, he must remain a neutral arbiter in the proceedings. *Chastine v. Broome*, 629 So.2d 293, 293 (Fla. 4th DCA 1993).

12. When a judge engages in such conduct it is considered impermissible. *Id.*

13. One of the most basic tenets of Florida law is the requirement that all proceedings affecting life, liberty, or property must be conducted according to due process. See, Art. I, § 9, Fla. Const.

14. When a motion for disqualification or recusal is pending, it is the court's duty to rule on that motion before ruling on anything else. *See, Futer-Escalona v. Wisotsky*, 781 So.2d 1063 (Fla. 2000).

15. A prior Referee for this case, Judge Curtis J. Neal was disqualified upon motion in July of 2017. See attached Exhibit B, *Order of Disqualification and Motion to Disqualify*.

## Legal Argument on Recusal of Referee

16. Rule 2.330(b) of the Florida Rules of Judicial Administration and provides in pertinent party that Respondent, Christopher M. Chestnut, "may move to disqualify the trial judge assigned to the case on grounds provided by Rule, by Statute, or by the Code of Judicial Conduct,"

17. Cannon 3(E)(1)(a) of the *Code of Judicial Conduct* provides that a judge shall disqualify himself in a proceeding in which his "impartiality might reasonably be questioned…."

18. Rule 2.330(f) of the Florida Rules of Judicial Administration requires that Judge Ohlman in reviewing this motion "must look only to the legal sufficiency of the motion and shall pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action."

19. Arguably this is not a successive motion under Rule 2.330(g) of the Florida Rules of Judicial Administration, because the prior motion to disqualify in this case pertained to Judge Neal and this motion pertains to Judge Ohlman. However, even if the Court were inclined to consider this a successive motion the aforementioned trial transcript exerts and Exhibit A are irrefutable evidence requiring the disqualification of Judge Ohlman.

20. Based upon the aforementioned, Respondent has a well-established fear that he cannot and will not receive a fair trial in SC17-307 with Judge Ohlman as Referee based upon the bias coaching "tips" provided to TFB by the Referee inuring to the benefit of TFB and to the detriment of Respondent.

21. The neutrality of Judge Ohlman as the neutral arbiter has been irreparably violated, and Respondent cannot receive a fair trial, especially considering that he as the Referee is the sole determiner of factual findings and recommendations for sentencing.

WHEREFORE, Respondent further petitions this Court for an Order disqualifying Judge Jonathan Ohlman as Referee in SC17-307 and vacating his prior and pending orders.

Respectfully submitted this 27th day of March, 2018.

By: /s/ Christopher M. Chestnut
**CHRISTOPHER M. CHESTNUT**
Florida Bar No. 0022409
Chris.chestnut@chestnutfirm.com
**THE CHESTNUT FIRM, LLC**
Telephone: (855) 374-4448
Facsimile: (855) 377-2667
Litigation@chestnutfirm.com
Chris.chestnut@chestnutfirm.com

STATE OF Georgia                )

COUNTY OF Fulton                )

CHRISTOPHER M. CHESTNUT, duly sworn upon oath deposes and says that he has prepared and reviewed his Motion to Disqualify Jonathan Ohlman and that the facts contained therein are true and correct.

_____
RESPONDENT

The foregoing Motion to Disqualify Jonathan Ohlman was acknowledged before me this by CHRISTOPHER M. CHESTNUT, who is known to me and who did take an oath.

_____
Notary Public
My Commission Expires:

## CERTIFICATE OF GOOD FAITH

Defense Counsel, as an attorney appearing pro se in these proceedings, does hereby certify that this motion and statements contained herein are made in good faith and not for the purpose of undue delay, harassment or any other purpose that might thwart the ends of justice.

Respectfully submitted,

CHRISTOPHER M. CHESTNUT, ESQ.

FBN: 0022409

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th of March 2018, the foregoing was electronically served upon the following counsel of record, I certify that originals hereof have been furnished to Judge Jonathan Ohlman, via his Judicial Assistant, Roseanne Whiting, rwhiting@circuit5.org, with copies to Carlos A. Leon at cleon@flabar.org, and Adria E. Quintela, Staff Counsel, The Florida Bar at aquintel@flabar.org.

THE CHESTNUT FIRM, LLC

BY:   /s/ Christopher Chestnut
CHRISTOPHER M. CHESTNUT
Florida Bar No. 22409

# EXHIBIT A

Honorable Jonathan Ohlman
    March 16, 2018                            i

1              IN THE SUPREME COURT OF FLORIDA

2                   (Before a Referee)

3

4

5    THE FLORIDA BAR,              S. Ct. Case No. SC17-307

6    Complainant,                 V TFB File Nos.: 2017-00,

7                                 114 (4B)

8         v.                      2017-00, 249(4D) & 2017-00,

9    CHRISTOPHER M. CHESTNUT,     306 (4D)

10   Respondent.

11

12              NOTICE OF FINAL HEARING

13

14        Proceedings before the Honorable Jonathan Ohlman,

15   Judge of the Circuit Court, as cause in this matter came

16   to be heard on the 16th of March, 2018, before Catherine

17   M. Morrow, Florida Professional Reporter and a Notary

18   Public in and for the State of Florida at Large.

19

20

21

22                US Legal Support, Inc.
                  JACKSONVILLE, FL 32202
23                   (904) 359-0583

24

25

1    is confounding the two issues as one.  If Mr. Leon

2    after my not accepting the caveat is admitting to

3    my motions ——

4        THE COURT:  Hold on.  Hold on.  Hold on.

5    Hold on.  Hold on.  Please stop when I start.  Are

6    you seeking to have the report of Judge Neal

7    considered as part of this record?

8        PLAINTIFF ATTORNEY one:  Yes, Judge, for a

9    variety of reasons.

10       THE COURT:  No, I don't.  Is there an

11   objection to that?

12       MR. CHESTNUT:  Right now, yes, your Honor.  I

13   am objecting to Mr. Leon trying to enter evidence

14   in my case in chief.

15       THE COURT:  Okay.  So are you ——

16       MR. CHESTNUT:  Now he is seeking to enter

17   additional evidence.  I ——

18       THE COURT:  Hold on.  Hold on.  Hold on.  Are

19   you requesting to reopen your case for the sole

20   purpose of admitting that report?

21       PLAINTIFF ATTORNEY one:  Yes, Judge.  And

22   rebuttal to Mr. Chestnut's self representation has

23   attempted to proffer some evidence.  The Bar now

24   asks this court to take judicial notice of Judge

25   Neal's orders in the previous case to which Mr.

# EXHIBIT B

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,

    Complainant,

v.

CHRISTOPHER M. CHESTNUT,

    Respondent.

_____/

Supreme Court Case No.:
SC17-307

The Florida Bar File Nos.:
2017-00,114(4B), 2017-00,294(4D) &
2017-00,306(4D)

## ORDER OF DISQUALIFICATION

**THIS CAUSE** having come before the Court for review of a Motion to Disqualify filed by the Respondent on June 29, 2017, at 7:21 p.m., which motion also included a request to vacate several Orders; the undersigned is permitted only to determine the legal sufficiency of the motion and not to address the truth of the facts alleged, finds that the motion is legally sufficient requiring the undersigned to grant only the Motion to Disqualify and proceed no further in this action, it is therefore,

**ORDERED AND ADJUDGED** as follows:

1. The Motion to Disqualify is granted and a copy of this Order is forwarded to the Chief Judge of the Circuit for assignment of a Successor Referee.

**DONE AND ORDERED** in Chambers at Brooksville, Hernando County, Florida, this ___*30*___ day of June, 2017.

CURTIS J. NEAL, REFEREE

Copies Provided of the Foregoing Order furnished to:

Don F. Briggs, Chief Judge, Fifth Judicial Circuit @ dbriggs@circuit5.org;

Christopher M. Chestnut, Esquire, (Respondent) @ chris.chestnut@chestnutfirm.com;

Joseph Arnold Corsmeier, Esquire (Respondent's counsel) @ jcorsmeier@jac-law.com;

Carlos Alberto Leon, Bar Counsel, The Florida Bar, @ cleon@flabar.org;

Adria E. Quintela, Staff Counsel, The Florida Bar, @ aquintel@flabar.org;

on this ___*30*___th day of June, 2017 via email.

Paula C. Manning, Judicial Assistant

IN THE SUPREME COURT OF FLORIDA.
(Before a Referee)

THE FLORIDA BAR,

    Complainant,

v.

CHRISTOPHER M. CHESTNUT,

    Respondent.

_____/

Supreme Court Case
No. SC17-307

The Florida Bar File Nos.
2017-00,114(4B), 2017-00,249(4D) and
2017-00,306(4D)

## MOTION TO DISQUALIFY THE HONORABLE CURTIS J. NEAL AND TO VACATE THE JUNE 23 & 26, 2017 COURT ORDERS

    COMES NOW, Respondent Christopher M. Chestnut, pursuant to Rule 2.330(b) and of the Florida Rules of Judicial Administration and Fla. R. Civ. P. 1.080, and hereby moves this Honorable Court to disqualify and recuse The Honorable Curtis J. Neal as Referee in SC17-307.   Upon Judge Neal's removal, Respondent further moves this Honorable Court to vacate the existing orders issued by Referee Judge Curtis J. Neal and in support thereof states:

## Summary of Argument

1. Respondent has been deprived of due process and a fair trial in his bar disciplinary action, case SC17-307, due to ex-parte communications between Referee Judge Curtis J. Neal 's and The Florida Bar (hereinafter "TFB"), requiring recusal.

2. Judge Neal issued an Order Granting TFB's Motions on June 23, and June 26, 2017 respectively in response to TFB's Motion for Witness Testimony via Video-Conferencing and TFB's Motion to Quash Respondent's Notice of Deposition for Trial of Out of State Witnesses. Both orders were based solely on TFB's motions, absent proper notice to Respondent, absent a proper hearing where Respondent could be heard, and absent a response from Respondent.

3. The Referee's rulings based upon communication with a single litigant, TFB, constitutes improper ex-parte communications with the court in blatant violation of Judicial Canons and a fundamental violation of Respondent's due process rights.

4. The cumulative effect of the foregoing events establish in Respondent a "well-founded fear" of prejudice against Respondent by Judge Curtis Neal as Referee.

5. Respondent's fear alone constitutes substantial evidence sufficing recusal.

6. Furthermore, Respondent's fear that he cannot and will not receive a fair trial before Judge Neal in SC17-307 is reasonable considering that the Referee in a bar disciplinary trial is the sole presider of the trial, sole gatekeeper of evidence, and sole finder of fact in determining guilt or innocence.

7.   Consequently, due process requires the recusal of Judge Neal as Referee for SC17-307.  See, *Michaud-Berger v. Hurley*, 607 So.2d 441 (Fla. 4th DCA 1992).

8.   Finally, upon the removal of Judge Neal, all prior rulings by Judge Neal must be vacated. See, Rule 2.330, Florida Rules of Judicial Administration.

## Legal Authority on Due Process & Entitlement to a Hearing on Issues Prior to Ruling

9.   One of the most basic tenets of Florida law is the requirement that all proceedings affecting life, liberty, or property must be conducted according to due process.  See, Art. I, § 9, Fla. Const.

10. The essence of due process is that fair notice and a reasonable opportunity to be heard must be given to interested parties before judgment is rendered. See, *Tibbetts v. Olson*, 91 Fla. 824, 108 So. 679 (1926).

11. Due process envisions a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties. See, *State ex rel. Munch v. Davis*, 143 Fla. 236, 244, 196 So. 491, 494 (1940).

12. This notion of due process has been codified by Florida's Code of Judicial Conduct -- which provides in pertinent part that:

> "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications,   or   consider   other

> communications made to the judge outside the
> presence of the parties concerning a pending or
> impending proceeding...."
>
> See, *Florida Code Jud. Conduct*, Canon 3B(7),
> formerly Canon 3A(4).

13. Furthermore, in explaining the importance of this canon, the Florida
    Supreme Court has reiterated that:

> "This canon implements a fundamental
> requirement for all judicial proceedings under our
> form of government. Except under limited
> circumstances, no party should be allowed the
> advantage of presenting matters to or having
> matters decided by the judge without notice to all
> other interested parties."   See, *In re Inquiry
> Concerning a Judge: Clayton*, 504 So.2d 394, 395
> (Fla. 1987).

14. Additionally, the Florida Supreme has noted that:

> "Nothing is more dangerous and destructive of the
> impartiality of the judiciary than a one-sided
> communication between a judge and a single
> litigant. Even the most vigilant and conscientious
> of judges may be subtly influenced by such
> contacts. No matter how pure the intent of the
> party who engages in such contacts, without the
> benefit of a reply, a judge is placed in the position
> of possibly receiving inaccurate information or

being unduly swayed by unrebutted remarks about the other side's case. The other party should not have to bear the risk of factual oversights or inadvertent negative impressions that might easily be corrected by the chance to present counter arguments." See, *Rose v. State*, 601 So.2d 1181, 1183 (Fla. 1992).

15. Finally, the Florida Supreme Court recognizes that:

"The number of lawyers has grown significantly in recent years in most locations. It is impossible for lawyers to know each other and the judges with the same degree of familiarity that they did in the past. It is also more common for lawyers to appear in courts "away from home" than it was in the past. This growth in numbers and mobility places a greater burden on the judge to ensure that neutrality continues to exist." See, *Rose v. State*, 601 So.2d 1181, 1184 (Fla. 1992).

## Summary of Facts

16. On or about Friday June 23, 2017 at 2:21pm Complainant, The Florida Bar (hereinafter "TFB") filed a Motion to Quash Respondent's Notices of Deposition and a Motion to Allow Witnesses to Testify via Video-Conferencing. [1]

---

[1] These depositions for trial are paramount to Respondent's case in chief and due process as TFB has reneged or refused to produce out of state witnesses.

17. On Monday June 26, 2017 at 3:30pm the Referee in this matter, Judge Neal, granted TFB's Motion absent a hearing or an opportunity for Respondent to object to the Motion to Quash.

18. On June 23, 2017 at 1:55pm the Referee entered an Order Granting The Florida Bar's Motion for Witness Testimony Via Video-Conferencing and Granting Similar Relief for Respondent in response to a June 21, 2016 motion from TFB requesting the same. No hearing was noticed, required or allowed on this issue, Respondent was not even permitted to object or respond.[2]

19. The Referee has demonstrated a pattern of unilaterally granting TFB's Motions absent a hearing or response from Respondent in SC17-307 eliminating any suspicion his acts were inadvertent or mistake.

20. Judge Neal's SC17-307 Orders issued on June 23, and June 26, 2017 based upon TFB's allegations only, expressly denied Respondent an opportunity to present counter arguments that may easily have corrected the record resulting in a different rulings on the two subject TFB motions.

21. The pattern of ex-parte communications between TFB and the Referee Judge Neal both demonstrate a convincing predisposition of partiality favoring TFB, and eliminates any suspicion that the Referee's actions are inadvertent or mistake.

22. The prejudicial effect of the June 23 and June 26 unilateral Orders, is the first order grants the out of state accusing witnesses a pass from appearing at trial in Jacksonville, Florida on July 18, 2017, and the second order

---

[2] The contemporaneous filing of both the motion to quash deposition and the motion to allow for video appearance at trial demonstrate that TFB is not likely to produce out of state witnesses at trial including complaining witnesses, further frustrating Respondent's due process.

concurrently prevents Respondent from taking a deposition for trial of the out of state accusing witnesses prior to trial.[3] [4]

23. In addition to ex parte communications, Judge Neal has engaged in a pattern of disparate treatment demonstrating partiality adverse to Respondent. As an example, TFB's motions are habitually granted within 1-3 days of a motion being filed and typically absent a hearing. In contrast, TFB's First Motion to Compel to Respondent was denied on June 1, 2017, an Order has yet to be entered against TFB by the Referee.

24. Furthermore, in a prior unrelated case, consolidated SC16-797 and SC16-1480 Judge Neal, as the Referee engaged in a pattern of unilaterally granting motions filed TFB absent a hearing or response from Respondent.[5]

---

[3] All of the witnesses in all 3 counts of the subject complaint reside more than 100 miles from Jacksonville, FL where the trial will be held and all live outside of Florida, thus cannot be compelled to trial pursuant to Fl. R. Civ. P. 1.330(a)(3)(B).

[4] In the prior consolidated cases of SC16-797 & SC16-1480 the Referee granted at least 7 Orders granting TFB motions absent a hearing, ultimately, the Referee struck Respondent's evidence and witnesses proffered prior to and during trial, leaving Respondent with *de minimis* record evidence.

[5] 1.   In the consolidated cases SC16-797 & SC16-1480 On September 27, 2016 TFB filed an Emergency Motion regarding Depositions. The Referee Granted TFB's Motion on the same day September 27, 2016, Respondent had no opportunity for a hearing on this issue.

2.   In the consolidated cases SC16-797 & SC16-1480 the Referee granted on October 10, 2016 TFB's Second Motion to Compel that was filed on October 7, 2016. The Referee neither required, noticed, or allowed a hearing on the merits of the motion to compel, but rather unilaterally granted the motion depriving Respondent of due process in presenting factual contentions to the motion.

3.   In the consolidated cases SC16-797 & SC16-1480 on November 14, 2016 TFB filed a Motion to Compel Discovery. The next day, on November 15, 2016 the Referee Granted TFB's Motion to Compel. Respondent was never afforded a hearing on this issue.

4.   On November 14, 2016, Respondent filed a Notice of Taking Deposition of Tyrone Baker. On November 15, 2016, the Referee granted a Motion to Quash the deposition of Tyron Baker. Respondent was never afforded a hearing on this issue.

5.   On October 25, 2016 TFB filed a Motion to Quash Deposition of Dayna McGregor, the next day on October 26, 2016 the Motion to Quash was granted. No hearing was required, noticed, or had.

25. The cumulative effect of aforementioned events by Judge Neal in his capacity as Referee lead Respondent to reasonably perceive, beyond a more subjective fear, that he cannot and will not receive a fair trial in SC17-307 with Judge Neal sitting as the Referee.

**Legal Authority on Recusal of Referee**

26. Rule 2.330(b) of the Florida Rules of Judicial Administration and provides in pertinent party that Respondent, Christopher M. Chestnut, "may move to disqualify the trial judge assigned to the case on grounds provided by Rule, by Statute, or by the Code of Judicial Conduct."

27. Cannon 3(B)(7) of the *Code of Judicial Conduct* states that "[a] judge shall not initiate, permit, or consider ex-parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." The Supreme Court has said that "this Cannon implements a fundamental requirement for all judicial proceedings under our form of government. In *re inquiry concerning a judge: Clayton*, 504 So.2d 394, 395 (Fla. 1987).

28. In *Rose v. State*, 601 So.2d 1181, 1183 (Fla. 1992), the Supreme Court of Florida reiterated "nothing is more dangerous and destructive of the impartiality of the judiciary then a one sided communication between a judge and a single litigant."

---

6.       On March 3, 2017, TFB filed a Motion to Strike an Untimely filed closing argument. On March 6, 2017 the Referee granted TFB's Motion to Strike, Respondent was never allowed or granted a hearing.

7.       On December 5, 2016 TFB filed a Motion to Exclude Respondent's Evidence. The Court was required to conduct a Kozel hearing on this issue, however a Kozel hearing was never conducted.

8.       On March 15, 2017 The Referee Granted TFB's Motion to Exclude Respondent's Evidence, and struck Respondent's witnesses, in effect striking all of the evidence that Respondent had proffered prior to and during trial, but never conducted a Kozel hearing.

29. Cannon 3(E)(1)(a) of the *Code of Judicial Conduct* provides that "a judge shall disqualify himself in a proceeding in which his "impartiality might reasonably be questioned...." It is because of its affect on the appearance of impartiality that an allegation of an ex-parte communication is legally sufficient to require recusal. See, e.g., *Faulker v. Pearson*, 870 So.2d 248 (Fla. 2nd DCA 2004)(citing *Robins v. Robins*, 742 So.2d 395 (Fla. 2nd DCA 1999)(holding that an ex-parte communication alone is legally sufficient to require recusal); *Rollins v. Baker*, 683 So.2d 1138, 1139 (Fla. 5th DCA 1996)(holding that the ex-parte communications together with certain comments made by the judge were sufficient to require recusal); *Brake v. Murphy*, 693 So.2d 663 (Fla. 3rd DCA 1997)(holding that evidence of ex-parte communication between the judge and the opposing party necessitated recusal).

30. See also, *Michaud-Berger v. Hurley*, 607 So.2d 441 (Fla. 4th DCA 1992)( The facts must be viewed from the perspective of the petitioner. Here, petitioner was confronted with a memorandum opinion in which respondent found that one of her attorney's actions in an unrelated case involved "sophistry," "greed, overreaching and attempted extortion." Although her attorneys had received assurance from the trial judge that he would remain impartial, within a matter of hours, the same trial judge had concluded that her other attorney had intentionally acted improperly in his use of a jury verdict form. We conclude that the cumulative effect of the foregoing events, as reasonably perceived by the petitioner, constituted a legally sufficient basis for her motion for disqualification and amounted to more than a mere subjective fear that she would not receive a fair trial).

31. Based upon the aforementioned, Respondent has a well-established fear that he cannot and will not receive a fair trial in SC17-307 with Judge Curtis

Neal as Referee based upon a pattern of ex-parte communications with The Florida Bar, a pattern of granting motions from The Florida Bar absent a hearing, proper notice, or response from Respondent, and a pattern of impermissible partiality as Referee favoring The Florida Bar and adverse to Respondent.

WHEREFORE, Respondent further petitions this Court for an Order disqualifying Judge Curtis J. Neal as Referee in SC17-307 and vacating his prior orders.

Respectfully submitted the 28th day of June, 2017.

By: /s/ Christopher M. Chestnut
CHRISTOPHER M. CHESTNUT
Florida Bar No. 0022409
Chris.chestnut@chestnutfirm.com
THE CHESTNUT FIRM, LLC
841 Prudential Drive
Jacksonville, FL 32202
Telephone: (855) 374-4448
Facsimile: (855) 377-2667
Litigation@chestnutfirm.com
Chris.chestnut@chestnutfirm.com

**EXHIBIT H**

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)

THE FLORIDA BAR,
    Complainant,

                       S. Ct. Case No.   SC17-307
                       TFB File Nos.:   2017-00, 114(4B),
  v.                 2017-00,   249(4D)   &   2017-00,
                       306(4D)

CHRISTOPHER M. CHESTNUT,
    Respondent.
_____/

## ORDER DENYING AMENDED MOTION TO DISQUALIFY REFEREE

THIS MATTER was brought before the undersigned referee upon the Respondent's Amended Motion to Disqualify, dated March 27, 2018.   After considering the motion in connection with the proceedings referred to therein, it is hereby

ORDERED that the Amended Motion to Disqualify be, and is hereby, denied as legally insufficient and/or, in the alternative, untimely.   Section 38.10, Fla. Stat. (2015); Fla. R. Jud. Admin. 2.330; The Florida Bar v. Carlon, 820 So. 2d 891 (Fla. 2002); Gregory v. State, 118 So. 3d 770, 778 (Fla. 2013); Williams v. State, 689 So. 2d 393, 395-6 (Fla. 3d DCA 1997).

Because of these pending motions, the deadline for each side to submit their respective final written arguments and/or proposed findings of referee is hereby extended to 12:00 noon on Thursday, April 5, 2018.

DONE AND ORDERED at Ocala, Marion County, Florida, this 29 day of March, 2018.

_____
JONATHAN D. OHLMAN
Referee / Circuit Court Judge

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on the below-named individuals by e-service/United States Mail on the 29 day of March, 2018, to:

Carlos Alberto Leon, Esq., Bar Counsel
The Florida Bar
651 East Jefferson Street
Tallahassee, FL 32399-2300
cleon@flabar.org

Christopher M. Chestnut, Esq.
2360 Kings Road
Jacksonville, FL   32209-5864
chris.chestnut@chestnutfirm.com

Adria E. Quintela, Esq., Staff Counsel
The Florida Bar
1300 Concord Terrace
Sunrise, FL   33323
aquintel@flabar.org

_____
Roseanne Whiting, Judicial Assistant

**EXHIBIT I**

1    to be Thursday the 29th at 4:00 p.m. I think those

2    are the only other two matters that need to be

3    addressed.

4        MR. CHESTNUT:  Judge, for the record, the

5    respondent has still not rested its case in chief.

6    There are still witnesses we have.  There are some

7    documents to be moved into evidence.  For the

8    record, the respondent has not rested.

9        THE COURT:  For the record, I believe that

10    under 90.612 the court has the right to control

11    the proceedings to avoid needless consumption of

12    time.  You were advised ell in advance and chose

13    to spend it as you did.  Anything else?

14        MR. LEON:  The Bar will be filing along with

15    this proposed report of referee a statement of the

16    cost for the court's consideration.

17        THE COURT:  Anything else, Mr. Chestnut,

18    further response?

19        MR. CHESTNUT:  So other than next Wednesday,

20    your Honor, the deadline for aggravators and

21    mitigators?

22        THE COURT:  Aggravators and mitigators will

23    be next Wednesday at 4 o'clock.  And the proposed

24    report of referee will be Thursday, March 29th, at

25    4:00 p.m., both of them at 4:00 p.m.

**EXHIBIT J**

Honorable Jonathan Ohlman
March 16, 2018                    150

1   you disqualify has to be in writing.  Until it is

2   in writing, go ahead, as opposed to the contrary.

3   Otherwise, please proceed with what you want to

4   do.

5        MR. CHESTNUT:  The same argument that I just

6   made in the interest of time, I would renew a

7   motion for mistrial based upon the court's

8   coaching of Mr. Leon on the procedural issues of

9   the admission of Judge Neal's report.  And then

10  allowing Mr. Leon to reopen his case in chief in

11  my case in chief.  I objected to that.  It's over

12  my objection, your Honor, and allowed that into

13  evidence.  Notwithstanding such, if the court is

14  instructing me to proceed, may I have a ruling on

15  the motion for mistrial?

16       THE COURT:  Denied.

17       MR. CHESTNUT:  So, your Honor, if I may have

18  a few minutes I would like to make arrangements to

19  call in my witnesses for testimony.

20       THE COURT:  Which one?

21       MR. CHESTNUT:  Pansy King.

22       THE COURT:  Mr. Leon, any objection?

23       PLAINTIFF ATTORNEY one:  Yes, sir.  I was

24  told she's going to be Skyped in?

25       THE COURT:  Is that correct?

IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CHRISTOPHER CHESTNUT,

    Plaintiff,

v.

JUSTICE CHARLES CANADY,
JUSTICE RICKY POLSTON,
JUSTICE JORGE LABARGA,
JUSTICE C. ALAN LAWSON,
JUSTICE BARBARA LAGOA,
JUSTICE ROBERT LUCK, and
JUSTICE CARLOS MUNIZ; in their
official capacities as Justices for the
Florida Supreme Court of Florida;
JOHN A. TOMASINO, in his official
capacity as Clerk for the Supreme
Court of Florida;

    Defendants.

CASE NO.: 4-19-CV-271-RH-MJF

PLAINTIFF'S MOTION FOR
LEAVE TO AMEND FOR A
SECOND AMENDED COMPLAINT
FOR PROSPECIVE INJUNCTIVE
AND DECLARATORY RELIEF
AGAINST STATE OFFICIALS IN
THEIR OFFICIAL CAPACITIES

**EXHIBIT E**

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS
### (January – November 2019)

| Month | Attorney | R | G | Yr. | Case Number | Violations | Sanction | Misc |
|---|---|---|---|---|---|---|---|---|
| JAN. 31 | | | | | | | | |
| 1 | Christine G. Bauer, (Orlando) | W | F | 2006 | 18-1976 | Further, Bauer shall pay restitution of more than $23,000 to one client. Bauer had a significant shortage in her trust account and abandoned her law practice. | **24 Disciplined**<br>**4 Disbarred**<br>**2 Revoked**<br><br>Disbarred | |
| 2 | Steven Paul Burch, (Punta Gorda) | W | M | 2008 | 18-1942 | **Burch abandoned his law practice after being arrested and detained until trial for violating the conditions of his pretrial release in a federal criminal case. He also pleaded guilty to felony conspiracy to distribute and possess with the intent to distribute a substance containing a detectable amount of heroin and agreed to forfeit his law license. Burch also failed to diligently represent a client after collecting a fee for his services.** | Perm Disbarred | |
| 3 | Joseph Patrick Gaeta, (Fort Myers) | W | M | 2002 | 18-1940 | Gaeta abandoned his law practice and clients, failed to complete the legal services for which he was hired, and allowed the statute of limitations to expire in 14 personal injury cases without settlement and without | Disbarred | |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS

### *(January – November 2019)*

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | communicating the status of the cases to the clients | |
| 4 | David Michael Goldstein, (Miami) | W | M | 1973 | 18-1854 | Disciplinary revocation is tantamount to disbarment. A disciplinary charge pending against Goldstein involved allegations **of trust account** violations | Revocation – 5 yrs. |
| 5 | Walter C. Little (Tampa) | W | M | 2001 | 18-479 | Little **engaged in felonious criminal activity involving conspiracy to commit insider trading/securities fraud.** He was sentenced to 27 months in prison, followed by three years of supervised release. | Disbarred |
| 6 | Jonathan Robert Simon (Orlando) | W | M | 2008 | 18-1774 | Disciplinary revocation is tantamount to disbarment. A disciplinary charge pending against Simon involved **trust account violations** | Disciplinary Revocation – 5 yrs. |
| **FEB. 28** | | | | | | | **11 Disciplined**<br>**3 Disbarred**<br>**2 Revoked** |
| 1 | Timothy John Chuilli, (Coral Gables) | W | M | 1992 | 18-600 | After receiving notice from The Florida **Bar, Chuilli failed to appear at a final disciplinary hearing** and did not participate throughout the proceedings. In addition, he failed to provide competent representation, failed to communicate, and failed to expedite litigation in a civil matter. | Disbarred |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS

*(January – November 2019)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2 | Arthur P. Cohen, (Fort Myers) | W | M | 1994 | 18-1616 | Cohen pleaded no contest to **misdemeanor possession of drug paraphernalia; he also was charged with felony drug possession.** In a criminal matter, Cohen represented a client, but failed to properly inform the client that his appearance was necessary for a court hearing. Finally, Cohen was alleged to have failed to timely file a notice of appeal in a client's criminal matter while working for another attorney and failing to communicate with the client | Perm. Disbarred |
| 3 | Dale James Morgado (New York, N. Y.) | W | M | 2009 | 18-1084 | In several instances, Morgado settled client cases and **misappropriated the settlement proceeds.** He also failed to adequately communicate with some clients and subsequently abandoned them | Disbarred |
| 4 | Mark Fisher | W | M | 2000 | 18-2005 | Fisher pleaded guilty in federal court to one **count of conspiracy to commit securities fraud, a felony.** | Revocation |
| 5 | David Philips (Miami) | W | M | 1999 | 18-1976 | Disciplinary revocation is tantamount to disbarment. Charges pending against Philips **involved the misappropriation of client trust funds.** | Revocation |
| **MAR. 29** | | | | | | | **21 Disciplined**<br>**1 Disbarred** |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS
### (January – November 2019)

| | | | | | | 9 Revoked |
|---|---|---|---|---|---|---|
| 1 | Christopher William Adamec (St. Augustine) | W | M | 2003 | 18-2132 | The Bar was investigating complaints that Adamec collected excessive fees and falsified invoices and failed to provide competent representation. He was arrested for theft of client funds and **entered a plea to the charge of Grand Theft in excess of $100,000, a first-degree felony. After his Petition for Disciplinary Revocation was filed, Adamec was sentenced in January to 22 months in prison and 10 years of probation** | Disciplinary Revocation -5 Yrs. |
| 2 | Cyrus A. Bischoff (Miami) | W | M | 2001 | 18-2067 | **While suspended from the practice of law by the Florida Supreme Court, Bischoff acted as escrow agent and negotiated funds through his trust account.** | Disciplinary Revocation -5 Yrs. |
| 4 | Brian Neil Greenspoon (Boca Raton) | W | M | 2003 | 19-144 | Greenspoon filed a Petition for Reinstatement following a three-year suspension. The Bar's investigation **discovered that Greenspoon had client contact during his suspension.** | Disciplinary Revocation -5 Yrs. |
| 4 | Daniel Robert Brinley (Royal Palm Beach) | W | M | 1992 | SC18-2052 | Brinley neglected client matters and made misrepresentations to clients concerning the status of their cases. One of the matters included an allegation of misappropriation. | Disciplinary Revocation -5 Yrs. |
| 5 | Jeffrey Greenfield Klein, | W | M | 1983 | SC19-18 | In 2012 in U.S. District Court for the Western District of New York, the U.S. | Disciplinary Revocation -5 Yrs. |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS

### (January – November 2019)

| # | Name | | | | | Description | Sanction |
|---|------|---|---|---|---|-------------|----------|
| | (Boca Raton) | | | | | Attorney charged Klein with Conspiracy to Commit Wire Fraud; Wire Fraud; Conspiracy to Engage in Money Laundering; and Money Laundering. The charges were part of a 40-count indictment charging 12 people with participating in a large-scale international "boiler room" stock fraud scheme. In 2018, Klein pleaded guilty to the charge of Conspiracy to Commit Wire Fraud and was sentenced to three years of probation with the first six months home detention and restitution of $134,261.53. | |
| 6 | Marvin Kurzban (Miami) | W | M | 1970 | SC19-176 | Kurzban was discourteous and unprofessional in civil proceedings, resulting in a mistrial. Upon retrial, additional misconduct occurred. Kurzban tendered a Petition for Permanent Revocation, which has been accepted by the Florida Supreme Court. | Disciplinary Revocation – Perm. |
| 7 | Cory Scott Robins (Davie) | W | M | 1997 | SC18-2038 | Robins improperly disbursed funds from his trust account. He tendered a Petition for Disciplinary Revocation, which was granted by the court. | Disciplinary Revocation |
| 8 | James M. Schneider (Hillsboro Beach) | W | M | 1976 | SC18-2123 | In March 2018, the U.S. Attorney for the Southern District of Florida filed a superseding 35-count indictment charging Schneider with among other | Disciplinary Revocation |

# THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS

### (January – November 2019)

| # | Name | | | | | Description | Sanction |
|---|------|---|---|---|---|-------------|----------|
| | | | | | | **offenses Conspiracy to Commit Securities and Wire Fraud; Securities Fraud; Wire Fraud; Conspiracy to Commit Money Laundering and Money Laundering. Following a December 2018 jury trial, he was found guilty of 33 of the 35 counts and sentenced to seven years in prison and ordered to pay more than $19 million in restitution.** | Disciplinary Revocation |
| 9 | Albert John Vidal (Silver Springs) | W | M | 1986 | SC19-430 | Unstead appears to be causing great public harm based upon his misappropriation of at least $82,647 in client funds | Disciplinary Revocation |
| 10 | Frank Nathan Tobolsky (Philadelphia, Pennsylvania) | W | M | 1988 | SC18-1157 | **Tobolsky misappropriated $32,500 of client funds held in trust to pay personal debts, including various gambling debts.** | Disbarred |
| **APR. 30** | | | | | | | **19 Disciplined** <br> **1 Disbarred** <br> **3 Revoked** |
| 5 | Alexander N. Kapetan, Jr. (Lighthouse Point) | W | M | 1999 | 19-274 | Kapetan filed a petition for disciplinary revocation, which was granted, after he entered **a plea to three felony charges** and was sentenced to five years of probation | Disciplinary Revocation -5 Yrs. |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS
*(January – November 2019)*

| # | Name | | | | | Description | Sanction |
|---|---|---|---|---|---|---|---|
| 8 | Ethan Marcus Wayne (West Palm Beach) | W | M | 2007 | SC19-345 | **Wayne pleaded guilty to the felony of engaging in a monetary transaction affecting interstate commerce by, through and to a financial institution, in criminally derived property of a value greater than $10,000 that is, property derived from health care fraud in violation of 18 U.S.C. §1957 and 2.** | Disciplinary Revocation -5 Yrs. |
| 9 | Peter Milan Predrag Vujin, (Miami Beach) | W | M | 2003 | SC17-194 | **Vujin threatened the opposing party with criminal action to gain an advantage in a civil matter and** misrepresented the matter to the Bar. He was previously disciplined for similar and additional misconduct, for which a disbarment recommendation had been made. Vujin failed to respond to an order to show cause issued by the Florida Supreme Court regarding the recommended sanction | Perm Disbarred |
| MAY 30 | Juan Fernando Alban Naranjo, (Doral) | H | M | 1997 | SC19-284 | Following the initiation of contempt proceedings in federal court caused by his failure to appear at court hearings, as well as an unrelated allegation of lack of communication and diligence in a client matter, the court granted Naranjo's petition for disciplinary revocation. | Disciplinary Revocation<br>**16 Discipline**<br>**6 Disbarred**<br>**3 Revoked** |

# THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS
*(January – November 2019)*

| # | Name | | | | | | |
|---|------|---|---|---|---|---|---|
| 2 | John Ralph Borland (Ocala) | W | M | 2006 | SC18-1947 | Borland abandoned his law practice and failed to maintain adequate client communication, neglected cases and failed to return unearned fees. He also failed to return original documentation provided by clients, or to respond to the Bar's inquiries as required. | Disbarred |
| 3 | **Christopher M. Chestnut** | **B** | **M** | **2006** | **SC16-797, SC16-1480, SC17-307** | In multiple cases, Chestnut incompetently handled matters; charged excessive fees; failed to effectively communicate with clients; failed to properly supervise lawyers and nonlawyer staff practicing without a license in another state; was dishonest; failed to provide a settlement statement to a service provider; failed to hold in trust disputed settlement funds; and solicited clients | Disbarred |
| 5 | Frank Joseph Heston (Ft. Lauderdale) | W | M | 1973 | SC19-447 | At the time of his disciplinary revocation, charges pending against Heston in two Bar complaints involved **misappropriation of client trust funds.** | Disciplinary Revocation -5 Yrs. |
|   | Alyscha Lauren Johnson (Jacksonville) | B | F | 2010 | SC19-205 | Complaints pending against Johnson included **allegations of lack of communication, neglect and excessive fees.** | Disciplinary Revocation -5 Yrs. |
| 9 | John Richard Geiger (St. Augustine) | W | M | 1994 | SC19-227 | Holding in contempt of the court's order 4.5.18 for **failing to notify clients, opposing counsel and tribunal of his suspension.** | Disbarred |
| 10 | Joseph Patrick Gaeta (Ft. Myers) | | M | 2002 | SC18-1387 | Gaeta failed to act with diligence by failing to initiate litigation on his client's | Disbarred |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS

*(January – November 2019)*

| # | Name (City) | | | Year | Case No. | Description | Sanction |
|---|---|---|---|---|---|---|---|
| | | | | | | behalf and thereafter abandoning his client. Gaeta failed to adequately communicate with the client, and he continually failed to comply with the client's requests for information. Gaeta also failed to respond to the Bar's inquiries in this matter | |
| 14 | Esmond Jude Lewis (Ft. Myers) | B | M | 2004 | SC19-387 | Lewis was held in contempt for engaging in the practice of law during his period of suspension and during the period of cost delinquency. | Disbarred |
| 15 | Daniel Marc Plonsky, (Sarasota) | W | M | 2003 | SC17-321 & SC18-928 | In dealing with an elderly client, Plonsky charged prohibited fees, had a conflict of interest and engaged in deceitful and dishonest conduct by unilaterally loaning his brother's company money from his client's trust, and engaged in conduct prejudicial to the administration of justice. In December 2018, the Supreme Court placed him on an interim suspension and ordered fee arbitration with his former client. In a second matter, also involving an elderly client, Plonsky failed to communicate, lacked competence, failed to properly supervise non-lawyer assistants, failed to exercise professional independence and supported the unlicensed practice of law by a non-legal entity | Disbarred |
| 16 | Robert Ouriel, (Pacific Palisades, Ca.) | W | M | 1986 | .SC19-410 | In 2009, Ouriel was arrested in Los Angeles, Calif., and charged with felony grand theft of personal property. On July 13, 2010, he entered a no contest | Disciplinary Revocation - 5 Yrs. |

# THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS

*(January – November 2019)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **JUN. 21** | | | | | | | **8 Disciplined**<br>**2 Disbarred**<br>**1 Revoked** |
| | | | | | | plea to one count of felony theft. The court accepted the plea and found him guilty. Ouriel was sentenced to three years' probation, 45 days of community service and ordered to pay restitution of $221,775 to the victim. **He failed to report his felony arrest and conviction to The Florida Bar as required by The Rules Regulating The Florida Bar** | |
| 2 | David Allen Brener | W | M | 1988 | SC18-1944) | Brener was also ordered to pay **restitution to six clients after his apparent abandonment of his law practice.** Beginning in October 2018, six judges from three different Florida counties reported Brener's failure to appear at numerous court appearances. Brener also failed to communicate with his clients, failed to perform the work for which he was retained, and failed to respond to the Bar or otherwise participate in the disciplinary proceedings. | Perm Disbarred |
| 4 | Diego Handel (Daytona Beach) | H | M | 1984 | SC19-295 | The Supreme Court of Florida suspended Handel indefinitely effective Jan. 9, 2019, **because he failed to fully comply with a subpoena issued by the Bar for his attorney trust account records. Handel failed to provide notice of his** | Disbarred |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS

### (January – November 2019)

| # | Name | | | | Case | Description | Discipline |
|---|------|---|---|---|------|-------------|------------|
| 6 | Kirk Joseph Girrbach (Ft. Lauderdale) | W | M | | 19-554 | suspension to his clients, opposing counsel and the courts. **He continued practicing law and meeting with clients after the effective date of his suspension. His actions constituted contempt of the court's suspension order.** At the time of his disciplinary revocation, charges pending against Girrbach in a Bar grievance involved **misappropriation of client trust funds.** | Disciplinary Revocation – 5 yrs. |
| **JUL. 26** | | | | | | | **27 Discipline** <br> **2 Disbarred** <br> **4 Revoked** |
| 1 | William Abramson (West Palm Beach) | W | M | 1992 | SC19-717 | Abramson had three disciplinary cases pending before a referee alleging that he engaged in disrespectful and confrontational behavior with two separate traffic magistrates; **that he failed to comply with discovery requests leading to sanctions being imposed in a personal civil matter; and that he failed to appear before a grievance committee and produce documents.** Abramson also had two other matters pending before a grievance committee alleging that after accepting a fee to represent two criminal defendants, he failed to properly communicate and diligently represent them | Disciplinary Revocation–5 yrs. |
| 6 | Christopher Louis Brady | W | M | 2013 | SC19-39 | In July 2018, Brady was terminated as an associate attorney from Barak Law | Perm Disbarred |

# THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS

### (January – November 2019)

| 9 | | | | | |
|---|---|---|---|---|---|
| (Englewood) | | | | | |
| Lysa Nichole Clifton (Tampa) | W | F | 2012 | SC19-781 | Charges pending against Clifton included failure to perform services after being retained in one client matter; **direct solicitation of a client in a high-profile criminal case; and pending criminal charges for driving under the influence in one matter and possession of a controlled substance and driving with a suspended license in another matter.** |

Group for cause. Afterward, he began **holding himself out as the owner of Barak Law Group and contacted** opposing counsel on several of the law firm's cases to advise them to no longer communicate with owner Anthony Barak regarding their cases. **On Aug. 12, 2018, Brady and his brother burglarized the Barak Law Group's office and the firm's** storage unit. Criminal charges still were pending against Brady and his brother at the time the Bar's case was concluded. **Despite an injunction obtained by Barak, Brady continued filing unauthorized papers and pleadings on behalf of clients of Barak** Law Group while holding himself out as being affiliated with the law firm. He also represented his brother in an unrelated family law matter and filed at least six documents wherein the signature block showed his affiliation with Barak Law Group in direct violation of the injunction.

Disciplinary Revocation – 30 Days

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS

*(January – November 2019)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11 | Kirk Joseph Girrbach (Ft. Lauderdale) | W | M | 1990 | SC19-534 | Charges pending against Girrbach at the time of the court order included his **misuse of trust funds** from a real estate closing and misrepresenting the status of a pending legal action. | Disciplinary Revocation— 5yrs. |
| 16 | Jose Maria Herrer (Miami) | H | M | 1986 | SC19-886 | Herrera raised frivolous claims, made misrepresentations to the court, suborned perjurious testimony and raised false and/or frivolous claims of privilege in order to conceal relevant evidence. His **abusive litigation tactics** harmed his own client's interests and caused prejudice to his client. **The enhanced disbarment period of 10 years is based on his part in perpetrating a massive fraud upon the courts of South Florida.** | Disbarred – 10 years |
| 19 | **Earl Mayberry Johnson Jr** (Jax) | B | M | 1994 | SC18-32 | | 6 mos. Suspension Later Disbarred. |
| 23 | Jonathan Seth Morris (Ft. Lauderdale) | W | M | 2007 | SC19-787 | It is alleged that Morris settled a client's case without the client's approval. Settlement funds in the amount of $21,500 were remitted to Morris and deposited by him in his trust account on Feb. 7, 2018. **Morris thereafter misappropriated the settlement funds.** On or about Dec. 21, 2018, Morris repaid the $21,500 to the client's subsequent counsel. | Disciplinary Revocation |
| AUG. 29 | | | | | | | **22 Disciplined** / **6 Disbarred** / **3 Revoked** |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS

### (January – November 2019)

| | | | | | |
|---|---|---|---|---|---|
| Gregory Vance Beauchamp (Chiefland) | W | M | 1974 | SC19-640 | In four combined grievance files, Beauchamp misappropriated more than $200,000 of client funds from his trust account. | Disciplinary Revocation |
| Christopher M. Chestnut, (Jacksonville) | B | M | 2006) | SC18-1614 | Chestnut was found guilty of failing to communicate with his clients and failing to diligently pursue their cases. He also made misrepresentations. As Chestnut is already disbared, his permanent disbarment was effective immediately | Perm. Disbarred |
| Joseph I. Harrison (Coral Gables) | | | 2006 | SC19-1121 | The Bar received an insufficient funds notice regarding two checks issued from Harrison's trust account. Harrison said the checks had been paid and no clients harmed. After the Bar issued subpoenas to audit his trust account, Harrison submitted a Petition for Disciplinary Revocation. | Disciplinary Revocation – 5 yrs. |
| Daniel Stephen Lapina (Orlando) | W | M | | SC19-991 | The Bar received notice that a check drawn on Lapina's law office trust account was dishonored because of insufficient funds. A compliance audit revealed Lapina failed to maintain the account in substantial compliance with the Rules Regulating The Florida Bar, resulting in shortages. | Disciplinary Revocation – 5 yrs. |
| Moein Marashi, (Tampa) | | | | SC18-2097 | Marashi misappropriated at least $84,772 of a client's funds in a wrongful death lawsuit. He was arrested and held in contempt of court by a 13th Circuit Court judge | Perm. Disbarred |

# THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS
## *(January – November 2019)*

| Name | | Sex | Year | Case No. | Description | Result |
|---|---|---|---|---|---|---|
| Brett Allen Mearkle, (Atlantic Beach) | | | | SC19-110 | Mearkle was hired and paid $2,500 to handle a business bankruptcy. He failed to file the case and communicate with the client. In another case, after appearing for a client in federal court, Mearkle subsequently failed to appear in court and did not communicate with his client. | Disbarred |
| Albert W. Pucylowski, (Orlando) | W | M | 1998 | SC19-190 | Pucylowski abandoned his law practice without protecting his clients' interests. In three separate matters, his failure to appear in court caused arrest warrants to be issued for his clients. In addition, Pucylowski did not participate in disciplinary proceeding. | Disbarred |
| William Jason Scheil, (Lady Lake) | W | M | 2011 | SC19-130 | Scheil engaged in felony criminal conduct involving drug possession. In disciplinary proceedings, he failed to appear for scheduled case management conferences, respond to the Bar's discovery requests, and appear for the scheduled sanction hearing. | Disbarred |
| Eric Allen Wararig, (Hialeah) | W | F | 1996 | SC18-1606 | Wararig was adjudicated guilty for federal felony convictions of wire fraud and conspiracy. | Disbarred |
| Dennis L. Horton, (Windermere) | W | M | 1974 | SC17-782 | **"Taken improper loans from clients, comingled trust funds with operating** | Disbarred |

SEPT. 26

1

**15 Disciplined**
**4 disbarred**
**7 Revoked**

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS
### (January – November 2019)

| | | | | | | |
|---|---|---|---|---|---|---|
| 2 | Robert Nickolas Ingram (Miami Beach) | W | M | 2006 | SC18-588, SC18-656 and SC18-772 | with excessive overdrafts" (No amount disclosed) Material Misrepresentations in BK Court in one case, suspended from practice, but continued to file does on behalf of a client. Misrepresentations to the Bar and court. | Disbarred |
| 5 | Daniel Stephen Lapina (Orlando) | W | M | 1984 | SC19-991 | "After receiving notice from the bank that a check drawn on Lapina's law firm trust account was dishonored due to insufficient funds, the bar conducted a compliance audit that revealed that Lapina failed to maintain the account in substantial compliance. | Disciplinary Revocation – 5 yrs. |
| 6 | Carin E. Maxey (Jacksonville) | W | F | 2003 | SC19-433 | Misappropriation of client trust funds | Disciplinary Revocation- 10 years. |
| 7 | Jessica Marie McClean (Jacksonville) | W | F | 2015 | SC19-1148 | Represented herself as a NY law firm, but only Jax, and used non-lawyers in Florida to improperly solicit clients on foreclosure and bankruptcy. McClean's firm would accept fees and either refer a client to a lawyer in the client's locale without paying the lawyer or would accept the fees and abandoned the client altogether. The non-layywers would filed pleadings and engage in the unlicensed practice of law in other states. Failed to maintain trust accounting procedures. | Disciplinary Revocation |
| 8 | Madeline Palenzuela (Coral Gables) | W | H / F | 2003 | SC19-235 | Abandoned practice and failed to participate in the process. | Disbarred |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS
### (January – November 2019)

| | | | | | | |
|---|---|---|---|---|---|---|
| 9 | James R. Palmer (Longwood) | W | M | 1984 | SC19-1711 | Only signor on trust account, failed to maintain the minimum trust account records or follow the minimum trust account procedures as required, resulting in the use of trust account for purposes other than those intended. | Disciplinary Revocation |
| 10 | Jon Douglass Parrish (Naples) | W | M | 1993 | SC19-962 | Guilty. Harassing victim in a domestic violence attack. | Disciplinary Revocation –5 yrs. |
| 11 | Gary Louis Pickett (West Palm Beach) | B | M | 1984 | SC16-1213 | Entered into a partnership with a non lawyer to provide foreclosure defense legal services. Split fees with non lawyers, failed to properly supervise lawyers and non lawyers working in the business and assisted in the unlicensed practice of law. Lack of diligence and adequate communication. He charged an excessive fee and engaged in conduct involving dishonesty and bad faith. | Disbarred |
| 12 | Rangle Artice Santiago (Boynton Beach) | B | F | 2009 | SC19-903 | Misappropriation of client trust funds | Disciplinary Revocation – 5 yrs. |
| 13 | Richard Walter Springer (West Palm Beach) | W | M | 1974 | SC19-1059 | Submitted a petition for Disciplinary Revocation of Admission based upon allegations that he took fees from his clients and did not perform any significant legal work nor return unearned fees. | Disciplinary Revocation – 5 yrs. |
| OCT. 24 | | | | | | | **11 Disciplined** **3 Disbarred** **1 Revoked** |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS
### (January – November 2019)

| | | | | | | |
|---|---|---|---|---|---|---|
| Michael David Fender, (Altamonte Springs) | W | M | 1992 | SC19-628 | Fender abandoned his law practice, neglected various client matters, lacked competence, failed to maintain adequate client communication, failed to earn his fees, and failed to return documentation to his clients. Fender also failed to respond to the Bar's investigative inquiries and failed to participate in the disciplinary proceeding. | Disbarred |
| Bryan Jay Glick, (Boca Raton) | W | M | 1981 | SC19-1357 | Glick misappropriated settlement funds held in trust; used unrelated funds to satisfy a trust fund liability; made misrepresentations to The Florida Bar in response to the Bar's investigation; and failed to produce and maintain required trust accounting documents and other required records. | Disciplinary Revocation – 5 yrs. |
| Mark P. Stopa, (St. Petersburg) | W | M | 2002 | SC16-1727, SC17-1428 SC18-1197 | Stopa engaged in numerous acts of misconduct including filing meritless motions to quash service of process in foreclosure cases to delay the cases; engaged in disrespectful and aggressive behavior toward members of the judiciary; failed to appear at scheduled court hearings; failed to communicate with his clients; settled clients' cases without authorization; engaged in fraud, and knowingly allowed a client to provide false testimony at trial. Mortgage Scheme Fraud. | Perm. Disbarred |
| Michael Winston Lanier | W | M | 2006 | SC18-186 | In the first of three combined cases, Lanier's direct mail advertisement did | Disbarred |

# THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS
### (January – November 2019)

| | | | | | | |
|---|---|---|---|---|---|---|
| | (Jacksonville) | | | | not comply with required rules. In a second case, following a trial initiated by the FTC, **Lanier was shown to have engaged in numerous acts of solicitation to represent clients by creating a false network of out-of-state attorneys to serve out-of-state clients. Non-lawyers were running the business and Lanier attempted a cover-up by creating numerous fictitious entities designed to hide the true nature of his operation. In a third case, Lanier allowed a roofer to sign up clients for him in a scheme similar to the FTC case and for which he had been previously disciplined. Mortgage Scheme Fraud.** | **22 Disciplined** **6 disbarred** **9 Revoked** |
| Nov. 26 | | | | | | |
| 1 | Nelson Alfaro (Coral Gables) | M | 2006 | 19-1705 | **Federally indicted for conspiracy, obstruction of justice,** false statements to LEO | Disciplinary Revocation - 5 yrs. |
| 2 | Sonia Yvette Amador (Miami) | F | 2006 | 19-621 | Failed to diligently pursue bankruptcy cases and respond to TFB, 2 BK cases. | Disbarred Restitution $3,585 |
| 3 | James J. Boyle (Jacksonville) | W M | 2007 | 19-708 | **Failed to respond to court appeal and failed to respond to disciplinary proceedings.** | Disbarred |
| 4 | Keith A. Halpern (Tallahassee) | W M | 2009 | 18-184 | Failed to use $15k for quiet title action then an audit revealed he did misappropriate $339,777 | Disbarred |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS
### (January – November 2019)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6 | Earl Mayberry Johnson, Jr. (Jacksonville) | B | M | 1994 | 19-1965 | **Continued to practice law while suspended** and failed to complete the affidavit. In 2011, the family of a man who pleaded guilty to attempted murder hired Johnson for $5,000 to pursue a post-conviction motion on the basis that the victim recanted her testimony. Over the course of three years, Johnson filed motions for new trial, to vacate the judgment and conviction and to expedite a ruling. In the meantime, his client filed his own motions. Following inaction by the trial court, in 2016 the client's family paid an additional $1,500 for a certiorari to speed the process along, which Johnson never filed. In 2016, the court denied pending motions, explained corrections needed and allowed 60 days to file an amended motion, which Johnson never filed. Johnson refunded the family's $1,500 and also successfully filed pleadings to preserve his client's right to appeal. | Disbarred |
| 9 | Domenic L. Massari, III (Tampa) | W | W | 1977 | 19-1347 | Disbarred in 2002, he then had further contact with clients | Disciplinary Revocation – No leave to seek re-admission. |
| 10 | John Francis Myers (Atlanta) | W | M | 2006 | 19-1338 | Supervising Atty at large law firm where subordinate atty hid billings from the conglomerate client, failure to supervise – false and misleading billings. | Disciplinary Revocation, from 2018 Suspension. |
| 12 | Byron G. Peterson (Boca Raton) | M | M | 1976 | 19-1522 | Held himself out as a lawyer after the effective date of the suspension order | Disbarred |

## THE FLORIDA BAR SANCTION CHART FOR 2019 DISBARMENT & REVOCATION SANCTIONS

*(January – November 2019)*

| | | | | | | |
|---|---|---|---|---|---|---|
| 13 | Tracy Nadine Record (Ft. Pierce) | B | F | 2005 | 19-1442 | Failed to appear at hearings and failure to communicate with clients | Disciplinary Revocation, 5 yrs. |
| 14 | Philip J Reichenthal (Homestead) | W | M | 1968 | 19-1525 | Received $ 2million in bitcoin to trust funds, and did not administer properly (PROBABLY STOLE – CHECK THE ORDER) | Disciplinary Revocation – 5 yrs. |
| 15 | Jay Rosman (Maine) | W | M | 1979 | 19-1301 | Prostitution arrest, was a Lee County Judge, left the bench thereafter | Disciplinary Revocation – Immediate Readmit upon application. |
| 16 | Scott David Rubinchik (Plantation) | W | M | 1996 | 18-501 | Abandonment of practice.  Failed to respond to the 4th DCA multiple times in 2 criminal appeals, failed to take action on client matters | Disbarred, |
| 19 | John Michael Toppa, III (Melbourne) | | M | 2013 | 19-1611 | **2 arrests felony arrests for purchasing, possess, bribery and accepting unlawful compensation.** | Disciplinary Revocation |
| 20 | Illya Torchinsky (North Miami) | W | F | 2008 | 19-1614 | "Wrongly converted trust funds" and neglected client matters. Returned all trust funds. | Disciplinary Revocation – 5 yrs. |
| 21 | Erin Rebecca Waskiewicz (St. Johns) | W | F | 2003 | 19-1535 | DUI with property damage, reduced to wreckless, withhold – 6 mos probation, TFB Disciplinary matter was diverted to Florida Lawyers Assistance, Inc. and she did that for 1 year until she violated the terms of that contract | Disciplinary Revocation – 5 yrs. |