# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

CHRISTOPHER CHESTNUT,

    Plaintiff,

v.                                                          Case 4:19cv271-RH-MJF

JOHN TOMASINO, et al.,

    Defendants,

_____/

## MOTION TO DISMISS

Defendants, John Tomasino, in his official capacity as Clerk of the Florida Supreme Court, Charles T. Canady, Ricky Polston, Jorge Labarga, Alan Lawson, and Carlos G. Muñiz, in their official capacities as Justices of the Florida Supreme Court,[1] hereby file this motion to dismiss the Second Amended Complaint, Doc. 13,

---

[1] The Second Amended Complaint also names as defendants former Justices Barbara Lagoa and Robert Luck. Justices Lagoa and Luck left the Florida Supreme Court when they received their commissions as judges of the United States Court of Appeals for the Eleventh Circuit. Since the Amended Complaint seeks prospective injunctive and declaratory relief, Justices Lagoa and Luck are no longer proper defendants in this matter. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.") (citation omitted, emphasis in original). Defendants respectfully request that former Justices Lagoa and Luck be dismissed as defendants in this action.

for lack of subject matter jurisdiction and failure to state a cause of action, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2]

**Introduction and Background**

Plaintiff was admitted to practice law in Florida in 2006, and was permanently disbarred in August 2019 by order of the Florida Supreme Court (FSC). Doc. 13 at 33, 36. He filed suit under 42 U.S.C. § 1983, claiming that Defendants violated his due process rights. He seeks an order from this Court declaring the FSC disbarment order null and void, and enjoining the Defendant Justices from enforcing it. Doc. 13 at 6, 46.

The proceedings that led to Plaintiff's disbarment began with findings of probable cause by Florida Bar grievance committees in eleven separate matters.[3] Each case was initiated by a former client of Plaintiff or his law firm, and lodged with the Florida Bar. As a result of these probable cause findings, the Florida Bar filed

---

[2] In the interest of judicial economy, the instant motion to dismiss is directed to Plaintiff's Second Amended Complaint. Plaintiff's Motion for Leave to Amend for a Second Amended Complaint, Doc. 13, was filed before Defendants were served with initial process, and incorporates the Second Amended Complaint. Defendants, therefore, proceed under the assumption that Plaintiff's motion will be granted. In the event Plaintiff's motion is not granted, Defendant's respectfully request leave to file an amended motion to dismiss directed to the Amended Complaint, Doc. 12.

[3] See Complaints filed in Case Nos: SC16-797, SC16-1480 and SC17-307, attached hereto as **Exhibits 1, 2 and 3,** respectively. The Court is respectfully requested to take judicial notice of records from these Florida Supreme Court cases pursuant to Fed. R. Evid. 201.

three complaints with the FSC against Plaintiff: *Florida Bar v. Chestnut,* Case Nos.: SC16-797, SC16-1480 and SC17-307. The FSC appointed referees to conduct evidentiary hearings in these cases and to issue reports concerning guilt and make recommendations as to discipline. The referees' reports found that Plaintiff was guilty of violating the disciplinary rules of the Florida Bar in nine of the eleven original matters, including failure to preserve a client's property, failure to avoid conflicts of interest, lack of diligence, lack of competence, lack of candor, failure to maintain personal integrity, making a false statement or permitting a false statement to be made to a court, abuse of the legal process.[4] The Florida Bar and Plaintiff each sought review of the referees' reports by the FSC, pursuant to Rule 3-7.7 of the Rules Regulating the Florida Bar, and each submitted briefs pertaining to that review.[5] The FSC then issued an order approving the referees' findings of fact and recommendations as to guilt, but rejecting the disciplinary recommendations.[6] The FSC instead, ordered that Plaintiff be disbarred. Plaintiff then moved for rehearing

---

[4] The preliminary and final reports of the referee appointed in Case No.: SC16-797 and SC16-1480 are attached hereto as **Exhibits 4 and 5,** respectively. The report of the referee appointed in Case No.: SC17-307 is attached hereto as **Exhibit 6.**

[5] The docket sheets in Case Nos.: SC16-797, SC16-1480 and SC17-307, downloaded from the Florida Supreme Court's website (onlinedocketssc.flcourts.org) on January 29, 2020 are attached hereto as **Composite Exhibit 7.**

[6] The May 3, 2019 order disbarring Plaintiff is attached hereto as **Exhibit 8.**

3

with the FSC. Plaintiff's motion was denied by the FSC on August 2, 2019.[7] Prior to the FSC's denial of the motion for rehearing, Plaintiff filed his initial complaint in the instant case. Doc. 1.[8]

In September, 2018, the Florida Bar filed an additional complaint against Plaintiff, SC18-1614, arising from four more probable cause findings from grievance committees.[9] The referee found that Plaintiff violated the Florida Bar's disciplinary rules in three of the four cases.[10] Plaintiff did not seek a review of the referee's report, and on August 22, 2019, the FSC entered an order permanently disbarring Plaintiff.[11] Plaintiff's motion for rehearing of this order was denied.[12]

Plaintiff has sued the Justices "in their official capacities as Justices for the Supreme Court of Florida. Defendant Tomasino (FSC Clerk) is sued "in his official

---

[7] The order is attached hereto as **Exhibit 9.**

[8] While this case would otherwise been an ideal candidate for dismissal under the *Rooker-Feldman* doctrine, the Eleventh Circuit has held that the doctrine does not apply when a proceeding to review a judgment remains pending in the state courts at the time the federal lawsuit is filed. *Nicholson v Shafe,* 558 F.3d 1266, 1279 (11th Cir. 2009).

[9] A copy of the complaint in Case No.: SC18-1614 is attached hereto as **Exhibit 10.**

[10] A copy of the referee's report in Case No: SC18-1614 is attached hereto as **Exhibit 11.**

[11] A copy of the order permanently disbarring Plaintiff is attached hereto as **Exhibit 12.**

[12] A copy of the order denying Plaintiff's motion for rehearing is attached hereto as **Exhibit 13.**

capacity as Clerk for the Supreme Court of Florida." In his prayer for relief, Plaintiff asks for "a final judgment declaring the illegal orders to disbar and permanently disbar Plaintiff Chestnut null and void in violation of due process and § 1983 and enjoining the Justices on the Supreme Court of Florida from enforcing the sanction of disbarment and permanent disbarment . . . ." Doc. 13 at 46.

**Memorandum of Law**

**I.    The Eleventh Amendment Immunity Bars this Action Against Defendants in Their Official Capacities**

Plaintiff purports to sue Defendants in their official capacities. This Court, therefore, lacks subject matter jurisdiction because Defendants are entitled to Eleventh Amendment immunity in this case. The Eleventh Amendment[13] prohibits federal courts from exercising subject matter jurisdiction in suits brought against a state by a citizen of that state. *Graham*, 473 U.S. at 169; *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). The Eleventh Amendment's protection extends to actions against state courts and state bars. *Caffey,* 469 Fed. App'x at 751; *Brown v. The Fla. Bar*, 243 F. App'x 552 (11th Cir. 2007); *Kaimowitz v. The Fla. Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993).

---

[13] "The Judicial power of United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amend. XI.

5

A narrow exception to Eleventh Amendment immunity was created by the United States Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908). In that case, the court held that "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102 (1984). The *Ex parte Young* exception allows federal courts to adjudicate "suits against state officers seeking prospective equitable relief to end continuing violations of federal law." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla., Dept. of Health and Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000).

As an initial matter, the *Ex parte Young* exception does not apply to the FSC Clerk because Plaintiff does not challenge the constitutionality of his actions in this matter. As "Parties to this Action," Plaintiff lists only himself and the Justices. Doc. 13 at 33-35. The FSC Clerk is not named as a party. His name only appears in connection with orders issued by the FSC. *Id.* at 37, 38-39, Ex. A.[14] These orders are issued by the FSC and not its Clerk. The FSC Clerk's signature appears on the orders for the sole purpose of certifying the documents as true copies of the original orders.[15] Plaintiff does not claim that documents that the FSC Clerk certified were not true

---

[14] The referenced August 20, 2018 order dismissing Plaintiff's cross-notice of intent to seek review of referee's report in Case Number SC17-307 is attached hereto as **Exhibit 14.**

[15] Defendant Tomasino's signature as "Clerk, Supreme Court" is preceded by the statement "A True Copy, Test:"

copies or did not accurately reflect the actions of the FSC. Further, Plaintiff does not, and cannot in good faith, allege that the mere act of authenticating a copy of a document or accurately reporting the actions of the FSC can constitute a constitutional violation. Therefore, the Eleventh Amendment precludes this Court from proceeding against the FSC Clerk in this matter.[16]

More broadly, the *Ex parte Young* exception does not apply to any Defendant because Plaintiff is not seeking prospective equitable relief. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102 (1984). Even if read expansively, the relief Plaintiff seeks in his is purely retroactive. Plaintiff wants nothing more than to have this Court order the Justices to turn back the hands of time, and reverse their orders disbarring him. This type of retroactive relief is prohibited by the Eleventh Amendment, and not saved by the *Ex parte Young* exception. *See Black v Haselton,* 663 F. App'x. 573, 576 (9th Cir. 2016) (*Ex parte Young* doctrine did not preclude Eleventh Amendment immunity for state appellate court judges, state high court justices, and county court clerk who were sued by property owners in their official capacities in federal district court in connection with vacatur of state trial court judgments in owners' favor in eminent domain proceedings); *Weigel v. Maryland,* 950 F.Supp.2d 811, 832 (D. Md. 2013) (*Ex parte Young* exception did not apply to

---

[16] For the same reasons, the Second Amended Complaint fails to state a cause of action against the FSC Clerk. Fed R. Civ. P. 12(b)(6).

judges of Maryland's highest court in a case for declaratory and injunctive relief arising from a court decision; therefore the judges were entitled to Eleventh Amendment immunity); *Strepka v. Miller,* 28 F. App'x 823, 829 (10th Cir. 2001) ("[p]laintiff's official capacity claims against [judge] sought only to redress past wrongs and alleged no ongoing violations of federal law. Therefore, those claims were barred by the Eleventh Amendment").

## II. The Defendants are Entitled to the Protection of Absolute Judicial Immunity

In addition to the Eleventh Amendment, common-law judicial immunity also bars this action. Judicial officers are protected by absolute judicial immunity from lawsuits arising from judicial acts performed within the jurisdiction of their courts. *Velasquez Andres v. Keyser,* 777 F. App'x 392, 396 (11th Cir. 2019) (citing *McCullough v. Finley,* 907 F.3d 1324, 1330 (11th Cir. 2018)). Florida law also recognizes the same judicial immunity. *See Fuller v. Truncale,* 50 So. 3d 25, 27 (Fla. 1st DCA 2010) (judges and officials enjoy absolute immunity for acts performed in the course of their judicial capacities unless they clearly act without jurisdiction). The only acts of the Justices at issue here are the entry of the FSC's orders of permanent disbarment in Case Numbers SC16-797, SC16-1480, SC17-307 and SC18-1614. It cannot be reasonably disputed that these orders were issued by the Justices in their judicial capacities, and Plaintiff does not attempt to do so. This

8

immunity applies regardless of whether a judge is alleged to have made a mistake, acted maliciously, or exceeded that judge's authority. *Id.* at 1331.

The protection provided by judicial immunity extends to court clerks sued for official acts, under both Florida and federal law. *See e.g. Fuller v. Truncale,* 50 So. 3d 25, 30 (Fla. 1st DCA 2010) (judicial immunity extended to circuit court clerk for making recommendations of license suspension to DMV in accordance with administrative orders); *Scott v. Dixon,* 720 F.2d 1542, 1546–47 (11th Cir.1983) (extending judicial immunity to bar Section 1983 claims brought against court clerks regarding the issuance of criminal warrants).

At one time, the U.S. Supreme Court case law held that judicial immunity did not protect judges from suits for prospective injunctive relief in an action under 42 U.S.C. § 1983. *Pulliam v. Allen,* 466 U.S. 522, 541-542 (1984). In 1996, Congress addressed this issue as part of the Federal Courts Improvement Act ("FICA"), Pub.L. No. 104–317, 110 Stat. 3847 (1996), by amending § 1983 to state that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."[17] *see also, e.g., Roth v. King,* 449 F.3d

---

[17] 42 U.S.C § 1983 provides in full:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or

9

1272, 1286 (D.C. Cir. 2006) ("42 U.S.C. § 1983, as amended in 1996 by the Federal Courts Improvement Act, explicitly immunizes judicial officers against suits for injunctive relief.").

Therefore, Defendants are expressly immune from Plaintiff's claim for injunctive relief under § 1983, unless "a declaratory decree was violated or declaratory relief was unavailable." Plaintiff fails to plead the existence of a declaratory decree, much less claim that one was violated. He also fails to allege that declaratory relief was unavailable to him. Because of this, the Second Amended Complaint is subject to dismissal to the extent it seeks injunctive relief. *See Velasquez Andres v. Keyser,* 777 F.App'x 392, 396 (11th Cir. 2019); *Fisher v Florida,* No. 3:15-cv-1356, 2016 WL 536847 at *3 (M.D. Fla. Jan. 21, 2016).

In addition, Courts interpreting the phrase "declaratory relief was unavailable," in the context of a § 1983 action have found that it does not independently create a cause of action against judicial officers for declaratory

---

    other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

relief judgment. The Third Circuit in *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197-198 (3d Cir. 2000) held that the 1996 amendment "did not expressly authorize suits for declaratory relief against judges". Rather the amendatory language "implicitly recognizes that declaratory relief is available in some circumstances, and then limits the availability of injunctive relief to circumstances in which declaratory relief is unavailable or inadequate." *Id.* at 198. The *Listenbee* court found that the purpose of the amendment was simply to overrule *Pulliam* in pertinent part, and "not to alter the landscape of declaratory relief." *Id.* (citing the Senate report accompanying the amendment).

Thus, "determining whether the declaratory relief is available in the instant case turns on whether [Defendants] may properly be named as a defendant in this § 1983 action." *Id; see also Cooper v. Rapp,* 702 F. App'x 328, 333 (6th Cir. 2017). Even after the 1996 amendment to § 1983, "abstention doctrines and Article III of the United States Constitution still serve to limit the availability of [declaratory] relief." *Rapp,* 702 F. App'x at 333 (citing *Ward v. City of Norwalk*, 640 F. App'x. 462, 468 (6th Cir. 2016)).

Whether a federal court may impose a declaratory judgment on a state judge under the auspices of § 1983 depends on the capacity in which the judge was acting when the action at issue was taken. When a judge acts in his judicial or adjudicative capacities, rather than in an administrative or enforcement role, he is

11

not subject to a declaratory judgment under § 1983. *Listenbee,* 201 F.3d at 199-200 (recognizing that, while "judges [are] amenable to suit under § 1983," such suits are improper "where the judge acted as an adjudicator rather than an enforcer or administrator of a statute"); *see also In re Justices of The Supreme Court of Puerto Rico*, 695 F.2d 17, 22 (1st Cir.1982) ("[i]n short, § 1983 does not provide relief against judges acting purely in their adjudicative capacity, any more than, say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message").

In *Rapp,* the plaintiffs sued a state court judge in federal court after that judge imposed monetary and non-monetary sanctions against them. 702 F. App'x 329-30. The *Rapp* plaintiffs sued for declaratory and injunctive relief, alleging that the judge violated § 1983 by engaging in racially discriminatory conduct in imposing those sanctions. *Id.* at 330. The Sixth Circuit affirmed the district court. *Id.* at 333. It found that the district court properly dismissed the claim for declaratory relief because the state judge was acting in an adjudicative rather that enforcement or administrative capacity. *Id.* at 333-334. The Sixth Circuit also found that the claim for injunctive relief was also properly dismissed because there was no allegation that the state judge violated a declaratory decree, and because the plaintiffs did not demonstrate that declaratory relief was unavailable even though the plaintiffs were not entitled to declaratory relief. *Id.* at

334.

Similar to *Rapp,* the instant case involves a disbarment determination by a state court and subsequent federal § 1983 lawsuit. The FSC's disbarment orders were issued in the Justices' judicial capacities. When the Justices ordered Plaintiff permanently disbarred, they acted in their roles as Florida Supreme Court Justices in response to proceedings initiated by the Florida Bar, and not as an independent prosecutors or administrators. Accordingly, there was no case or controversy between the parties and Appellant was not entitled to a declaratory judgment. *See Rapp,* 702 F. App'x at 333-334. Because this lawsuit involves the inherently judicial act of disbarring a Florida attorney, Defendants are immune from any claim for declaratory relief.

### III. Plaintiff Fails to State a Claim for Prospective Declaratory Relief

Even were this Court to find that Defendants are not immune from declaratory relief, Plaintiff fails to state a claim for a prospective declaratory judgment. The specific declaratory relief Plaintiff seeks is "a final judgment declaring the illegal orders to disbar and permanently disbar Plaintiff Chestnut null and void . . . ." Doc. 13 at 46. Plaintiff apparently considers this to be prospective relief, Doc. 13 at 1, but he is mistaken. A declaration that orders issued by the FSC in May and August of 2019 are null and void would be retrospective rather than prospective in nature. *See Snow v King,* No. 4:17-CV-1048, 2018 WL 656032 at *6 (M.D. Ala. 2018) (a

declaration that a judge "wrongfully convicted and/or failed to set aside the conviction of the plaintiff is *retrospective* in nature, and therefore barred by judicial immunity" (emphasis in original)); *see also Andrews v. Hens-Greco,* 641 F.App'x 176, 180-181 (3d Cir. 2016) (complaint was retrospective to the extent it focused on a judge's denial of previously submitted petitions for payment). Plaintiff's requested declaratory judgment would constitute an adjudication of Defendants' past conduct and would be forbidden by the Eleventh Amendment. *Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1337 (11th Cir. 1999). As such, the Second Amended Complaint fails to state a cause of action for prospective declaratory relief.

### IV. The Court Should Exercise its Discretion and Decline to Consider Plaintiff's Request for Declaratory Relief.

Finally, even if Defendants were not immune from a claim for declaratory relief, and even if Plaintiff were not seeking retrospective declaratory relief, this Court would still have the discretion to decline to consider Plaintiff's claim. The Declaratory Judgment Act, 28 U.S.C. § 2201, is an enabling act that confers discretion on federal courts to consider declaratory relief rather than providing an absolute right for a plaintiff to seek such relief. As such, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282, (1995)

14

("district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act even when the suit otherwise satisfies subject matter jurisdictional prerequisites"). Because Plaintiff asks this Court to review orders entered by the FSC, this action would almost certainly be barred by the *Rooker-Feldman* doctrine had it been filed after the FSC had denied rehearing of its disbarment orders. For the same reasons that *Rooker-Feldman* prohibits lower federal courts from reviewing final decisions of state courts, this Court should decline to hear Plaintiff's claim for declaratory relief in this matter.

## Conclusion

WHEREFORE, for the reasons set forth above, Florida Supreme Court Justices Charles T. Canady, Ricky Polson, Jorge Labarga, Alan Lawson and Carlos G. Muñiz, and Clerk of the Florida Supreme Court John A. Tomasino, respectfully request that the Complaint in this matter be dismissed for lack of subject matter jurisdiction and for failure to state a cause of action.

Respectfully submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**

*/s/ William H. Stafford III*
WILLIAM H. STAFFORD III
Senior Assistant Attorney
General Florida Bar No. 70394
Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 488-4872 (FAX)
william.stafford@myfloridalegal.com

*Counsel for Defendants Charles T. Canady, Ricky Polson, Jorge Labarga, Alan Lawson and Carlos G. Muñiz, and John A. Tomasino*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was has been furnished electronically using the Court's CM\ECF system on January 28, 2020, to Christopher Chestnut, 1201 West Peachtree Street NE, Suite 2300, Atlanta Georgia 30309 via regular U.S. Mail and email to christopherchestnut@gmail.com.

*/s/ William H. Stafford III*